# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC, | Case No. 2:24-cv-10216 |
| Plaintiff, | |
| v. | Hon. Terrence G. Berg<br>Mag. David R. Grand |
| ATLANTIC TRUST MORTGAGE CORPORATION, | |
| Defendant. | **JURY TRIAL DEMANDED** |

## FIRST AMENDED COMPLAINT

Plaintiff United Wholesale Mortgage, LLC ("Plaintiff" or "UWM") submits the following First Amended Complaint against Defendant Atlantic Trust Mortgage Corporation ("Atlantic Trust"):

### PARTIES

1. UWM is a Michigan limited liability company with its principal place of business at 585 South Boulevard East, Pontiac, Michigan. UWM's sole member is UWM Holdings, LLC, which is comprised of two members, SFS Holding Corp. and UWM Holdings Corp. SFS Holding Corp. is incorporated in Michigan and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan. UWM Holdings Corp. is incorporated in Delaware and has its principal place of business at 585 South Boulevard East, Pontiac, Michigan.

2. On information and belief, Defendant Atlantic Trust is incorporated in Florida with its principal place of business at 90 Fort Wade Road, Suite 175, Ponte Vedra, Florida.

## JURISDICTION AND VENUE

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this complaint states an action that is between citizens of different states and, as set out below, involves an amount in controversy that exceeds $75,000, exclusive of interest and costs.

4. This Court has jurisdiction over Atlantic Trust because Atlantic Trust has established minimum contacts with the State of Michigan by, among other things, entering into a contract with a Michigan company, such that the exercise of personal jurisdiction will not offend traditional notions of fair play and substantial justice.

5. This Court has jurisdiction over Atlantic Trust also because Atlantic Trust agreed to submit any action arising out of its wholesale broker agreement with UWM to the exclusive jurisdiction of this Court in this District and waived its right to challenge this Court's personal jurisdiction over it. *See, e.g.*, Ex. A, at § 7.15.

6. Venue in this District is proper under 28 U.S.C. §§ 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this District. Further, in the wholesale broker agreement, the parties agreed that they

would submit any action arising out of the agreement to this Court in this District. Ex. A, at § 7.15.

## GENERAL ALLEGATIONS

7. UWM is a Pontiac, Michigan-based wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") across the country.

8. UWM itself does not work directly with borrowers—as do retail lenders—until after a loan has funded. Rather, the Broker Partners communicate directly with borrowers and select from over 100 wholesale lenders to choose the lender and loan product they believe to be the borrower's best option.

9. UWM provides its Broker Partners with considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business.

10. UWM's investment into and support of its Broker Partners is meant to distinguish UWM's exceptional services and those of its Broker Partners from UWM's competitors. UWM takes these investments seriously and expends significant resources to enhance the business of its Broker Partners, as UWM's success is dependent on the long-term success of its Broker Partners.

11. Atlantic Trust is an independent mortgage broker with over 15 mortgage loan originators serving the State of Florida.

12. Atlantic Trust's growth and success in the mortgage industry is partially attributed to UWM's investment in and support provided to Atlantic Trust as one of its Broker Partners.

13. In January 2018, Atlantic Trust elected to avail itself of UWM's products, services, and resources and entered a Wholesale Broker Agreement with UWM (the "Agreement"). *See* Ex. A.

14. Under the Agreement, Atlantic Trust agreed to "offer to UWM for potential purchase and/or funding certain FHA, VA, USDA, conventional, jumbo and/or non-agency mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products." Ex. A, at p. 1.

15. In the Agreement, Atlantic Trust made certain warranties and representations to UWM "with regard to each Mortgage Loan [Atlantic Trust] submitted to UWM for underwriting, purchase, and/or funding that [were to be] true, complete and correct in all material respects as of the date of such submission." Ex. A, at § 3.03.

16. The Agreement makes clear that Atlantic Trust "shall not be obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." Ex. A, at § 7.03.

17. Further, Atlantic Trust was free to terminate the Agreement at any time and for any reason, upon seven days' prior written notice. *See* Ex. A, at § 7.06.

Likewise, UWM also could terminate the Agreement at any time and for any reason, upon seven days' prior written notice. *See id.*

18. Otherwise, the Agreement was for "for an initial term of one (1) year and [] automatically renew[ed] for successive terms of one (1) year each, unless terminated pursuant to Section 7.06." Ex. A, at § 7.05.

19. Additionally, UWM requires all Broker Partners to approve yearly Agreement renewals on the anniversary date of their initial signing of the Agreement with UWM.

20. The Agreement could be amended in several ways. One such way was under Section 7.08, by which the Agreement could be amended if UWM provided notice to Atlantic Trust of the amendment and, after receiving such notice, Atlantic Trust submitted any mortgage loan or mortgage loan application to UWM:

> This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

Ex. A, at § 7.08.

21. In the event of a breach by Atlantic Trust, the Agreement authorizes

UWM to recover attorney fees, costs, and other expenses associated with UWM's enforcement of its contractual rights:

> In the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under this Agreement, and the non-prevailing party hereby agrees to promptly pay same.

Ex. A, at § 7.16.

22. On March 4, 2021, UWM announced its "All-In Initiative," stating that it had decided to end its business relationships with Broker Partners who chose to continue originating loans with certain select retail lenders specified in the Agreement (the "Select Retail Lenders"). UWM made this decision knowing that it could result in ending relationships with some existing Broker Partners but believing that it was necessary to protect the long-term viability of the wholesale mortgage channel. As UWM explained through widespread financial media coverage, UWM believes that the Select Retail Lenders' business model negatively impacts consumers, brokers, and the wholesale mortgage channel in general.

23. As part of the All-In Initiative, UWM amended certain terms of the wholesale broker agreements by adding paragraphs 3.03(x) and 7.30, which are terms known as the "All-In Addendum." *See, e.g.*, Ex. B, at §§ 3.03(x), 7.30.

24. The All-In Addendum includes a warranty and representation that a Broker Partner will not submit mortgage loans to the Select Retail Lenders, and if

6

the Broker Partner does, such submissions constitute a breach of the wholesale broker agreement. *See* Ex. B, at § 3.03(x).

25. Specifically, under the All-In Addendum, a Broker Partner "warrants, represents, and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase, and/or funding that . . . [it] will not submit a mortgage loan or mortgage loan application to [the Select Retail Lenders] for review, underwriting, purchase, and/or funding." Ex. B, at § 3.03(x).

26. In the event of a breach of the All-In Addendum, a Broker Partner must pay liquidated damages to UWM:

> Broker and UWM agree that the measure of damages in the event of a breach of Broker's representation and warranty under Section 3.03(x) may be difficult, if not impossible, to ascertain. Accordingly, in the event of a violation of Section 3.03(x), Broker shall immediately pay to UWM the greater of: (i) Five Thousand Dollars ($5,000.00) per loan closed with [the Select Retail Lenders], or (ii) Fifty Thousand Dollars ($50,000.00), as liquidated damages for such breach without the need for proof of damages by UWM. UWM's right to liquidated damages are in addition to (not in lieu of) any other monetary or other remedies UWM may have under this Agreement and/or applicable law.

Ex. B, at § 7.30.

27. Per the terms of the Agreement, specifically Section 7.08, UWM was not required to, nor did UWM, compel Broker Partners to sign the All-In Addendum or a new wholesale broker agreement in order for the All-In Addendum to become effective as an amendment to the Agreement.

28. If a Broker Partner wanted to submit mortgage loans or mortgage-loan

7

applications to a Select Retail Lender and not abide by the All-In Addendum, the Broker Partner could terminate its relationship with UWM pursuant to Section 7.06.

29. Soon after UWM's All-In Initiative announcement, Atlantic Trust stopped submitting mortgage loans and mortgage loan applications to UWM.

30. As part of this stoppage, Atlantic Trust submitted its last mortgage loan application to UWM on February 28, 2021, and its last mortgage loan with UWM closed on March 22, 2021.

31. To the best of UWM's knowledge and belief, Atlantic Trust never terminated the Agreement under Section 7.06.

32. From January 1, 2020—over a year prior to UWM's All-In Initiative—to on or around October 4, 2022—nineteen months after UWM's All-In Initiative announcement—Atlantic Trust did not submit any loans to the Select Retail Lenders.

33. On or about October 4, 2022, Atlantic Trust closed its first loan using one of the Select Retail Lenders.

34. In 2022, UWM began to contact Broker Partners who had stopped submitting mortgage loans UWM after the All-In Initiative announcement to discuss those Broker Partners submitting new mortgage loans to UWM.

35. In or around November 2022, UWM first contacted Atlantic Trust to discuss Atlantic Trust submitting new mortgage loans to UWM.

36. In or around December 2022, UWM contacted Atlantic Trust and

8

encouraged Atlantic Trust to submit new mortgage loans to UWM—and not the Select Retail Lenders—during a 60-day "trial" period, after which, if Atlantic Trust was not satisfied with submitting mortgage loans to UWM and not the Select Retail Lenders, it could terminate the Agreement and again work with the Select Retail Lenders.

37. That is, UWM welcomed Atlantic Trust to submit loans to UWM during this 60-day period, subject to the same terms as the Agreement, as amended by the All-In Addendum, to determine if working with UWM and complying with the All-In Addendum worked for Atlantic Trust's business. If at the end of the period, Atlantic Trust was satisfied with the relationship and the All-In Addendum's restrictions on using the Select Retail Lenders, Atlantic Trust and UWM would continue their relationship under the Agreement, as amended; if Atlantic Trust was not satisfied, it could terminate the Agreement at the end of the period.

38. This 60-day period was intended to remind Atlantic Trust of the superior service that Broker Partners receive when they work with UWM, and thus convince Atlantic Trust to continue its relationship with UWM going forward.

39. Soon thereafter, Atlantic Trust began to again send mortgage loans to UWM.

40. On December 19, 2022 Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January

19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal.

41. On December 22, 2022, Atlantic Trust submitted its first mortgage loan to UWM since UWM had implemented the All-In Initiative.

42. From December 22, 2022, through February 22, 2023, Atlantic Trust had 10 mortgage loans close with UWM.

43. On information and belief, during that same time period, Atlantic Trust did not submit any mortgage loans to any Select Retail Lender.

44. After the end of the initial 60-day period, Atlantic Trust continued to submit mortgage loans to UWM.

45. In all, since December 2022, Atlantic Trust has submitted 87 mortgage loans to UWM.

46. In or around March 2023, Atlantic Trust also began to submit mortgage loans to at least one of the Select Retail Lenders at the same time it was submitting mortgage loans to UWM.

47. Atlantic Trust continued its practice of submitting mortgage loans to both UWM and one or both of the Select Retail Lenders through February of 2024.

48. Since December 2022, Atlantic Trust has submitted at least 71 mortgage loans to at least one of the Select Retail Lenders.

49. Atlantic Trust's mortgage loan submissions to either of the Select Retail

Lenders violates the parties' Agreement, as amended.

50. Atlantic Trust elected to continue doing business with and benefit from UWM while simultaneously breaching the Agreement by submitting loans to one or both of the Select Retail Lenders.

51. Atlantic Trust's mortgage loan submissions to one or both of the Select Retail Lenders have damaged UWM in various ways, including but not limited to, allowing Atlantic Trust to reap the benefits of UWM's investments in and services provided to it as a Broker Partner, including UWM's propriety technology, without complying with the associated Broker Partner requirements, and more importantly, by intentionally and directly undermining the entire purpose of the All-In Initiative.

52. Atlantic Trust's submission of at least 71 mortgage loans to one or both of the Select Retail Lenders equates to at least $355,000.00 in liquidated damages.

## COUNT ONE
### BREACH OF CONTRACT

53. Paragraphs 1 through 52 are incorporated by reference as if fully stated herein.

54. The Agreement is a valid contract that binds Atlantic Trust and UWM.

55. UWM amended the Agreement to incorporate the terms of the All-In Addendum, and Atlantic Trust accepted those terms when it continued to submit mortgage loans to UWM after notice of the All-In Addendum's terms and approved the renewal of the Agreement through UWM's online broker-facing portal.

56. The Agreement, as amended by the All-In Addendum, prohibited Atlantic Trust from submitting mortgage loans to any Select Retail Lender for review, underwriting, purchase, and/or funding.

57. Atlantic Trust breached the Agreement, as amended by the All-In Addendum, by submitting at least 71 mortgage loans to a Select Retail Lender.

58. As a result, UWM has suffered damages, both in the amount of at least $355,000.00 in liquidated damages, and through negative effects to UWM's business model.

## PRAYER FOR RELIEF

59. UWM respectfully requests that the Court enter a judgment finding that Atlantic Trust breached the Agreement and awarding the following to UWM:

   A. Damages in the amount of at least $355,000.00;

   B. Other compensatory damages relating to Atlantic Trust's breach;

   C. Attorney fees, costs, and other expenses UWM incurred in this action;

   D. Pre- and post-judgment interest; and

   E. Such other and further relief as the Court may deem just and proper.

## JURY DEMAND

UWM respectfully demands a trial by jury on all issues triable by jury.

Respectfully submitted,

By: */s/ A. Lane Morrison*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Dated: April 5, 2024      *Attorneys for United Wholesale Mortgage, LLC*