## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

      Plaintiff,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

      Defendant.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

---

### UNITED WHOLESALE MORTGAGE LLC'S OPPOSITION TO ATLANTIC TRUST MORTGAGE CORPORATION'S MOTION TO DISMISS

UWM opposes Atlantic Trust's Motion to Dismiss, ECF No. 11, PageID.58.

The Court should deny the Motion because:

1. UWM's First Amended Complaint supersedes the original complaint and moots the Motion in its entirety.

2. Even if the Court were to apply the Motion to the First Amended Complaint, the Motion still fails because:

    a. The Wholesale Broker Agreement did not require *all* amendments to it to be in a writing executed by both parties.

    b. UWM's allegations plausibly assert that Atlantic Trust and UWM agreed to waive any formal writing and signature

1

requirements by continuing to submit mortgage loans to UWM after notice of the amendment and by electronically acknowledging the amendment.

c. The amendment is not voided by MCL § 566.1 because the parties' continued business relationship is sufficient consideration to support it.

For those reasons, UWM requests that the Court deny Atlantic Trust's Motion to Dismiss.

Respectfully submitted,

By: */s/ Lane Morrison*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Dated: April 5, 2024            *Attorneys for United Wholesale Mortgage, LLC*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED WHOLESALE
MORTGAGE, LLC,

      Plaintiff,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

      Defendant.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

## <u>UNITED WHOLESALE MORTGAGE LLC'S BRIEF IN SUPPORT OF ITS OPPOSITION TO ATLANTIC TRUST MORTGAGE CORPORATION'S MOTION TO DISMISS</u>

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Is Atlantic Trust's motion to dismiss moot given UWM's First Amended Complaint, which supersedes the original complaint?

Atlantic Trust does not answer this question.

UWM answers:                     Yes.

The Court should answer:      Yes.

2.      In the First Amended Complaint, does UWM plausibly allege a breach of a validly amended Wholesale Broker Agreement where the agreement does not require written and signed amendments in all circumstances, where Atlantic Trust submitted loans under the Agreement after notice of the amendment and also electronically acknowledged the amendment, and where the parties' continued business dealings was consideration for the amendment?

Atlantic Trust answers as to the original complaint:      No.

UWM answers:                     Yes.

The Court should answer:      Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Crawford v. Tilley*, 15 F.4th 752 (6th Cir. 2021).

*Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251 (Mich. 2003).

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846 (Mich. Ct. App. 2020).

*Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005).

# TABLE OF CONTENTS

**Page**

INTRODUCTION ..................................................................................1

BACKGROUND ..................................................................................2

    A.    UWM's Original Complaint................................................2

    B.    Atlantic Trust's Motion to Dismiss....................................3

    C.    UWM's First Amended Complaint ....................................4

ARGUMENT ......................................................................................6

    I.    Atlantic Trust's Motion is Moot. ......................................7

    II.    Atlantic Trust's Motion Fails on the Merits.......................10

        A.    The Agreement did not require every amendment to be in writing signed by both parties..................................10

        B.    Even if the Agreement did require every amendment to be in writing, the parties waived that requirement. .......................14

        C.    There was consideration for an amendment to the Agreement. ................................................................17

CONCLUSION ...................................................................................19

# INDEX OF AUTHORITIES

**Page**

## CASES

*Adell Broad. v. Apex Media Sales*,
708 N.W.2d 778 (Mich. Ct. App. 2005)................................................. 17, 18, 19

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*,
964 N.W.2d 846 (Mich. Ct. App. 2020)........................................ 11, 12, 13, 14

*Crawford v. Tilley*,
15 F.4th 752 (6th Cir. 2021) ...............................................................7, 8

*Curry v. Harvest Energy Sols., LLC*,
No. 15-13981, 2016 WL 3654534 (E.D. Mich. July 8, 2016)...........................16

*Gallo v. Moen Inc.*,
813 F.3d 265 (6th Cir. 2016) ...............................................................11

*Henderson v. State Farm Fire & Cas. Co.*,
596 N.W.2d 190 (Mich. 1999)................................................................ 11, 12

*Klein by Klein v. Caterpillar Inc.*,
581 F. Supp. 3d 912 (E.D. Mich. 2022) .............................................................8

*Meagher v. Wayne State Univ.*,
565 N.W.2d 401 (Mich. Ct. App. 1997).............................................................14

*Meier v. Schwarz Partners*,
No. 22-11644, 2022 WL 16702695 (E.D. Mich. Nov. 2, 2022) .....................7, 9

*Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*,
666 N.W.2d 251 (Mich. 2003)..........................................................................14

*Sango v. Johnson*,
No. 13-12808, 2014 WL 4658379  (E.D. Mich. May 22, 2014),
*report and recommendation adopted*, No. 13-12808, 2014 WL
4658385 (E.D. Mich. Sept. 17, 2014), *aff'd* (Nov. 5, 2015) ...............................7

*Shreve v. Franklin Cnty., Ohio*,
743 F.3d 126 (6th Cir. 2014) ..............................................................................7

*Woodington v. Shokoohi*,
792 N.W.2d 63 (Mich. Ct. App. 2010)................................................. 11, 12, 13

## INDEX OF AUTHORITIES
### (continued)

**Page**

**STATUTES**

MCL § 566 ................................................................................. passim

**RULES**

Fed. R. Civ. P. 12 ..........................................................................4

Fed. R. Civ. P. 15 ..........................................................................4

## INTRODUCTION

UWM alleges that Atlantic Trust breached the parties' Wholesale Broker Agreement by sending mortgage loans to certain Select Retail Lenders despite contractual prohibitions on doing so. Atlantic Trust moved to dismiss UWM's original complaint, claiming that the pertinent contractual prohibitions were part of an invalid unsigned amendment to the parties' Agreement.

UWM amended its complaint, which necessarily moots Atlantic Trust's pending motion. And even if the Court were to apply Atlantic Trust's arguments to the First Amended Complaint, the Motion still fails because the arguments all rest on a faulty premise. Contrary to Atlantic Trust's contentions, the parties' Agreement did not require *all* amendments to it to be in a writing executed by both parties. So, that there is no signed amendment is of no importance, and the First Amended Complaint plausibly alleges a valid and enforceable amendment to the Agreement that restricted Atlantic Trust from submitting loans to the Select Retail Lenders. Even more, Michigan law allows contracting parties to mutually agree to contractual amendments through affirmative conduct—even where the contract has a clause requiring signed, written amendments—and UWM's allegations plausibly assert that Atlantic Trust and UWM agreed to waive any formal writing and signature requirements when Atlantic Trust submitted loans under the Agreement after notice of the amendment and also when Atlantic Trust electronically acknowledged the

amendment through its renewal with UWM on January 19, 2023. Finally, the amendment is not voided by MCL § 566.1 because the parties' continued business relationship is more than enough consideration to support it.

Given the First Amended Complaint, Atlantic Trust's Motion is moot and should be denied on that basis. But it should also be denied on the merits.

## BACKGROUND

### A.   UWM's Original Complaint

In the original complaint, UWM alleged that in 2018, in exchange for UWM's provision of products, services, and resources, Atlantic Trust entered into a Wholesale Broker Agreement, under which Atlantic Trust agreed to "offer to UWM for potential purchase and/or funding certain FHA, VA, USDA, conventional, jumbo, and/or non-agency mortgage loans as well as select bond program mortgage loans which fall within the parameters of UWM's mortgage loan products." ECF No. 1, PageID.4, ¶¶ 13-14; *see also* ECF No. 1-1, PageID.11 (the "Agreement"). In 2021, UWM announced its "All-In Initiative," under which it had "decided to end its business relationship with Broker Partners who chose to continue originating loans with [the Select Retail Lenders]." ECF No. 1, PageID.5, ¶ 18. The original complaint further alleged that the parties amended their Agreement in 2021 or 2022 and, in doing so, incorporated terms known as the "All-In Addendum." *Id.*, PageID.4–6, ¶¶ 13, 19-20. Specifically, "the All-In Addendum amended the

Agreement by adding a warranty and representation that Atlantic Trust would not submit loans to the Select Retail Lenders, and if it did, such submissions would constitute a breach of the Agreement," subjecting Atlantic Trust to liquidated damages. *Id.*, PageID.6–7, ¶¶ 20-21, 26. The complaint then alleged that Atlantic Trust breached the amended agreement by submitting at least 71 loans to the Select Retail Lenders, which damaged UWM. *Id.*, ¶¶ 23-27. UWM sought recovery for breach of "the Agreement, as amended by the All-In Addendum." *Id.*, PageID.8, ¶¶ 29-33.

### B.    Atlantic Trust's Motion to Dismiss

Atlantic Trust filed a Motion to Dismiss. ECF No. 11, PageID.58-75. In the Motion, Atlantic Trust first contends that UWM's breach-of-contract claim fails because Atlantic Trust never signed an amendment to the parties' Agreement that contained the All-In Addendum. *See generally id.*, PageID.68–70. This is problematic, Atlantic Trust argues, because the Agreement contained what is sometimes called a written-modification clause in Section 7.01 that required all amendments be in a writing executed by both parties. *Id.*

Second, Atlantic Trust argues that UWM's breach-of-contract claim fails because "no additional consideration was provided for the purported 'amendment' of the [Agreement]," making the amendment "void as a matter of law pursuant to [MCL] § 566.1." *Id.*, PageID.70–71.

Finally, and tied to its first point, Atlantic Trust contends that UWM's breach-of-contract claim fails because the "2022 Unsigned Amendment" to the Agreement could only be effective if signed, and Atlantic Trust never signed it. *Id.*, PageID.72–74.

### C.    UWM's First Amended Complaint

UWM amended its complaint.[1] ECF No. 13, PageID.78-90. In the First Amended Complaint, UWM again alleges that the parties entered into their Agreement in 2018. *Id.*, PageID.81–83, ¶¶ 13-21. The Agreement could be amended in several ways, one of which was under Section 7.08, where the Agreement could be amended if UWM provided notice to Atlantic Trust of the amendment and, after receiving such notice, Atlantic Trust submitted any mortgage loan or mortgage loan application to UWM. *Id.*, PageID.82, ¶ 20. In 2021, as part of UWM's All-In Initiative, UWM amended certain terms of its wholesale broker agreements by adding the All-In Addendum, which precludes a Broker Partner from submitting mortgage loans to specific Select Retail Lenders and entitles UWM to recover liquidated damages in the event of a breach. *Id.*, PageID.83–84, ¶¶ 23-26.

---

[1]   UWM amended its complaint as a matter of course pursuant to its ability to do so within "21 days after service of a responsive pleading or 21 days after service of a motion under rule 12(b), (e), or (f), whichever is earlier." *See* Fed. R. Civ. P. 15(a)(1)(B); *id.* cmt. 2023 Amend. (clarifying "that the right to amend [once as a matter of course] continues without interruption until 21 days after the earlier of the events described in Rule 15(a)(1)(B)").

Though Atlantic Trust initially stopped submitting mortgage loans to UWM after the All-In Initiative announcement, *id.*, PageID.85, ¶ 29, Atlantic Trust never terminated the Agreement per the requirements of Section 7.06, *id.*, ¶ 31. Then, in late 2022, UWM contacted Atlantic Trust to encourage it to submit new mortgage loans to UWM—and not the Select Retail Lenders; that is, subject to the same terms as the Agreement, as amended by the All-In Addendum—during a 60-day "trial" period, after which, if Atlantic Trust was not satisfied, it could terminate the Agreement and again work with the Select Retail Lenders." *Id.*, PageID.85–86, ¶¶ 36-37. Atlantic Trust accepted the invitation and, between December 22, 2022 and February 23, 2023, had 10 mortgage loans close with UWM. *Id.*, PageID.86–87, ¶¶ 39, 41-42. What's more, Atlantic Trust reviewed and, on January 19, 2023, approved—through UWM's online broker-facing portal—UWM's yearly Agreement renewal package, which included the All-In Addendum. *Id.*, ¶ 40. Then, after the end of the 60-day period, Atlantic Trust continued to submit mortgage loans to UWM—submitting 87 in all. *Id.*, PageID.87, ¶¶ 44-45.

But in March 2023, Atlantic Trust also began to submit mortgage loans to at least one of the Select Retail Lenders at the same time it was submitting mortgage loans to UWM— submitting 71 in all. *Id.*, ¶ 46-48. These 71 mortgage loans Atlantic Trust submitted to a Select Retail Lender violates the Agreement, as amended, and entitles UWM to $355,000.00 in liquidated damages. *Id.*, PageID.87–88, ¶ 49, 52.

In sum, in the First Amended Complaint, UWM alleges that the parties amended the Agreement to incorporate the terms of the All-In Addendum when Atlantic Trust continued to submit mortgage loans to UWM after notice of the All-In Addendum's terms and approved the renewal of the Agreement through UWM's online broker-facing portal. *Id.*, PageID.88, ¶ 55. Atlantic Trust then breached the Agreement, as amended, by submitting mortgage loans to a Select Retail Lender. *Id.*, PageID.89, ¶¶ 56-57.

## ARGUMENT

The Court should deny Atlantic Trust's Motion. First, it is moot because the First Amended Complaint supersedes the original complaint to which the Motion applies. Second, the Motion fails on the merits because (a) the Agreement did not require ***all*** amendments to it to be in a writing executed by both parties; (b) Michigan law allows contracting parties to mutually agree to unwritten contractual amendments and modifications, even if there were such a formal in-writing requirement here, and such a waiver is plausibly alleged here—where Atlantic Trust submitted loans under the Agreement after notice of the amendment and also electronically acknowledged the amendment through its renewal with UWM on January 19, 2023; and (c) the amendment is not voided by MCL § 566.1 because the parties' continued business relationship was more than enough consideration to support it.

Atlantic Trust's Motion should be denied.

## I.    Atlantic Trust's Motion is Moot.

Because UWM amended its complaint and, in doing so, altered the factual basis supporting its breach-of-contract claim, Atlantic Trust's Motion is moot. "The general rule is that filing an amended complaint moots pending motions to dismiss." *Crawford v. Tilley*, 15 F.4th 752, 759 (6th Cir. 2021); *see also Shreve v. Franklin Cnty., Ohio*, 743 F.3d 126, 131 (6th Cir. 2014) ("An amended pleading that is complete in itself and does not refer to or adopt a former pleading as part of it supersedes or supplants the former pleading."). This is especially true where the amended complaint "contains new and different allegations which bear on the merit of [the] claims"—in such a case, the amended complaint renders a pending motion to dismiss directed at the initial complaint "substantively moot." *Meier v. Schwarz Partners*, No. 22-11644, 2022 WL 16702695, at *1 (E.D. Mich. Nov. 2, 2022) (citing *Sango v. Johnson*, No. 13-12808, 2014 WL 4658379, at *1 (E.D. Mich. May 22, 2014), *report and recommendation adopted*, No. 13-12808, 2014 WL 4658385 (E.D. Mich. Sept. 17, 2014), *aff'd* (Nov. 5, 2015)).[2] To the extent a defendant "wish[es] to seek similar relief with respect to the Amended Complaint, [it] must file a new motion tailored to the allegations in that operative pleading." *Id.*

---

[2]    Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

To be sure, "district courts may exercise their discretion and apply a pending motion to dismiss to portions of an amended complaint that are substantially identical to the original complaint," *Crawford*, 15 F.4th at 759, by "consider[ing] the motion as being addressed to the amended pleading." *Klein by Klein v. Caterpillar Inc.*, 581 F. Supp. 3d 912, 919 (E.D. Mich. 2022). But this is permissible only "if some of the defects raised in the original motion remain in the new pleading," which may occur if the amended complaint is "substantially identical to the original complaint" and "merely provid[es] more detail about one cause of action" without "changing the thrust of the allegations." *Id.*

But UWM's First Amended Complaint does "change the thrust of" its breach-of-contract allegations, and the substance of Atlantic Trust's Motion is therefore now moot. In the First Amended Complaint, UWM alleges that even though Atlantic Trust initially stopped submitting mortgage loans to UWM after the All-In Initiative announcement, ECF No. 13, PageID.85, ¶ 29, in late 2022, Atlantic Trust accepted UWM's invitation to again submit loans to UWM, subject to the terms of the All-In Addendum, *id.*, PageID.85–87, ¶¶ 36-37, 39, 41-42. During an initial 60-day period, Atlantic Trust had 10 mortgage loans close with UWM. *Id.*, PageID.86–87, ¶¶ 39, 41-42. Further, on January 19, 2023, Atlantic Trust acknowledged and renewed the Agreement, as amended by the All-In Addendum, through UWM's online broker-facing portal. *Id.*, ¶ 40. Atlantic Trust then continued to submit mortgage loans to

8

UWM—87 in all. *Id.*, PageID.87, ¶¶ 44-45. Thus, in the First Amended Complaint, UWM alleges that the parties amended the Agreement to incorporate the terms of the All-In Addendum when Atlantic Trust continued to submit mortgage loans to UWM after notice of the All-In Addendum terms and through its approval of the Agreement renewal through UWM's online broker-facing portal. *Id.*, PageID.88, ¶ 55.

Then, in March 2023, Atlantic Trust also began to submit mortgage loans to at least one of the Select Retail Lenders at the same time it was submitting mortgage loans to UWM—at least 71 in all. *Id.*, PageID.87, ¶ 46-48. This was a breach of the Agreement, as amended. *Id.*, PageID.89, ¶¶ 57-58. And these 71 mortgage loans Atlantic Trust submitted to a Select Retail Lender, entitle UWM to $355,000.00 in liquidated damages. *Id.*

Thus, the First Amended Complaint has "new and different allegations," about how the parties amended their Agreement through Atlantic Trust's online renewal and Atlantic Trust's conduct in submitting loans to UWM after notice of the All-In Addendum terms. As a result, Atlantic Trust's pending Motion as to the original complaint is "substantively moot" and should be denied. *See Meier*, 2022 WL 16702695, at *1.

## II.     Atlantic Trust's Motion Fails on the Merits

Even were the Court to consider Atlantic Trust's motion to dismiss and attempt to apply it to UWM's First Amended Complaint, the Motion still fails. The First Amended Complaint plausibly alleges that the parties amended their Agreement, and that Atlantic Trust breached it. First, the Agreement did not require all contractual modifications to be in a writing signed by both parties; instead, it allowed the parties to modify the contract by continued conduct in certain circumstances—circumstances like Atlantic Trust's continued submission of loans to UWM after notice of the All-In Addendum here. Second, even if the Agreement required all amendments to be in writing signed by both parties, Michigan law has long allowed parties to waive such requirements, and the First Amended Complaint plausibly alleges that the parties' conduct—including Atlantic Trust's online renewal and submission of mortgage loans to UWM after receiving notice of the All-In Addendum terms—effected a waiver here. And finally, MCL § 566.1 does not void an amendment to the Agreement because the parties' continued business relationship amounted to adequate consideration for the amendment.

### A.     The Agreement did not require every amendment to be in writing signed by both parties.

The Agreement did not require *all* amendments to it to be in a writing executed by both parties, so the Motion wholly fails. Atlantic Trust contends that UWM's breach-of-contract claim must fail because (1) Atlantic Trust never signed an

amendment to the parties' Agreement that contained the All-In Addendum terms and (2) the Agreement contained a written modification clause in Paragraph 7.01 that required all amendments be "in writing executed by authorized representatives of both Broker and UWM." *See generally* ECF No. 11, PageID.68–75; *see also* ECF No. 13-1, PageID.99. But a closer look shows that the Agreement allowed the parties to modify the agreement in other ways, and an unsigned amendment would not be barred here.

"The words of a contract are interpreted according to their plain and ordinary meaning," and a Court "gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846, 852 (Mich. Ct. App. 2020). "But the rule that courts should interpret contracts to avoid superfluous words is a tool for dealing with ambiguity, not a tool for *creating* ambiguity in the first place." *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016) (emphasis in original); *see also Henderson v. State Farm Fire & Cas. Co.,* 596 N.W.2d 190, 193 (Mich. 1999) ("[A] court should not create ambiguity . . . where the terms of the contract are clear and precise."). Instead, if a contract "fairly admits of but one interpretation," even though it is perhaps "inartfully worded or clumsily arranged," the contract is unambiguous. *Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010). And such "clear and unambiguous language" is to be

11

enforced as written, *Bayberry*, 964 N.W.2d at 852, and should not be rewritten "under the guise of interpretation," *Woodington*, 792 N.W.2d at 78 (citing *Henderson,* 596 N.W.2d at 193).

Atlantic Trust reads surplusage into the Agreement where there is none. Section 7.01 of the Agreement provides that "[e]xcept as set forth on Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM." ECF No. 13-1, PageID.99. However, the referenced exception in Section 7.08 authorizes ***another*** way to effect an amendment ***if*** UWM gives notice to a broker of an amended term and after that notice the broker continues to submit mortgage loans or loan applications to UWM:

> **7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

*Id.* The two sections can be read together harmoniously.

Atlantic Trust argues that Section 7.08's terms, if read to apply to all amendments of the Agreement, would "gut" Section 7.01's writing requirement and

render Section 7.01 "mere surplusage." ECF No. 11, PageID.69. But that is not so.

Both sections 7.01 and 7.08 are clear and unambiguous and plainly can be read

together, as illustrated in the example below, in which the terms of Section 7.08 are

easily integrated into the terms of Section 7.01:

> Except as set forth in Section 7.08[, under which UWM may issue an amendment and "provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website," after which the Broker's "submission of any Mortgage Loan Applications or Mortgage Loans to UWM" effectuates "Broker's agreement to the amendment without further signature or consent of any kind,"] this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM.

*See* ECF No. 13-1, PageID.99. That is, Sections 7.01 and 7.08 of the Agreement

required amendments be in a writing executed by UWM and Atlantic Trust ***unless***

UWM gives Atlantic Trust notice of the terms of an amendment and Atlantic Trust

then submits mortgage loan applications or mortgage loans to UWM. *Id.* Atlantic

Trust's conduct in such a situation would "be [Atlantic Trust's] agreement to the

amendment ***without further signature or consent of any kind***." *Id.*

This interpretation "gives effect to every word, phrase, and clause while

avoiding interpretations that would render any part of the document surplusage or

nugatory." *Bayberry*, 964 N.W.2d at 852. Atlantic Trust's attempt to rewrite the

contract "under the guise of interpretation" should fail. *See Woodington*, 792

N.W.2d at 78. The Court should enforce the Agreement's "clear and unambiguous

language" as written. *See Bayberry*, 964 N.W.2d at 852.[3] The Agreement did not require **all** amendments to it to be in a writing executed by both parties, so all of Atlantic Trust's dismissal arguments must fail.

### B.   Even if the Agreement did require every amendment to be in writing, the parties waived that requirement.

Even if Atlantic Trust were correct that that the terms of the Agreement required any amendment adding the All-In Addendum terms be in a writing signed by both parties, that requirement was waived here, and an unsigned amendment was allowed. It is well-settled that "parties to a contract are free to mutually . . . modify their contract notwithstanding a written modification . . . clause because of the freedom to contract." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 253 (Mich. 2003) ("[C]ontracts with written modification . . . clauses can be modified . . . notwithstanding their restrictive amendment clauses."). To be sure, an "oral or written expression of amendment" can evidence the required mutual assent to amend notwithstanding any writing requirement, but "a course of affirmative conduct, particularly coupled with oral or written representations," can also suffice. *Id.* at 258–59, 261.

---

[3]   To the extent the Court finds that UWM's and Atlantic Trust's interpretations of the Agreement are both reasonable, then "factual development is necessary to determine the intent of the parties," and dismissal is thus inappropriate. *See Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997).

Atlantic Trust's online acknowledgement of the All-In Addendum and its continued submission of mortgage loans to UWM following notice of the All-In Addendum terms effected a mutual waiver of any applicable formal written modification clause in the Agreement. In its Motion, Atlantic Trust contends that the requirements in Section 7.01 of the Agreement preclude UWM's claims here because the parties did not execute a written amendment incorporating the All-In Addendum's restrictions. But in the First Amended Complaint, UWM alleges that though Atlantic Trust initially stopped submitting mortgage loans to UWM after the All-In Initiative announcement, *id.*, PageID.85, ¶ 29, Atlantic Trust never terminated the Agreement per the requirements of Section 7.06, *id.*, ¶ 31. Then, in late 2022, UWM contacted Atlantic Trust to encourage it to submit new mortgage loans to UWM—and not the Select Retail Lenders; that is, subject to the same terms as the Agreement, as amended by the All-In Addendum—during a 60-day "trial" period, after which, if Atlantic Trust was not satisfied, it could terminate the Agreement and again work with the Select Retail Lenders." *Id.*, PageID.85–86, ¶¶ 36-37. Atlantic Trust accepted the invitation and, between December 22, 2022 and February 23, 2023, had 10 mortgage loans close with UWM. *Id.*, PageID.86–87, ¶¶ 39, 41-42. What's more, Atlantic Trust reviewed and, on January 19, 2023, approved—through UWM's online broker-facing portal—UWM's yearly Agreement renewal package, which included the All-In Addendum. *Id.*, ¶ 40. Later, after the end of the 60-day

period, Atlantic Trust continued to submit mortgage loans to UWM—submitting 87 in all. *Id.*, PageID.87, ¶¶ 44-45.

In other words, UWM has alleged facts that evidence "affirmative conduct by the parties that could establish" an amendment to the Agreement to adopt the All-In Addendum terms. *See Curry v. Harvest Energy Sols., LLC*, No. 15-13981, 2016 WL 3654534, at *4 (E.D. Mich. July 8, 2016) (denying motion to dismiss and finding that the defendant's argument that the plaintiff could not "sustain a modification [] argument because of the written no-modification clause," was "undercut by the Defendant's alleged conduct"). "This is all that is required at this stage of the litigation," where the Court is "charged only with determining whether [UWM] has alleged sufficient facts to support a plausible claim." *Id.*

Thus, even if the Court were to apply Atlantic Trust's Motion to the First Amended Complaint, the Motion still fails. Michigan law allows contracting parties to mutually agree to contractual amendments through affirmative conduct even where the contract has a clause requiring amendments be in writing and signed by the parties. That is what UWM alleges here—that Atlantic Trust and UWM agreed to abide by the All-In Addendum's terms and overcame any of the requirements of the written modification language in Section 7.01 of the Agreement—even if those requirements did apply here. Atlantic's Trust's Motion fails.

16

## C.     There was consideration for an amendment to the Agreement.

Finally, UWM sufficiently alleges there was adequate consideration for the amendment in the form of the parties' continued relationship after the amendment, obviating any application of MCL § 566.1's restrictions. Atlantic Trust contends that an amendment adding to the Agreement the All In Addendum's requirement to not submit loans to the Select Retail Lenders is "void as a matter of law pursuant to [MCL] § 566.1" because there was "no additional consideration was provided for the purported 'amendment.'" ECF No.11, PageID.70–71. To be sure, this law requires that oral modifications of written agreements be supported by sufficient consideration. *See* MCL § 566.1. But, even if the amendment is considered an oral modification, the parties' continued business relationship is more than enough consideration to support such an amendment to the Agreement.

The decision in *Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005), is especially instructive. There, the plaintiff broadcast network and the defendant sales company were parties to an agreement under which the defendant was the plaintiff's exclusive media representative for certain broadcast spot and program sales. *Id.* at 780. Towards the end of the parties' relationship, both parties became dissatisfied with various aspects of the relationship. *Id.* As a result, the parties agreed to amend various terms in the agreement and continued working with each other for several months until the relationship faltered again, and the parties

17

terminated the agreement. *Id.* The plaintiff sued on several theories, and the defendant counterclaimed and moved for summary disposition. *Id.* Though the trial court found that there was no consideration for the amended agreement, the Court of Appeals reversed, holding that MCL § 566.1 did not bar the amendment. *Id.* at 780-83. Relevant here, the court noted that "the fact that parties consider it to their advantage to modify their agreement is sufficient consideration" such that "no other consideration for the amended agreement was necessary." *Id.* at 782. Because the defendant "continued to represent" the plaintiff, and the plaintiff (1) "actively contacted potential clients and asked them to deal with" the defendant, and (2) did not hire another marketing firm to handle its business, reject business the defendant obtained, or interfere with the defendant's ability to obtain business for the plaintiff, the court further found that "the parties' continuation of their business relationship was consideration for the amended agreement." *Id.* at 782–83.

So too here. When Atlantic Trust submitted loans to UWM after notice of the All-In Addendum's terms and affirmatively acknowledged those terms to UWM through its online broker-facing portal, Atlantic Trust agreed to amend the Agreement with the All-In Addendum. ECF No. 13, PageID.85–87, ¶¶ 34-45. Clearly, Atlantic Trust and UWM both considered it advantageous to modify their agreement to include the All-In Addendum terms and continue their business relationship, under which Atlantic Trust again was able to make use of UWM's

superior service. *See id.*, PageID.81, 86, ¶¶ 12, 38. Atlantic Trust even elected to submit more loans even after the expiration of the 60-day "trial" period that was initially discussed. *See id.*, PageID.85–87, ¶¶ 36-45. Though "[n]o other consideration for the amended agreement was necessary" other than the mere "fact that [the] parties consider[ed] it to their advantage to modify their agreement," *Adell*, 708 N.W.2d at 782, the continuation of UWM and Atlantic Trust's business relationship was even more consideration, *id.* at 782–83.

In sum, MCL § 566.1 is of no moment here. The parties' decision to amend their Agreement to include the terms of the All-In Addendum is valid and enforceable.

## CONCLUSION

Atlantic Trust's Motion is moot, given the First Amended Complaint. Nevertheless, the Motion also fails on the merits, because (a) the Agreement did not require ***all*** amendments to it to be in a writing executed by both parties; (b) Michigan law allows contracting parties to mutually agree to unwritten contractual amendments and modifications, even if there were such a formal in-writing requirement, and such a waiver is plausibly alleged here—where Atlantic Trust submitted loans under the Agreement after notice of the amendment and also electronically acknowledged the amendment through its renewal with UWM on January 19, 2023; and (c) the amendment is not voided by MCL § 566.1 because the

parties' continued business relationship was more than enough consideration to support it. For those reasons, the Court should deny Atlantic Trust's Motion to Dismiss.

Respectfully submitted,

By: */s/ Lane Morrison*
Moheeb H. Murray (P63893)
William E. McDonald, III (P76709)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
mcdonald@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Dated: April 5, 2024           *Attorneys for United Wholesale Mortgage, LLC*

20