## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

      Plaintiff,

v.

ATLANTIC TRUST MORTGAGE
CORPORATION,

      Defendant.

Case No. 2:24-cv-10216
Hon. Terrence G. Berg
Chief Mag. J. David R. Grand

_____/

## DEFENDANT, ATLANTIC TRUST MORTGAGE CORPORATION'S, MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF NO. 13] <u>PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>

Defendant, Atlantic Trust Mortgage Corporation, by and through its attorneys, Morganroth & Morganroth, PLLC, hereby moves to dismiss Plaintiff's First Amended Complaint [ECF No. 13] with prejudice pursuant to Rule 12(b)(6) based upon the facts, authority and arguments set forth in the accompanying Brief.

Counsel for Defendant certifies that Jason R. Hirsch communicated with Plaintiff's counsel, explaining the nature of the relief to be sought by way of this motion and seeking concurrence in the relief requested in the instant Motion in accordance with Local Rule 7.1(a). Plaintiff's counsel did not provide concurrence.

WHEREFORE, Defendant respectfully requests that this Court GRANT the Motion in its entirety and dismiss Plaintiff's First Amended Complaint with prejudice.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: April 19, 2024          jhirsch@morganrothlaw.com

1

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC,

      Plaintiff,

v.

ATLANTIC TRUST MORTGAGE CORPORATION,

      Defendant.

Case No. 2:24-cv-10216
Hon. Terrence G. Berg
Chief Mag. J. David R. Grand

_____/

## DEFENDANT, ATLANTIC TRUST MORTGAGE CORPORATION'S, BRIEF IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT [ECF NO. 13] PURSUANT TO FED. R. CIV. P. 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

INDEX OF AUTHORITIES......................................................................... iii

STATEMENT OF ISSUES PRESENTED................................................... v

STATEMENT OF FACTS .............................................................................1

ARGUMENT ..................................................................................................4

   I.   Standard of Review...............................................................................4

   II.   UWM Has Failed to State A Claim Upon Which Relief May Be Granted Because the Claim is Based Entirely Upon the Ultimatum in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Which Is Unenforceable as a Matter of Law ...................................................................................6

      A.   The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Is Invalid Under Section 7.01 Because It Is Undisputedly Unsigned .........................................................................................7

      B.   The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Is Also Invalid Under Section 7.08 ..............................8

         1.   Section 7.08 Provides a Limited Exception to the Requirement that All Amendments to the 2018 Wholesale Broker Agreement Must Be In Writing Which is Not Applicable Here ...................................9

         2.   The Express Language of Section 7.08 Makes It Clear that It Cannot and Does Not Apply to the Type of Amendment Purportedly Implemented in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement ................................................................................10

         3.   UWM's Assertion that Section 7.08 Could Somehow Apply to the Amendments at Issue Is Without Merit ...............................................13

i

C.    The 2022 Unsigned Amendment to the 2018 Wholesale Mortgage
      Agreement is Void Because UWM Provided No Additional Consideration
      for the Purported Amendment as Required by Michigan Law ....................14

D.    The 2022 Unsigned Amendment to the 2018 Wholesale Broker
      Agreement is Void Because, on its face, it Would Not Become Effective
      Unless it is Executed by the Parties..............................................................17

CONCLUSION .........................................................................................................20

CERTIFICATE OF SERVICE ..............................................................................21

# INDEX OF AUTHORITIES

**Cases:**                                                                 **Page(s):**

*Adell Broad. Corp. v. Apex Media Sales, Inc.*,
    269 Mich. App. 6; 708 N.W.2d 778 (2005) .......................................... 15, 16

*Ashcroft v. Iqbal*,
    556 U.S. 662; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) .................................5

*Association of Cleveland Fire Fighters v. City of Cleveland*,
    502 F.3d 545 (6th Cir. 2007) ...............................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544;  127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) ...........................5, 6

*Carter v. Target Corp.*,
    541 Fed. App'x 413 (5th Cir. 2013) .............................................................18

*Dugan v. State Farm Mut. Auto. Ins. Co.,*
    845 F.Supp.2d 803 (E.D. Mich. 2012) ....................................................5, 18

*Holland v. Trinity Health Care Corp.*,
    287 Mich. App. 524; 791 N.W.2d 724 (2010) ................................................7

*Vickers v. Am. Oil Co.*,
    26 Mich. App. 245; 182 N.W.2d 592 (1970) ................................................16

*Woodington v. Shokoohi*,
    288 Mich. App. 352; 792 N.W.2d 63 (2010) ................................................10

## Other Authorities:

17 Am Jur 2d, Contracts, § 119 ..............................................................16

Mich. Comp. Laws Serv. § 566.1 ............................................... 14, 15, 19

**<u>Rules:</u>**

Rule 12(b)(6)..............................................................................................4

## <u>STATEMENT OF ISSUES PRESENTED</u>

I.    Whether Plaintiff, United Wholesale Mortgage, LLC, has failed to state a claim for which relief may be granted against Defendant, Atlantic Trust Mortgage Corporation, where:

     a.  The purported incomplete and unsigned amendment to the 2018 Wholesale Broker Agreement upon which Plaintiff bases its claim was never executed by the Parties at all; and

     b.  The existing 2018 Wholesale Broker Agreement between the Parties may only be amended pursuant to a writing executed by the Parties.

Defendant Answers:      Yes

Plaintiff Answers:       No

## STATEMENT OF FACTS

On January 26, 2024, Plaintiff, United Wholesale Mortgage, LLC ("UWM"), filed its initial Complaint against Defendant, Atlantic Trust Mortgage Corporation ("Atlantic Trust"). ECF No. 1. Defendant filed its Motion to Dismiss UWM's Complaint on March 15, 2024. ECF No. 11. On April 5, 2024, UWM filed its First Amended Complaint (the "FAC").[1] ECF No. 13. Also on April 5, 2024, UWM filed its Opposition to the Motion to Dismiss the Complaint.[2] ECF No. 14.

In its FAC, UWM alleges that it is a wholesale mortgage lender which works with correspondent lenders referred to by UWM as "Broker Partners." ECF No. 13, PageID.80 at ¶ 7. UWM alleges that its Broker Partners communicate directly with borrowers to originate mortgage loans. *Id*. at ¶ 8.

Specifically, UWM alleges that Atlantic Trust is an independent mortgage broker that entered into a Wholesale Broker Agreement with UWM in January 2018 (the "2018 Wholesale Broker Agreement"). *Id*., PageID.80-81 at ¶¶ 11, 13.

---

[1] Many of the purported facts alleged in the FAC are false, inaccurate and/or misleading. Because this Motion is brought pursuant to Fed. R. Civ. P. 12(b)(6), Atlantic Trust will not address the falsity, inaccuracies and misleading nature of the allegations in the FAC at this time and acknowledges that the Court must accept any well-pled *factual* allegations contained in the FAC as true for the purposes of this Motion only.

[2] Inasmuch as UWM filed the FAC, Atlantic Trust agrees that its Motion to Dismiss the initial Complaint is moot.

UWM has attached the 2018 Wholesale Broker Agreement as Exhibit A to its Complaint. ECF No. 13-1. UWM does *not* allege that the 2018 Wholesale Broker Agreement prohibited Atlantic Trust from submitting mortgage loans to any wholesale mortgage lender of Atlantic Trust's choice and confirms that Atlantic Trust had no obligation to submit any mortgage loans at all to UWM at all pursuant to the 2018 Wholesale Broker Agreement. See e.g., ECF No. 13, PagID.81 at ¶ 16.

On March 4, 2021, UWM announced its "All-In Initiative" (the "Ultimatum"). *Id*., PageID.83 at ¶ 22. As part of the Ultimatum, UWM announced that it had decided to end its business relationship with any Broker Partners who chose to continue originating loans with two specific retail lenders, Rocket Mortgage and Fairway Independent Mortgage, which UWM refers to as the "Select Retailer Lenders," and who are major direct competitors of UWM in the wholesale mortgage market. *Id*.

UWM alleges that Atlantic Trust ceased submitting mortgage loans to UWM after UWM's announcement of the Ultimatum. *Id*., PageID.85 at ¶ 29. UWM alleges, solely upon information and belief, that Atlantic Trust "never terminated the [2018 Wholesale Broker] Agreement under Section 7.06." *Id*. at ¶ 31.

UWM alleges that, on October 4, 2022, Atlantic Trust closed a loan using one of the Select Retail Lenders. *Id*. at ¶ 33.

UWM alleges that, in or around November 2022, it contacted Atlantic Trust in order to regain Atlantic Trust's business. *Id*. at ¶ 35.

UWM alleges that, in December 2022, it "encouraged Atlantic Trust to submit new mortgage loans to UWM—and not the Select Retail Lenders—during a 60-day 'trial' period, after which, if Atlantic Trust was not satisfied with submitting mortgage loans to UWM and not the Select Retail Lenders, it could terminate the Agreement and again work with the Select Retail Lenders."[3] *Id*., PageID.85-86 at ¶ 36. According to UWM, Atlantic Trust began to again send mortgage loans to UWM during the "trial period." *Id*. at ¶ 39.

UWM alleges that, in December 2022, "Atlantic Trust approved the renewal [which included the Ultimatum] through UWM's online broker-facing portal" (the

---

[3] UWM's allegation that there was a 60-day "trial period" that required Atlantic Trust to comply with the Ultimatum is implausible and nonsensical. If Atlantic Trust in fact had to comply with the Ultimatum during the "trial period," it was not a "trial period" at all because, as UWM concedes, Atlantic Trust could have terminated the agreement at any time (with 7 days' notice) *regardless* of any purported "trial period." ECF No. 13, PageID.81-82 at ¶ 17, PageID.85-86 at ¶ 36; ECF No. 13-1, PageID.99 at § 7.06; ECF No. 13-2, PageID.117 at § 7.06. Furthermore, UWM's position would render the "trial period" illusory because it would mean nothing other than Atlantic Trust entering into a perpetual agreement with UWM, which included the Ultimatum. Specifically, UWM alleges that it was somehow Atlantic Trust's obligation to "terminate the Agreement at the end of the [trial] period," and, if Atlantic Trust did not do so, it remained bound, *i.e.*, according to UWM's position, the "trial period" simply meant entering into an agreement with UWM. ECF No. 13, PageID.85-86 at ¶¶ 36, 37.

"2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement"). *Id*., PagID.86-87 at ¶ 40.

UWM alleges that, since December 2022, Atlantic Trust submitted "at least 71 mortgage loans" to UWM's excluded direct competitors, which UWM alleges is a breach of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement. *Id*., PagID.87 and 8 at ¶¶ 43, 45, 47-48.

UWM alleges a single claim for breach of contract in its FAC based solely upon Atlantic Trust's alleged breach of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement. *Id*., PagID.88. UWM's FAC should be dismissed with prejudice as a matter of law because the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement which UWM claims was breached and which is attached as Exhibit B to UWM's Complaint [ECF No. 13-2] was never completed nor executed by the Parties and therefore is unenforceable on its face. Furthermore, the 2018 Wholesale Broker Agreement could only be amended in a writing executed by the Parties.

## **ARGUMENT**

### I.    **Standard of Review**.

A motion brought pursuant to Rule 12(b)(6)  for failure to state a claim upon which relief may be granted tests the legal sufficiency of a plaintiff's claims. "In deciding a motion under Rule 12(b)(6), the court must construe the complaint in

favor of the plaintiff, accept the factual allegations as true, and determine whether the allegations present plausible claims … The pleading must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" *Dugan v. State Farm Mut. Auto. Ins. Co.,* 845 F.Supp.2d 803, 805 (E.D. Mich. 2012), citing *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556;  127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). "'Factual allegations must be enough to raise a right to relief above the speculative level[.]'" *Association of Cleveland Fire Fighters v. City of Cleveland,* 502 F.3d 545, 548 (6th Cir. 2007), citing *Twombly,* 550 U.S. at 544.

"The court should first identify any conclusory allegations and bare assertions that are not entitled to an assumption of truth, then consider the factual allegations that are entitled to a presumption of truth and determine if they plausibly suggest entitlement to relief." *Dugan,* 845 F. Supp. 2d at 805, citing *Ashcroft v. Iqbal,* 556 U.S. 662, 684; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Iqbal*, 556 U.S. at 678. The Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Id*. (internal quotation marks and citation omitted).

Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Id*. at 679. "Determining whether a complaint states a plausible

claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* (internal citation omitted). If the factual allegations are not "enough to raise a right to relief above the speculative level," the court should grant the motion. *Twombly*, 550 U.S. at 555.

## II.    UWM Has Failed to State A Claim Upon Which Relief May Be Granted Because the Claim is Based Entirely Upon the Ultimatum in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Which Is Unenforceable as a Matter of Law.

UWM's single claim for breach of contract is premised upon its allegation that the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement, which contains the Ultimatum and which UWM alleges is an "amendment" to the 2018 Wholesale Broker Agreement, is somehow enforceable even though it was never executed by Atlantic Trust and even though the amendment at issue here (the inclusion of the Ultimatum) is not the type of amendment which could be unilaterally implemented by UWM without a signed writing.

**A. The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Is Invalid Under Section 7.01 Because It Is Undisputedly Unsigned.**

An unsigned amendment to the 2018 Wholesale Broker Agreement is expressly prohibited by Section 7.01 of the 2018 Wholesale Broker Agreement itself. Specifically, Section 7.01 of the 2018 Wholesale Broker Agreement states:

> **7.01. Amendment of Agreement**. Except as set forth on [sic] Section 7.08, this Agreement may *not* be amended except *in writing executed by authorized representatives of both Broker and UWM*. ECF No. 13-1, PageId.99 at § 7.01 (italics added).

Thus, pursuant to Section 7.01 of the 2018 Wholesale Broker Agreement, an "amendment" to the 2018 Wholesale Broker Agreement is valid *if and only if* it is "in writing executed by authorized representatives of both Broker [Atlantic Trust] and UWM." ECF No. 13-1, PageID.99 at § 7.01. Clear and unambiguous contract language must be enforced as written. *Holland v. Trinity Health Care Corp.*, 287 Mich. App. 524, 527; 791 N.W.2d 724 (2010).

The purported "amendment" to the 2018 Wholesale Broker Agreement attached by UWM as Exhibit B to its Complaint is undisputedly *not* signed by either Party and UWM does not even *allege* that the purported "amendment" was ever signed. ECF No. 13-2, PageID.122 (2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement); ECF No. 13, PageID.86-87 at ¶ 40 (UWM vaguely alleges that "Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, Atlantic Trust approved

7

the renewal through UWM's online broker-facing portal."). Thus, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement cannot be valid based on Section 7.01 as a matter of law because there is no writing signed by UWM and Atlantic Trust.

### B. The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement Is Also Invalid Under Section 7.08.

In its response to the Motion to Dismiss the Complaint, UWM concedes that the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement is not and could not have been effectuated under Section 7.01. Instead, UWM contends that the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement is somehow a valid amendment based upon Section 7.08 of the 2018 Wholesale Broker Agreement. ECF No. 43, PageID.140-144.

Section 7.08 of the 2018 Wholesale Broker Agreement states:

> **7.08. UWM Amendments & Website.** This Agreement, and *UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans ...* may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. *Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM* after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker. ECF No. 13-1, PageID.99 at § 7.08 (italics added).

"Mortgage Loan Applications," "Mortgage Loans" and "Mortgage Loan" are

expressly defined terms in the 2018 Wholesale Broker Agreement. Specifically, the 2018 Wholesale Broker Agreement defines "Mortgage Loan Applications" to mean "an application for a Mortgage Loan processed by Broker *in accordance with the lending requirements of UWM*, including but not limited to those contained in the UWM Guide, the terms of this Agreement, all applicable governmental regulations, and the generally accepted practices and procedures within the mortgage industry." ECF No. 13-1, PageID.92 at § 1.19 (italics added). "Mortgage Loans" means "each and every Mortgage Loan, which is *subject to this Agreement*." Id. at § 1.18 (italics added). "Mortgage Loan" means "a loan to individuals which is secured by a Mortgage and *is subject to this Agreement*." *Id.* at § 1.17 (italics added).

Based upon these definitions, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement could not be a valid amendment implemented under Section 7.08 because the purported amendments to the 2081 Wholesale Broker Agreement, by their terms, do not relate to "Mortgage Loans" or "Mortgage Loan Applications" as those terms are defined in the 2018 Wholesale Broker Agreement.

1. **Section 7.08 Provides a Limited Exception to the Requirement that All Amendments to the 2018 Wholesale Broker Agreement Must Be In Writing Which is Not Applicable Here.**

Section 7.08's *limited* exception to Section 7.01's requirement that any modification to the 2018 Wholesale Broker Agreement must be in a writing

executed by both parties applies only to *amendments concerning Mortgage Loan Applications and Mortgage Loans submitted to UWM*, *not* the general overarching terms of the agreement between UWM and Atlantic Trust (*i.e.*, by limiting and restricting to whom Atlantic Trust, a purportedly independent mortgage broker (ECF No. 13, PageID.80 at ¶ 7), was permitted to submit mortgage loans and mortgage loan applications). ECF No. 13-1, PageID.99 at § 7.08. In fact, Section 7.08 cannot, as a matter of law, be read to apply to all types of amendments to the 2018 Wholesale Broker Agreement because every word, phrase, and clause in a contract must be given effect, and a contract interpretation that would render *any* part of the contract surplusage or nugatory must be avoided. *Woodington v. Shokoohi*, 288 Mich. App. 352, 374; 792 N.W.2d 63 (2010). Applying Section 7.08 to *every* type of amendment to the 2018 Wholesale Broker Agreement would completely gut Section 7.01 and render Section 7.01 as mere surplusage, which would be a legally impermissible reading of the 2018 Wholesale Broker Agreement.

**2. The Express Language of Section 7.08 Makes It Clear that It Cannot and Does Not Apply to the Type of Amendment Purportedly Implemented in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement.**

The language of Section 7.08 makes clear that it could not apply to the "amendments" purportedly implemented by UWM in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement because those amendments

did *not* relate to the defined terms "Mortgage Loans" or "Mortgage Loan Applications."

Here, UWM has sought to impose two entirely new terms via the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement which have nothing to do with Mortgage Loan Applications or Mortgage Loans submitted *to UWM*. Specifically, via the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement, UWM seeks to add:

1. The Ultimatum in Section 3.03(x) which prohibits a "Broker Partner" from submitting loans to Select Retail Lenders (ECF No. 13-2, PageID.108 at § 3.03(x)) which did not exist at all in the 2018 Wholesale Broker Agreement (ECF No. 13-1, PageID.97 at § 3.03 [Section 3.03 contains no subsection (x) at all in the 2018 Wholesale Broker Agreement]); and

2. The liquidated damages provision in Section 7.30 (ECF No. 13-2, PageID.121, § 7.30) which did not exist at all in the 2018 Wholesale Broker Agreement (ECF No. 13-2, PageID.101 [no section 7.30 at all]).

These entirely new terms are antithetical to the terms of the 2018 Wholesale Broker Agreement and have nothing to do with Mortgage Loan Applications and Mortgage Loans submitted by Atlantic Trust *to UWM*. Such alleged amendments could only be accomplished *pursuant to a signed writing as required by Section 7.01*. ECF No. 13-1, PageID.99 at § 7.01.

The primary section purportedly added to the 2018 Wholesale Broker Agreement via the 2022 Unsigned Amendment to the 2018 Wholesale Broker

Agreement is Section 3.03(x).[4] ECF No. 13, PageID.13 at ¶ 23; ECF No. 13-2, PageID.111 at § 3.03(x). Section 3.03(x) relates only to the *undefined lower-case terms* "mortgage loan" or "mortgage loan application." *Id*. That is, the purported addition of Section 3.03(x) to the 2018 Wholesale Broker Agreement could not be an amendment made pursuant to Section 7.08 because, on its face, it does not relate to the defined terms "Mortgage Loan" or "Mortgage Loan Application."[5]

By definition, a mortgage loan application processed by Atlantic Trust in accordance with the lending requirements of a lender *other than* UWM is simply not covered by Section 7.08 at all because Section 7.08 applies only to

---

[4] Section 7.30 was also added in the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement. ECF No. 13, PageID.83 at ¶¶ 23, 26; ECF No. 13-2, PageID.121-122 at § 7.30. Section 7.30 also only relates to "mortgage loans" and "mortgage loan application" (lowercase) inasmuch as it provides for liquidated damages in the event of a breach of Section 3.03(x) only. *Id*.

[5] The lack of capitalization of these terms in Section 3.03(x) is no mere typographical error. UWM clearly intends Section 3.03(x) to apply to a different universe of mortgage loan applications than the universe encompassed by the defined term "Mortgage Loan Application," which is limited to only "a Mortgage Loan processed by Broker *in accordance with the lending requirements of UWM."* ECF No. 13-2, PageID.104 at § 1.19 (emphasis added). UWM admittedly seeks to prohibit its "Broker Partners" from submitting mortgage loans to Select Retail Lenders which are inherently mortgage loans prepared in accordance with the lending requirements of one of the prohibited "Select Retail Lenders," *not* UWM. See, ECF No. 13, PageID.83-84 at ¶ 24

amendments concerning Mortgage Loans Applications (capitalized, as that term is defined in the 2018 Wholesale Broker Agreement).[6]

### 3. UWM's Assertion that Section 7.08 Could Somehow Apply to the Amendments at Issue Is Without Merit.

In its opposition to the Motion to Dismiss the Complaint, UWM contends that an amendment to the 2018 Wholesale Broker Agreement must by "in a writing executed by UWM and Atlantic Trust **unless** UWM gives Atlantic Trust notice of the terms of the amendment and Atlantic Trust then submits mortgage loans applications or mortgage loans to UWM." ECF No. 14, PageID.143 (emphasis in original). These linguistic gymnastics make no sense because: (1) UWM *necessarily* has to give notice of any amendment (whether under Section 7.01 or Section 7.08), and (2) the purported amendment to the agreement only comes into play if Atlantic Trust subsequently submits a mortgage loan application. Thus, according to UWM, there would never be any need for the Parties to execute an amendment under Section 7.01 because, once such an amendment is presented by UWM, it is *de facto* accepted (under Section 7.08) as soon as Atlantic Trust

---

[6] Section 7.08 also relates to "Mortgage Loans" but, as a matter of logic, this must apply to a Mortgage Loan based upon UWM's lending requirements.

submits a mortgage loan application.[7] UWM's position would render Section 7.01 nugatory.

Thus, because UWM does not even allege that Atlantic Trust ever agreed to the purported "amendment" in a signed writing, as required by the clear and unambiguous terms of Section 7.01 of the 2018 Wholesale Broker Agreement, and the document attached to the Complaint by UWM which purports to be the "amendment" is undisputedly *not* signed, the purported "amendment" is unenforceable and could not have modified the 2018 Wholesale Broker Agreement. ECF No. 13-1, PageID.99 at § 7.01.

## C. The 2022 Unsigned Amendment to the 2018 Wholesale Mortgage Agreement is Void Because UWM Provided No Additional Consideration for the Purported Amendment as Required by Michigan Law.

No additional consideration was provided for the purported "amendment" of the 2018 Wholesale Broker Agreement and therefore it is void as a matter of law pursuant to Mich. Comp. Laws Serv. § 566.1. Specifically, although Mich. Comp. Laws Serv. § 566.1 permits amendments to contracts without additional

---

[7] If Atlantic Trust never submits a mortgage loan application to UWM after UWM has provided notice of an amendment, then the agreement itself is moot.

consideration,[8] an amendment made *without* additional consideration is valid *only* where the amendment is *memorialized in a signed writing*. Mich. Comp. Laws Serv. § 566.1 states:

> An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease, mortgage or security interest shall not be valid or binding *unless it shall be in writing and signed by the party against whom it is sought to enforce the change*, modification, or discharge. (emphasis added).

The Michigan Court of Appeals has held that Section 566.1 applies to *all types* of contracts. In *Adell Broad. Corp. v. Apex Media Sales, Inc.*, 269 Mich. App. 6, 10; 708 N.W.2d 778, 781 (2005), the Michigan Court of Appeals held:

> Defendants argue that MCL 566.1 only applies to contracts involving real or personal property. *We disagree*. It is a common grammatical rule of construction that *a modifying clause will be construed to modify only the last antecedent* unless some language in the statute requires a different interpretation. MCL 566.1 addresses the amendment, modification, or discharge of several different legal documents, the last of which is "any mortgage or other security interest in personal or real property." The phrase "in personal or real property" grammatically modifies "mortgage or other security interest." *It would be contrary to the plain meaning of the statute and rules of statutory construction to read the modifying phrase "in personal or real property" to modify "any contract, obligation or lease."* (emphasis added, internal citation omitted).

---

[8] UWM does *not* allege that it provided any additional consideration for the purported "amendment" and clearly did not do so pursuant to the terms of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement.

Notwithstanding the foregoing, in its response to the Motion to Dismiss the Complaint, UWM contends that the consideration was the parties' continued business relationship. ECF No. 14, PageID.148.

But the Parties' business relationship already existed pursuant to the 2018 Wholesale Broker Agreement and would have continued to exist under those terms because, as UWM alleges, neither party had terminated the 2018 Wholesale Broker Agreement. ECF No. 13, PageID.85-86 at ¶¶ 36, 38. In fact, the performance of a pre-existing duty or legal obligation is generally held *not* to be sufficient consideration for a return promise. 17 Am Jur 2d, Contracts, § 119, p 465 ("The general rule is that a promise to do that which the promisor is legally bound to do, or the performance of an existing legal obligation, does not constitute consideration, or sufficient consideration, for a contract."). This rule has been consistently applied in Michigan Courts. See e.g. *Vickers v. Am. Oil Co.*, 26 Mich. App. 245, 152; 182 N.W.2d 592 (1970) (the Court found "absolutely no indication that [the plaintiff's] continuing tenancy was any more than what was already required of him under the lease … Under these circumstances, we are constrained to hold that there was no valid subsequent oral modification of the lease.").

In its response to the Motion to Dismiss the Complaint, UWM contends that *Adell Broad. Co.*, 269 Mich. App. at 11, somehow supports UWM's position. On the contrary, the *Adell* Court held, "In this case, the parties waived certain terms of

16

their original agreement in a signed writing. In doing so, the parties considered the changes to their advantage." Because, unlike the matter at bar, a signed writing existed in the *Adell* case, there was no requirement for additional consideration there.

### D. The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement is Void Because, on its face, it Would Not Become Effective Unless it is Executed by the Parties.

The 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement clearly contemplates that it would *not* become effective unless and until it is executed by the Parties. Specifically, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement contains signature blocks for both Parties and Section 7.19 of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement acknowledges that it could be executed in counterparts or via electronic signature. ECF No. 13-2, PageID.122 (blank signature blocks), PageID.119 at § 7.19. But the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement is not signed at all, electronically or otherwise. Tellingly, UWM cannot and does not even allege that it has a signed copy of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement. Instead, UWM merely vaguely alleges that "Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal." This

Court is not obligated to accept the plaintiff's allegations as true where, as here, they are *contradicted* by a document attached to the Complaint (ECF No. 13-2), which is completely unsigned purported amendment to the 2018 Wholesale Broker Agreement which contains no indicia at all that it was agreed to by Atlantic Trust. See e.g., *Carter v. Target Corp.*, 541 Fed. App'x 413, 417 (5th Cir. 2013) (refusing to accept as true factual allegations that were contradicted by the plaintiff's EEOC charging documents, which the defendant had attached to its motion to dismiss).

Here, UWM's bald, conclusory allegation that Atlantic Trust somehow "approved the renewal through UWM's online broker-facing portal" is entirely implausible as a matter of law and entirely contrary to the requirement that any amendments to the 2018 Wholesale Broker Agreement could only be made in a signed writing executed by each of the Parties. *Dugan*, 845 F.Supp.2d at 805 (allegations must, at a minimum, present legally plausible claims); ECF N. 13-1, PageID.99 at § 7.01.

UWM's allegation is entirely belied and contradicted by the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement, which UWM attaches to its Complaint, and which, on its face, confirms that the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement was never signed by the Parties even though it expressly contemplates execution by way of the Parties affixing their

18

authorized signatures. ECF No. 13-2, PageID.122 (blank signature block), PageID.119 at § 7.19 (identifying the acceptable methods for executing the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement). Furthermore, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement provides no indicia at all that it was "approved" by Atlantic Trust through UWM's "online broker facing portal" nor in any other way.

In sum, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement is void because: (1) it does not comply with the amendment requirement of Section 7.01 of the 2018 Wholesale Broker Agreement (ECF No. 13-1, PageID.99 at § 7.01); (2) it could be amended under Section 7.08 of the 2018 Wholesale Broker Agreement because the type of amendment is not the type permitted by Section 7.08; (3) UWM never provided any additional consideration for the purported "amendment" which is required pursuant to Mich. Comp. Laws Serv. § 566.1 ; and (3) on its face, the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement confirms that it is not effective unless and until it is signed by the Parties. As a result, UWM's claim for breach of the 2022 Unsigned Amendment to the 2018 Wholesale Broker Agreement fails as a matter of law and should be dismissed with prejudice.

## <u>CONCLUSION</u>

For all of the foregoing reasons, Atlantic Trust respectfully requests that this Court GRANT the instant Motion and dismiss the Complaint with prejudice.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: <u>/s/ Jeffrey B. Morganroth</u>
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated:  April 19, 2024          jhirsch@morganrothlaw.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 19, 2024, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send electronic notification of such filing to all counsel of record.

MORGANROTH & MORGANROTH, PLLC

By: <u>/s/ Jason R. Hirsch</u>
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: jhirsch@morganrothlaw.com