## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC, | |
| Plaintiff, | |
| v. | Case No. 2:24-cv-10216 |
| ATLANTIC TRUST MORTGAGE CORPORATION, | Hon. Terrence G. Berg<br>Mag. David R. Grand |
| Defendant. | |

## UNITED WHOLESALE MORTGAGE, LLC'S OPPOSITION TO ATLANTIC TRUST MORTGAGE CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

UWM opposes Atlantic Trust's Motion to Dismiss, ECF No. 15, PageID.151. The Court should deny the Motion because:

1.     The parties' Wholesale Broker Agreement did not require all amendments to it to be in a writing executed by both parties, and UWM has plausibly alleged that Atlantic Trust agreed to the All-In Addendum amendment or that the parties waived any formal writing and signature requirements by submitting loans to UWM after notice of the All-In Addendum and by electronically acknowledging the amendment through its yearly Agreement renewal.

2.     The All-In Addendum is of the type of amendment contemplated by Section 7.08, which requires no writing at all.

1

3.     The All-In Addendum amendment is not voided by MCL § 566.1 because the parties' continued business relationship is sufficient consideration to support it.

4.     UWM plausibly alleges Atlantic Trust's affirmative agreement to the All-In Addendum through UWM's online broker-facing portal.

For those reasons, UWM requests that the Court deny Atlantic Trust's Motion to Dismiss.

Respectfully submitted,

By: */s/ Lane Morrison*

Moheeb H. Murray (P63893)          A. Lane Morrison (P87427)
Mahde Y. Abdallah (P80121)         **BUSH SEYFERTH PLLC**
**BUSH SEYFERTH PLLC**             5810 Wilson Road, Suite 125
100 West Big Beaver Road, Suite 400   Humble, TX 77396
Troy, MI 48084                     T/F: (281) 930-6853
T/F: (248) 822-7800                morrison@bsplaw.com
murray@bsplaw.com
abdallah@bsplaw.com
*Attorneys for United Wholesale Mortgage, LLC*

Dated: May 10, 2024.

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

     Plaintiff,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

     Defendant.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

## UNITED WHOLESALE MORTGAGE, LLC'S BRIEF IN SUPPORT OF ITS OPPOSITION TO ATLANTIC TRUST MORTGAGE CORPORATION'S MOTION TO DISMISS FIRST AMENDED COMPLAINT

## <u>STATEMENT OF ISSUES PRESENTED</u>

1.      Does UWM plausibly allege a breach of a validly amended Wholesale Broker Agreement where the Agreement does not require written and signed amendments in all circumstances, where the All-In Addendum amendment is of the type authorized by the only reasonable interpretation of the Agreement, where Atlantic Trust submitted loans under the Agreement after notice of the All-In Addendum and also electronically acknowledged it, and where the parties' continued business dealings was consideration for the All-In Addendum?

Atlantic Trust answers:               No.

UWM answers:                          Yes.

The Court should answer:              Yes.

## <u>CONTROLLING OR MOST APPROPRIATE AUTHORITIES</u>

*Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251 (Mich. 2003).

*DeBoer v. Geib,* 238 N.W. 226 (Mich. 1931).

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846 (Mich. Ct. App. 2020).

*Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005).

# TABLE OF CONTENTS

**Page**

INTRODUCTION .................................................................................................1

BACKGROUND ..................................................................................................2

    A.    UWM Invests Resources that Benefit the Businesses of Independent Mortgage Brokers That Offer Its Products......................2

    B.    Atlantic Trust And UWM Enter Into a Wholesale Broker Agreement. ...............................................................................3

    C.    UWM Announces the All-In Initiative and Implements the All-In Addendum................................................................................4

    D.    Atlantic Trust Agrees to the All-In Addendum But Submits Loans to the Select Retail Lenders Anyway. ........................................5

    E.    UWM Sues. Atlantic Trust Claims It Never Agreed to the All-In Addendum....................................................................6

LEGAL STANDARD..........................................................................................7

ARGUMENT .......................................................................................................8

    I.    The Agreement did not require every amendment to be in writing signed by both parties. .............................................8

        A.    The Agreement's plain terms allow multiple ways to effect a valid amendment, and not all require a signed writing. ......................................................................9

        B.    Even if the Agreement did require every amendment to be in writing, UWM alleges facts showing waiver of that requirement. ..........................................................10

    II.    UWM Plausibly Alleges a Valid Amendment Under Section 7.08. ...........................................................................12

        A.    Section 7.08, by its plain terms, applies to UWM amendments to the Agreement...................................13

            i.    Section 7.08 does not render Section 7.01 superfluous...................................................14

**TABLE OF CONTENTS**
**(continued)**

**Page**

       ii.    Atlantic Trust's interpretation is unreasonable and cannot even render the Agreement ambiguous. .............16

    B.    The All-In Addendum falls within Atlantic Trust's strained interpretation of Section 7.08. ....................................18

III.    There was sufficient consideration for the All-In Addendum. ...........20

IV.    UWM Plausibly Alleges Atlantic Trust's Affirmative Agreement to the All-In Addendum, and Exhibit B is a Mere Example of How Its Terms Were Incorporated into the Agreement. .........................................................................................23

CONCLUSION .......................................................................................................25

# INDEX OF AUTHORITIES

**Page**

## CASES

*Adell Broad. v. Apex Media Sales*,
   708 N.W.2d 778 (Mich. Ct. App. 2005) ................................................. 21, 22, 23

*Alpha Capital Mgt. Inc. v. Rentenbach,*
   792 N.W.2d 344 (Mich. Ct. App. 2010) ............................................................. 9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ............................................................................................ 7

*Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*,
   964 N.W.2d 846 (Mich. Ct. App. 2020) ................................................. 12, 13, 16

*Bryan v. Michigan Funeral Directors Ass'n, Inc.*,
   No. 5:00-CV-99, 2001 WL 311249 (W.D. Mich. Jan. 16, 2001) ...................... 18

*ChiRhoClin, Inc. v. Grand River Aseptic Mfg., Inc.*,
   No. 1:17-CV-993, 2019 WL 13100196 (W.D. Mich. June 20,
   2019) ................................................................................................................. 18

*Curry v. Harvest Energy Sols., LLC*,
   No. 15-13981, 2016 WL 3654534 (E.D. Mich. July 8, 2016) ........................... 11

*DeBoer v. Geib*,
   238 N.W. 226 (Mich. 1931) ............................................................................. 17

*Gallo v. Moen Inc.*,
   813 F.3d 265 (6th Cir. 2016) ........................................................................... 13

*Haefele v. Meijer, Inc.*,
   418 N.W.2d 900 (Mich. Ct. App. 1987) ........................................................... 17

*Harrow Prod., Inc. v. Liberty Mut. Ins. Co.*,
   64 F.3d 1015 (6th Cir. 1995) ........................................................................... 17

*Henderson v. State Farm Fire & Cas. Co.*,
   596 N.W.2d 190 (Mich. 1999) ......................................................................... 13

*Klapp v. United Ins. Grp. Agency, Inc.*,
   663 N.W.2d 447 (Mich. 2003) ......................................................................... 18

## INDEX OF AUTHORITIES
### (continued)

**Page**

*Meagher v. Wayne State Univ.*,
    565 N.W.2d 401 (Mich. Ct. App. 1997)............................................................18

*Melo v. Zumper, Inc.*,
    439 F. Supp. 3d 683 (E.D. Va. 2020) ...................................................24

*Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*,
    666 N.W.2d 251 (Mich. 2003)....................................................................10

*Shirley v. Rocket Mortgage*,
    No. 2:21-cv-13007, 2022 WL 2541123 (E.D. Mich. July 7, 2022) ...................24

*Smith v. Smith*,
    823 N.W.2d 114 (Mich. Ct. App. 2011)............................................................20

*Universal Underwriters Ins. Co. v. Kneeland*,
    628 N.W.2d 491 (Mich. 2001)........................................................ 13, 18

*Wamer v. Univ. of Toledo*,
    27 F.4th 461 (6th Cir. 2022) .................................................................7

*Woodington v. Shokoohi*,
    792 N.W.2d 63 (Mich. Ct. App. 2010)........................................ 13, 16

*WXON-TV, Inc. v. A.C. Nielsen Co.*,
    740 F. Supp. 1261 (E.D. Mich. 1990) ............................................................20

*Yerkovich v. AAA*,
    610 N.W.2d 542 (Mich. 2000)..........................................................................22

## STATUTES

MCL § 566 ..................................................................................... passim

MCL §§ 450.831-849................................................................................24

## REGULATIONS

2007 Mich. OAG No. 7207,
    2007 WL 2924079 (Oct. 2, 2007)......................................................................24

**INTRODUCTION**

Atlantic Trust breached its Wholesale Broker Agreement with UWM by sending mortgage loans to certain Select Retail Lenders despite express contractual prohibitions on doing so. Atlantic Trust now seeks to dodge a suit on that breach by claiming that the pertinent contractual prohibitions—the All-In Addendum—were part of an invalid amendment to the parties' Agreement. The Court should rebuff that effort.

First, contrary to Atlantic Trust's contentions, the parties' Agreement did not require all amendments to it to be in a writing executed by both parties; and even if it did, UWM's allegations show that the parties waived any such requirement through their conduct. Second, UWM has plausibly alleged that the All-In Addendum was effected as an amendment under Section 7.08 of the Agreement: Though Atlantic Trust's interpretation of that Section's scope and applicability is unreasonable, the All-In Addendum became effective even under that unreasonably limited interpretation. Third, the amendment is not voided by MCL § 566.1 because the parties' continued business relationship is more than enough consideration to support it. And finally, UWM plausibly alleges Atlantic Trust's affirmative agreement to the All-In Addendum, despite Atlantic Trust's misunderstanding of UWM's complaint exhibits.

UWM plausibly alleges a valid and enforceable Agreement that was amended

1

by the All-In Addendum, which restricted Atlantic Trust from submitting loans to the Select Retail Lenders. Not only did Atlantic Trust submit loans under the Agreement to UWM after notice of the amendment (showing its agreement to the amendment), it also electronically acknowledged the amendment through its online renewal process with UWM on January 19, 2023. And Atlantic Trust's breach of the Agreement, as amended by the All-In Addendum appears undisputed. The Motion to Dismiss should be denied.

## BACKGROUND

### A. UWM Invests Resources that Benefit the Businesses of Independent Mortgage Brokers That Offer Its Products.

UWM is a wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") across the country to provide home mortgage products to borrowers. *See* ECF No. 13, PageID.80, ¶ 7. Because UWM does not deal directly with individual borrowers, it depends on Broker Partners to offer UWM's products to qualified borrowers where those products are appropriate for the borrower's needs and wishes. *See id.*, ¶ 8. Given UWM's dependence on Broker Partners—indeed, UWM's long-term success is necessarily dependent on the long-term success of its Broker Partners—UWM provides its Broker Partners with considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business. *See id.*, ¶¶ 9-10. This

investment into and support of UWM Broker Partners is meant to distinguish UWM's exceptional services and those of its Broker Partners from UWM's competitors. *Id.*, ¶ 10. UWM takes these investments seriously and expends significant resources to enhance the business of its Broker Partners. *Id.*

### B.     Atlantic Trust And UWM Enter Into a Wholesale Broker Agreement.

In January 2018, Atlantic Trust chose to begin offering UWM products—and elected to avail itself of the services and resources UWM provides to Broker Partners as part of that offering—and entered into a Wholesale Broker Agreement with UWM. *Id.*, PageID.81, ¶ 13. Under that Agreement, Atlantic Trust agreed to offer UWM's mortgage loan products and, when it submitted mortgage loans to UWM, make certain warranties and representations as to each submitted loan. *Id.*, ¶¶ 14-15. Atlantic Trust was not "obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." *Id.*, ¶ 16. And either party could terminate the Agreement at any time and for any reason with seven days' prior written notice. *Id.*, PageID.81–82, ¶ 17. Otherwise, the Agreement was for a term of one year, after which UWM would request Atlantic Trust to renew on a yearly basis. *Id.*, PageID.82, ¶¶ 18-19. The parties could amend the Agreement either (1) "in writing executed by authorized representatives of both [Atlantic Trust] and UWM," ECF No. 13-1, PageID.99, at § 7.01; and (2) UWM could amend from time to time by the methods described in Section 7.08:

**7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

*Id.*, at § 7.08; ECF No. 13, PageID.82, ¶ 20.

## C.     UWM Announces the All-In Initiative and Implements the All-In Addendum.

On March 4, 2021, UWM publicly announced its "All-In Initiative," stating that it had decided to end its business relationships with Broker Partners who chose to continue originating loans with two retail lenders specified in the Agreement (the "Select Retail Lenders"). ECF No. 13, PageID.83, ¶ 22. As UWM explained through widespread financial media coverage, UWM believes that the Select Retail Lenders' business model negatively impacts consumers, brokers, and the wholesale mortgage channel in general and that the All-In Initiative was necessary to protect the long-term viability of the wholesale mortgage channel. *Id.* Still, UWM knew that the All-In Initiative could result in ending relationships with some existing Broker Partners. *Id.* To further implement the All-In Initiative, UWM amended its wholesale broker agreement to add an additional warranty and representation that a Broker Partner

must make as to each submitted loan that it will not submit a mortgage loan or mortgage loan application to a Select Retail Lender (the All-In Addendum). *Id.*, PageID.81, 83–84, ¶¶ 14-15, 24-25. A breach of this provision entitled UWM to liquidated damages. *Id.*, PageID.84, ¶ 26.

### D.   Atlantic Trust Agrees to the All-In Addendum But Submits Loans to the Select Retail Lenders Anyway.

Though Atlantic Trust initially stopped submitting mortgage loans to UWM after the All-In Initiative announcement, *id.*, PageID.85, ¶ 29, Atlantic Trust never terminated the Agreement per the requirements of Section 7.06, *id.*, ¶ 31. Additionally, even during that time when Atlantic Trust was not submitting mortgage loans to UWM, Atlantic Trust was not instead submitting loans to the Select Retail Lenders—it did not do that until some 19 months later, in October 2022. *Id.*, ¶¶ 32-33.

In late 2022, UWM contacted Atlantic Trust to try and win its business back. Specifically, UWM encouraged Atlantic Trust to submit new mortgage loans to UWM—and not the Select Retail Lenders; that is, subject to the same terms as the All-In Addendum—during a 60-day "trial" period, after which, if Atlantic Trust was not satisfied, it could terminate the Agreement and again work with the Select Retail Lenders. *Id.*, PageID.85–86, ¶¶ 36-37. The 60-day "trial" period was intended to remind Atlantic Trust of the superior service that Broker Partners receive when they work with UWM, and thus convince Atlantic Trust to continue its relationship with

UWM going forward. *Id.*, PageID.86, ¶ 38. Atlantic Trust accepted the invitation and, between December 22, 2022 and February 23, 2023, had 10 mortgage loans close with UWM. *Id.*, PageID.86–87, ¶¶ 39, 41-42. Then even after the 60-day period expired, Atlantic Trust continued to submit mortgage loans to UWM—submitting 87 in all. *Id.*, PageID.87, ¶¶ 44-45.

In addition to this revived and continued submission of loans to UWM, Atlantic Trust was asked to renew its Agreement in January 2023—per the yearly renewal process. *Id.*, PageID.86–87, ¶ 40. Atlantic Trust reviewed and approved the renewal package, which contained an updated Agreement that included the All-In Addendum and resembled the document submitted as Exhibit B to UWM's First Amended Complaint. *Id.*; *see also* ECF No. 13-2. On January 19, 2023, Atlantic Trust approved the renewal through the means provided in UWM's online broker-facing portal. ECF No. 13, PageID.86–87, ¶ 40.

Yet, in March 2023, Atlantic Trust also began submitting mortgage loans—71 in all—to at least one of the Select Retail Lenders at the same time it was continuing to submit mortgage loans to UWM. *Id.*, PageID.87, ¶¶ 46-48.

### E.   UWM Sues. Atlantic Trust Claims It Never Agreed to the All-In Addendum.

UWM filed suit for breach of contract based on Atlantic Trust's submission of 71 loans to the Select Retail Lenders in violation of the All-In Addendum. *See* ECF Nos. 1, 13. In its motion to dismiss, ECF No. 15, Atlantic Trust contends that

the All-In Addendum was not a valid amendment to the Agreement, even though it sent loans to UWM after notice of the amendment and affirmatively renewed the Agreement with the All-In Addendum. Atlantic Trust claims that it never physically signed an amendment to the Agreement and that the All-In Addendum is not the type of amendment that could be implemented under Section 7.08—that is, without a signed writing. *Id.*, PageID.168–72. Alternatively, it claims that there was "no additional consideration" for the All-In Addendum. *Id.*, PageID.172–75.

## LEGAL STANDARD

A Rule 12(b)(6) motion to dismiss should be denied where the complaint contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).[1] In reviewing such a motion, "a court must construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022). Under those guidelines, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft*, 556 U.S. at 678.

---

[1] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

## ARGUMENT

The Court should deny Atlantic Trust's Motion. First, the Agreement did not require all amendments to it to be in a writing executed by both parties, so the lack of a wet-ink signed document is of no consequence to UWM's claims. And even if a signed document were required, Michigan law allows contracting parties to mutually agree to unwritten contractual amendments and modifications, and such a waiver is plausibly alleged here (where Atlantic Trust submitted loans under the Agreement after notice of the amendment and also electronically acknowledged the amendment through its renewal with UWM on January 19, 2023) even if there were such a formal in-writing requirement here. Second, the All-In Addendum is of the type of amendment contemplated by Section 7.08, which requires no writing at all. Third, the All-In Addendum is not voided by MCL § 566.1 because the parties' continued business relationship was sufficient consideration to support it. And fourth, Atlantic Trust's quibble about its approval of the All-In Addendum through UWM's online broker-facing portal is, at best, a fact question—nothing about the example document submitted with the Complaint contradicts UWM's to-be-accepted-as-true allegations. UWM plausibly alleges that Atlantic Trust approved (and breached) the Agreement, as amended by the All-In Addendum. Atlantic Trust's Motion should be denied.

### I.     The Agreement did not require every amendment to be in writing signed by both parties.

The Agreement did not require **all** amendments to it to be in a writing executed by both parties, so the lack of a wet-ink signed amendment does not affect UWM's claim here. Even if one were to ignore (like Atlantic Trust does) the Agreement's express language, which allows the parties to amend the agreement in other ways, Michigan law has long allowed parties to waive amendment-in-writing-only requirements, and UWM plausibly alleges that the parties' conduct effected a waiver here.

### A.   The Agreement's plain terms allow multiple ways to effect a valid amendment, and not all require a signed writing.

There are multiple ways to amend the Agreement, not just through a signed writing. Atlantic Trust's contention that "pursuant to Section 7.01 . . . , an 'amendment' to the [Agreement] is valid *if and only if* it is 'in writing executed by authorized representatives,'" ECF No. 15, PageID.165 (emphasis in original), is demonstrably false. "A contract must be interpreted according to its plain and ordinary meaning." *Alpha Capital Mgt. Inc. v. Rentenbach,* 792 N.W.2d 344, 359 (Mich. Ct. App. 2010). Section 7.01 of the Agreement provides that **"[e]xcept as set forth on Section 7.08**, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM." ECF No. 13-1, PageID.99. Thus, by its plain terms, the Agreement authorizes **another** way—the methods set out in Section 7.08—to effect an amendment that **does not** require a signed writing. Atlantic Trust's assertion that the Agreement requires all

9

amendments to be in writing is flat wrong. And its interpretation that Section 7.08 must yield to Section 7.01's writing requirements does not hold water, *see infra* Part II(A).

**B.     Even if the Agreement did require every amendment to be in writing, UWM alleges facts showing waiver of that requirement.**

Even if Atlantic Trust were correct that that the Agreement's terms required an amendment adding the All-In Addendum terms be in a writing signed by both parties, the First Amended Complaint plausibly alleges that any such requirement was waived here. It is well-settled that "parties to a contract are free to mutually . . . modify their contract notwithstanding a written modification . . . clause because of the freedom to contract." *Quality Prod. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 253 (Mich. 2003) ("[C]ontracts with written modification . . . clauses can be modified . . . notwithstanding their restrictive amendment clauses."). An "oral or written expression of amendment" can evidence the required mutual assent to amend notwithstanding any writing requirement; further, "a course of affirmative conduct, particularly coupled with oral or written representations," will also suffice. *Id.* at 258–59, 261.

Atlantic Trust's online acknowledgement of the All-In Addendum and its continued submission of mortgage loans to UWM following notice of the All-In Addendum terms effected a mutual waiver of any applicable formal written modification clause in the Agreement. Atlantic Trust contends that Section 7.01

10

precludes UWM's claims here because the parties did not execute a written amendment incorporating the All-In Addendum's restrictions. But the parties' acts obviated any writing requirement. UWM alleges that, though Atlantic Trust initially stopped submitting mortgage loans to UWM after the All-In Initiative announcement, ECF No. 13, PageID.85, ¶ 29, Atlantic Trust never terminated the Agreement per the requirements of Section 7.06, *id.*, ¶ 31. Then, in late 2022, Atlantic Trust accepted UWM's invitation to submit new mortgage loans to UWM—and not the Select Retail Lenders; that is, subject to the same terms as the All-In Addendum—and had 10 mortgage loans close with UWM between December 22, 2022 and February 23, 2023. *Id.*, PageID.85–87, ¶¶ 36-37, 39, 41-42. In the meantime, Atlantic Trust reviewed and, on January 19, 2023, approved—through UWM's online broker-facing portal—UWM's yearly Agreement renewal package, which also included the All-In Addendum. *Id.*, ¶ 40. Atlantic Trust then continued to submit mortgage loans to UWM—submitting 87 in all. *Id.*, PageID.87, ¶¶ 44-45.

In other words, UWM has alleged multiple facts that evidence "affirmative conduct by the parties that could establish" an amendment to the Agreement to adopt the All-In Addendum. *See Curry v. Harvest Energy Sols., LLC*, No. 15-13981, 2016 WL 3654534, at *4 (E.D. Mich. July 8, 2016) (denying motion to dismiss and finding that the defendant's argument that the plaintiff could not "sustain a modification [] argument because of the written no-modification clause," was "undercut by the

Defendant's alleged conduct"). "This is all that is required at this stage of the litigation," where the Court is "charged only with determining whether [UWM] has alleged sufficient facts to support a plausible claim." *See id.* And to the extent Atlantic Trust disputes that there was a waiver of any applicable writing requirements in Section 7.01, such a dispute would naturally be "ill suited" for adjudication on a motion to dismiss. *See id.* Atlantic's Trust's first argument fails.

## II.   UWM Plausibly Alleges a Valid Amendment Under Section 7.08.

Perhaps admitting that a signed writing containing the All-In Addendum was not required under Section 7.01, Atlantic Trust spends the bulk of its brief arguing that the All-In Addendum could not have been effected under Section 7.08's not-in-writing-amendment provisions, arguing that it is not of the amendment "type" authorized there. Atlantic Trust is wrong. Even if one were to ignore (again, like Atlantic Trust does) Section 7.08's plain language, which speaks to amendments to "[t]his Agreement," among other items, the All-In Addendum still falls within the more limited scope of Atlantic Trust's strained interpretation of the Section.

"The words of a contract are interpreted according to their plain and ordinary meaning, and [a] Court gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846, 852 (Mich. Ct. App. 2020). "But the rule that courts should interpret contracts to avoid

12

superfluous words is a tool for dealing with ambiguity, not a tool for *creating* ambiguity in the first place." *Gallo v. Moen Inc.*, 813 F.3d 265, 273 (6th Cir. 2016) (emphasis in original); *see also Henderson v. State Farm Fire & Cas. Co.,* 596 N.W.2d 190, 193 (Mich. 1999) ("[A] court should not create ambiguity . . . where the terms of the contract are clear and precise."). Instead, if a contract "fairly admits of but one interpretation," even if it is perhaps "inartfully worded or clumsily arranged," the contract is unambiguous. *Woodington v. Shokoohi*, 792 N.W.2d 63, 78 (Mich. Ct. App. 2010). And such "clear and unambiguous language" is to be enforced as written, *Bayberry*, 964 N.W.2d at 852, and should not be rewritten "under the guise of interpretation," *Woodington*, 792 N.W.2d at 78 (citing *Henderson,* 596 N.W.2d at 193).

### A.    Section 7.08, by its plain terms, applies to UWM amendments to the Agreement.

The plain language of Section 7.08—indeed the first two words of it—answers whether the All-In Addendum could plausibly fall within its allowable amendment methods. "Absent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *See Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). Section 7.08 provides:

> **7.08. UWM Amendments & Website. *This Agreement***, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not

limited to those contained in the UWM Guide, ***may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement***. ***Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind.*** Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

ECF No. 13, PageID.82, ¶ 20; ECF No. 13-1, PageID.99. By its plain terms, Section 7.08 applies to UWM-proposed amendments to "[t]his Agreement"—and no one disputes that the All-In Addendum was an amendment to the Agreement.

Instead of that plain language, Atlantic Trust simply ignores the first two words and focuses on the clause starting after the first comma. It claims that Section 7.08 can only apply to amendments to "UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide" and that the All-In Addendum cannot be considered part of these listed provisions. But this willful blindness of the first two words of Section 7.08, which show that it applies to amendments to "***This Agreement***" as well, cannot be prevail here—nor can it even support a finding of ambiguity.

### i. Section 7.08 does not render Section 7.01 superfluous.

Atlantic Trust reads surplusage into the Agreement where there is none. It argues that Section 7.08's terms, if read to apply to all amendments of the

Agreement, would "gut" Section 7.01's writing requirement and render Section 7.01

"mere surplusage." ECF No. 15, PageID.168. But that is not so. Section 7.01 of the

Agreement provides that "[e]xcept as set forth on Section 7.08, this Agreement may

not be amended except in writing executed by authorized representatives of both

Broker and UWM." ECF No. 13-1, PageID.99. Naturally, then, the referenced

exception in Section 7.08 authorizes another way to effect an amendment, which

does not require a signed writing. *Id.* The two sections can be read together

harmoniously, as illustrated in the example below, in which the terms of Section

7.08 are easily integrated into the terms of Section 7.01:

> Except as set forth in Section 7.08[, under which UWM may issue an
> amendment and "provide broker with prompt notice thereof, which may
> occur by posting any such amendments on UWM's website," after
> which the Broker's "submission of any Mortgage Loan Applications or
> Mortgage Loans to UWM" effectuates "Broker's agreement to the
> amendment without further signature or consent of any kind,"] this
> Agreement may not be amended except in writing executed by
> authorized representatives of both Broker and UWM.

*See id.* That is, Sections 7.01 and 7.08 of the Agreement required amendments be in

a writing executed by UWM and Atlantic Trust *unless* UWM proposes an

amendment, UWM gives Atlantic Trust notice of the terms of that amendment

(through the UWM website or otherwise), and Atlantic Trust then submits mortgage

loan applications or mortgage loans to UWM. *Id.* Atlantic Trust's conduct in such a

situation would "be [Atlantic Trust's] agreement to the amendment *without further

signature or consent of any kind*." *Id.*

15

Atlantic Trust contends that Section 7.08 cannot apply to all amendments because if it did there would never be a need for an in-writing amendment under Section 7.01. But the plain language of Section 7.08 shows that the Section applies only to amendments submitted by UWM, not Atlantic Trust—indeed, Section 7.08 is entitled "UWM Amendments & Website." ECF No. 13-1, PageID.99. The Section further specifically provides that "This Agreement . . . ***may be amended by UWM*** from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement." *Id.* Thus, ***non***-UWM amendments—those by Atlantic Trust—are not affected by Section 7.08, and the Agreement requires a signed writing (under Section 7.01) for those. Under UWM's interpretation of the Agreement, Section 7.01 is not "rendered nugatory" at all.

UWM's interpretation "gives effect to every word, phrase, and clause while avoiding interpretations that would render any part of the document surplusage or nugatory." *Bayberry*, 964 N.W.2d at 852. Atlantic Trust's attempt to rewrite the contract "under the guise of interpretation" should fail. *See Woodington*, 792 N.W.2d at 78. The Court should enforce the Agreement's "clear and unambiguous language" as written. *See Bayberry*, 964 N.W.2d at 852.

### ii. Atlantic Trust's interpretation is unreasonable and cannot even render the Agreement ambiguous.

Atlantic Trust's interpretation not only goes against bedrock contract interpretation principles, but its unreasonableness means that it cannot even be a basis for finding the Agreement ambiguous. First, Atlantic Trust assumes, without support of any kind, that if Section 7.08's specific exceptions would "gut" Section 7.01's general writing requirement, then Section 7.08 must yield to Section 7.01. But that runs afoul of "the rule of construction that general provisions of a contract will yield to specific provisions." *Haefele v. Meijer, Inc.*, 418 N.W.2d 900, 906 (Mich. Ct. App. 1987). Thus, even if Section 7.08 did conflict with Section 7.01, it is the general writing requirement of 7.01 that must yield to Section 7.08's more specific provisions—under which there would be no requirement for in-writing amendments at all.

Second, Atlantic Trust's interpretation simply omits the first two words of Section 7.08 and cannot prevail over UWM's interpretation, which gives effect to both Sections 7.01 and 7.08. "A construction which entirely neutralizes one provision should not be adopted if the contract is susceptible of another which gives effect to all its provisions." *DeBoer v. Geib,* 238 N.W. 226, 226 (Mich. 1931) (cited in *Harrow Prod., Inc. v. Liberty Mut. Ins. Co.*, 64 F.3d 1015, 1025 (6th Cir. 1995) ("Michigan has long adhered to the common sense position that an interpretation of a contract . . . should give effect to all of its provisions.")); *Bryan v. Michigan Funeral Directors Ass'n, Inc.*, No. 5:00-CV-99, 2001 WL 311249, at *4 (W.D.

17

Mich. Jan. 16, 2001) ("A construction which negates particular language must be rejected if there is another reasonable construction which gives effect to all provisions.").

Because of this, Atlantic Trust's unreasonable interpretation does not even indicate ambiguity in the Agreement. "A contract is ambiguous if its provisions may reasonably be understood in different ways," *Universal Underwriters,* 628 N.W.2d at 496, or "if two provisions of the same contract irreconcilably conflict with each other," *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003). But because Sections 7.01 and 7.08 can be reconciled (*see supra* Part II(A)(i)) and Atlantic Trust's interpretation defies common contract interpretation principles, Atlantic Trust's presentation of a purported different understanding of the two sections does not make the Agreement ambiguous.[2] *See, e.g., ChiRhoClin, Inc. v. Grand River Aseptic Mfg., Inc.*, No. 1:17-CV-993, 2019 WL 13100196, at *6 (W.D. Mich. June 20, 2019) ("Disagreement between the parties about the proper interpretation of a contract does not require the court to find the contract ambiguous; both interpretations must be reasonable.").

### B. The All-In Addendum falls within Atlantic Trust's strained interpretation of Section 7.08.

---

[2] To the extent the Court finds that UWM's and Atlantic Trust's interpretations of the Agreement are both reasonable, then "factual development is necessary to determine the intent of the parties," and dismissal is thus inappropriate. *See Meagher v. Wayne State Univ.*, 565 N.W.2d 401, 415 (Mich. Ct. App. 1997).

Even if the Court were to agree with Atlantic Trust's unreasonable interpretation of Section 7.08—that it applies only to amendments to "UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans"—the All-In Addendum is still of the type that can be effected under Section 7.08. Again, the Agreement's language is dispositive. The All-In Addendum added a new warranty and representation in Section 3.03— which Atlantic Trust was required to make "with regard to each Mortgage Loan submitted to UWM"—that Atlantic Trust will not submit loans to a Select Retail Lender:

> **3.03. Broker Warranties & Representations.** Broker hereby warrants, represents and covenants to UWM with regard to each Mortgage Loan submitted to UWM for underwriting, purchase and/or funding that the following are true, complete and correct in all material respects as of the date of such submission, as if such warranties, representations and covenants are again made by Broker on those dates and shall continue to be valid and accurate throughout the entire lending process:
> . . .
> (x) Broker will not submit a mortgage loan or mortgage loan application to [a Select Retail Lender] for review, underwriting, purchase, and/or funding. This requirement is limited to [the Select Retail Lenders]. UWM will not add any other mortgage lender. If either [of the Select Retail Lenders] acquire a mortgage lender (an ***"Acquired Lender"),*** this requirement applies only on a going forward basis as to the Acquired Lender, and is not effective as to the Acquired Lender until thirty (30) days after the acquisition is closed.

ECF No. 13-2, PageID.111.

Notwithstanding Atlantic Trust's contrary argument, the All-In Addendum

does relate to "**M**ortgage **L**oans" or "**M**ortgage **L**oan **A**pplications" because it required Atlantic Trust to warrant and represent, "***with regard to each* M**ortgage **L**oan submitted to UWM," that it "will not submit a mortgage loan or mortgage loan application to [a Select Retail Lender]," *id.*, so it clearly relates to " UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans" mentioned in Section 7.08. "The law presumes that business people are fully competent to enter into contracts and obligate themselves to perform in any manner they wish." *WXON-TV, Inc. v. A.C. Nielsen Co.*, 740 F. Supp. 1261, 1264 (E.D. Mich. 1990). There is "no authority to rewrite the terms of a contract," even if a court "might feel that it was an unwise agreement for a party to have entered into." *Id.*; *Smith v. Smith*, 823 N.W.2d 114, 116 (Mich. Ct. App. 2011) ("[C]ourts may not change or rewrite plain and unambiguous language in a contract under the guise of interpretation because the parties must live by the words of their agreement."). Section 7.08 allowed for the All-In Addendum. Atlantic Trust's second argument fails.

**III.   There was sufficient consideration for the All-In Addendum.**

UWM sufficiently alleges there was adequate consideration for the amendment in the form of the parties' continued relationship after notice of the All-In Addendum, obviating any application of MCL § 566.1's restrictions. Atlantic Trust contends that the All In Addendum's requirement to not submit loans to the

Select Retail Lenders is "void as a matter of law pursuant to [MCL] § 566.1" because there was "no additional consideration was provided for the purported 'amendment.'" ECF No.15, PageID.172. To be sure, this law requires that oral modifications of written agreements be supported by sufficient consideration. *See* MCL § 566.1. But even if the amendment is considered an oral modification, the parties' continued business relationship is more than enough consideration to support such an amendment to the Agreement.

The decision in *Adell Broad. v. Apex Media Sales*, 708 N.W.2d 778 (Mich. Ct. App. 2005), is especially instructive. There, the plaintiff broadcast network and the defendant sales company were parties to an agreement under which the defendant was the plaintiff's exclusive media representative for certain broadcast spot and program sales. *Id.* at 780. Toward the end of the parties' relationship, both parties became dissatisfied with various aspects of the relationship. *Id.* As a result, the parties agreed to amend various terms in the agreement and continued working with each other for several months until the relationship faltered again, and the parties terminated the agreement. *Id.* The plaintiff sued on several theories, and the defendant counterclaimed and moved for summary disposition. *Id.* Though the trial court found that there was no consideration for the amended agreement, the Court of Appeals reversed, holding that MCL § 566.1 did not bar the amendment. *Id.* at 780–83. Relevant here, the court noted that "the fact that parties consider it to their

21

advantage to modify their agreement is sufficient consideration" such that "no other consideration for the amended agreement was necessary." *Id.* at 782. Because the defendant "continued to represent" the plaintiff, and the plaintiff (1) "actively contacted potential clients and asked them to deal with" the defendant and (2) did not hire another marketing firm to handle its business, reject business the defendant obtained, or interfere with the defendant's ability to obtain business for the plaintiff, the court further found that "the parties' continuation of their business relationship was consideration for the amended agreement." *Id.* at 782–83. What's more, the Court noted that "a bargained modification to the parties' agreement" like the one presented there did not present "an issue of preexisting duty."[3] *Id.* at 782.

So too here. When Atlantic Trust submitted loans to UWM after notice of the All-In Addendum's terms and affirmatively acknowledged those terms by renewing with UWM through its online broker-facing portal, Atlantic Trust agreed to amend the Agreement with the All-In Addendum. ECF No. 13, PageID.85–87, ¶¶ 34-45. Atlantic Trust and UWM both considered it advantageous to modify their agreement to include the All-In Addendum terms and continue their business relationship,

---

[3] Under the preexisting duty rule, "doing what one is legally bound to do is not consideration for a new promise." *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000). The rule bars "the modification of an existing contractual relationship when the purported consideration for the modification consists of the performance or promise to perform that which one party was already required to do under the terms of the existing agreement." *Id.*

under which Atlantic Trust again was able to make use of UWM's superior service. *See id.*, PageID.81, 86, ¶¶ 12, 38. Atlantic Trust even elected to submit more loans after the expiration of the 60-day "trial" period that was initially discussed. *See id.*, PageID.85–87, ¶¶ 36-45. Though "[n]o other consideration for the amended agreement was necessary" other than the mere "fact that [the] parties consider[ed] it to their advantage to modify their agreement," the continuation of UWM and Atlantic Trust's business relationship was even more consideration. *See Adell*, 708 N.W.2d at 782–83. In sum, MCL § 566.1 is of no moment here. The parties' decision to amend their Agreement to include the All-In Addendum is valid and enforceable. Atlantic Trust's third argument fails.

IV.    **UWM Plausibly Alleges Atlantic Trust's Affirmative Agreement to the All-In Addendum, and Exhibit B is a Mere Example of How Its Terms Were Incorporated into the Agreement.**

Atlantic Trust's final argument—that Exhibit B to the First Amended Complaint is unsigned and thus could not be effective—is a red herring, and any dispute about whether Atlantic Trust's online acceptance of the All-In Addendum was effective is a fact question not for disposition on a motion to dismiss. First, Exhibit B to the First Amended Complaint is simply an example of where the All-In Addendum Terms (Sections 3.03(c) and 7.30) were incorporated into the Agreement. That Exhibit B is unsigned says nothing about whether Atlantic Trust agreed to those terms.

23

Second, it is hard to understand what is so "vague" or "conclusory" about UWM's allegations that "Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal." *Compare* ECF No. 15, PageID.175–76 *with* ECF No. 13, PageID.86–87, ¶ 40. Indeed, "most courts have held web browser contracts enforceable where the user had actual or constructive knowledge of the site's terms and conditions, and . . . manifested assent to them." *Melo v. Zumper, Inc.*, 439 F. Supp. 3d 683, 697 (E.D. Va. 2020); *see also Shirley v. Rocket Mortgage*, No. 2:21-cv-13007, 2022 WL 2541123, at *4 (E.D. Mich. July 7, 2022) ("Courts have routinely found 'clickwrap' agreements enforceable because by checking a box explicitly stating 'I agree' in order to proceed, the 'consumer has received notice of the terms being offered and, in the words of the Restatement, 'knows or has reason to know that the other party may infer from his conduct that he assents' to those terms.'").[4] UWM plausibly alleges Atlantic Trust's online agreement to its yearly Agreement renewal, which contained the All-In Addendum.

Atlantic Trust's fourth argument fails.

---

[4] *See also* MCL §§ 450.831-849 (the "uniform electronic transactions act"); 2007 Mich. OAG No. 7207, 2007 WL 2924079, at *5 (Oct. 2, 2007) (recognizing that the act "permits persons to voluntarily conduct business, commercial, or governmental affairs utilizing 'electronic records' and 'electronic signatures'").

24

## CONCLUSION

Atlantic Trust's motion should be denied. First, the Agreement did not require all amendments to it to be in a writing executed by both parties, and even if a signed document were required, UWM plausibly alleges that the parties' conduct effected a waiver of that requirement. Second, the All-In Addendum is of the type of amendment authorized by Section 7.08, which requires no writing at all. Third, the All-In Addendum is not voided by MCL § 566.1 because the parties' continued business relationship was consideration to support it. And fourth, UWM plausibly alleges Atlantic Trust's approval of the All-In Addendum through the online broker-facing portal.

UWM plausibly alleges that Atlantic Trust assented to (and breached) the Agreement, as amended by the All-In Addendum. Atlantic Trust's Motion should be denied.

Respectfully submitted,

By: */s/ Lane Morrison*
Moheeb H. Murray (P63893)                    A. Lane Morrison (P87427)
Mahde Y. Abdallah (P80121)                   **BUSH SEYFERTH PLLC**
**BUSH SEYFERTH PLLC**                       5810 Wilson Road, Suite 125
100 West Big Beaver Road, Suite 400          Humble, TX 77396
Troy, MI 48084                               T/F: (281) 930-6853
T/F: (248) 822-7800                          morrison@bsplaw.com
murray@bsplaw.com
abdallah@bsplaw.com
*Attorneys for United Wholesale Mortgage, LLC*

Dated: May 10, 2024.