UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED WHOLESALE MORTGAGE, LLC,** | **2:24-CV-10216-TGB-DRG** |
| Plaintiff, | HON. TERRENCE G. BERG |
| vs. | **ORDER DENYING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT (ECF NO. 15)** |
| **ATLANTIC TRUST MORTGAGE CORPORATION,** | |
| Defendant. | |

This case is before the Court because a large national wholesale mortgage lender wants to prohibit the independent mortgage brokers it deals with from also doing business with two of its competitors. To accomplish this goal, the large wholesale mortgage lender amended the terms of its contract with its independent brokers in 2021 to require that the independent brokers stop working with those two competitors as a condition of continuing to work with it. When one independent mortgage broker, Atlantic Trust Mortgage Corporation, went ahead and did business with the excluded competitors while allegedly still under that contract, the national company, United Wholesale Mortgage, LLC, sued for breach of contract. The matter is now before the Court on Atlantic Trust's Motion to Dismiss Plaintiff's First Amended Complaint. ECF No. 15. The motion has been fully briefed. Upon review of the parties' filings,

the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs. *See* E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, the motion to dismiss will be **DENIED.**

## I.   BACKGROUND

### A. Factual Background

According to Plaintiff United Wholesale Mortgage, LLC's ("UWM's") First Amended Complaint ("FAC"), UWM is a wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") across the country to provide home mortgage products to borrowers. FAC, ECF No. 13, ¶ 7. Because UWM does not deal directly with individual borrowers until after the loan has funded, it depends on Broker Partners to offer UWM's products to qualified borrowers. *Id.* ¶ 8. According to the FAC, UWM's success is dependent on the long-term success of its Broker Partners, and UWM therefore provides its Broker Partners with considerable resources, including technology, marketing materials, compliance support, training, and more to help the Broker Partners compete, win, and grow their business. *Id.* ¶¶ 9–10. UWM asserts that this investment into and support of UWM Broker Partners is meant to distinguish UWM's exceptional services and those of its Broker Partners from UWM's competitors. *Id.* ¶ 10. UWM avers that it takes these

investments seriously and expends significant resources to enhance the business of its Broker Partners. *Id.*

Defendant Atlantic Trust Mortgage Corporation ("Atlantic Trust") is an independent mortgage broker with over fifteen mortgage loan originators serving the State of Florida. *Id.* ¶ 11. In January 2018, Atlantic Trust entered into a Wholesale Broker Agreement with UWM (the "Agreement"). *Id.* ¶ 13 (citing ECF No. 13-1, Atlantic Trust Wholesale Broker Agreement (hereinafter "Agreement")). Under that Agreement, Atlantic Trust agreed to offer UWM's mortgage loan products and, when it submitted mortgage loans to UWM, to make certain warranties and representations as to each submitted loan. *Id.* ¶¶ 14–15 (citing Agreement at 1 and § 3.03, PageID.92, 95–96). Atlantic Trust was not "obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." *Id.* ¶ 16 (citing Agreement at § 7.03, PageID.99). And either party could terminate the Agreement at any time and for any reason with seven days' prior written notice. *Id.* ¶ 17 (citing Agreement at § 7.06, PageID.99). Otherwise, the Agreement was for a term of one year, after which UWM would request Atlantic Trust to renew on a yearly basis. *Id.* ¶¶ 18–19.

The Agreement provided two methods by which it could be amended. First, either party could amend the Agreement in a signed writing pursuant to Section 7.01:

**7.01. Amendment by Agreement**. Except as set forth in Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of both Broker and UWM.

Agreement at § 7.01, PageID.99. Second, UWM could amend the Agreement pursuant to Section 7.08:

**7.08. UWM Amendments & Website.** This Agreement, and UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, may be amended by UWM from time to time, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

*Id.* § 7.08, PageID.99; FAC ¶ 20.

On March 4, 2021, UWM publicly announced its "All-In Initiative," stating that it had decided to end its business relationships with Broker Partners who chose to continue originating loans with two retail lenders specified in the Agreement, Rocket Mortgage and Fairway Independent Mortgage (collectively, the "Select Retail Lenders"). FAC ¶ 22. In widespread financial media coverage, UWM set forth its belief that the Select Retail Lenders' business model  impacted consumers, brokers, and the wholesale mortgage channel in a negative manner, and that the All-

In Initiative was necessary to protect the long-term viability of the wholesale mortgage channel. *Id.* UWM made this decision in the knowledge that the All-In Initiative could result in ending relationships with some existing Broker Partners. *Id.*

As part of the All-In Initiative, UWM amended certain terms of its wholesale broker agreement to add an additional warranty and representation that a Broker Partner must make as to each submitted loan—that it will not submit mortgage loans or mortgage loan applications to the Select Retail Lenders (the All-In Addendum). *Id.* ¶¶ 24–25 (citing ECF No. 13-2, Agreement with All-In Addendum). The All-In Addendum provides, in relevant part:

> Broker will not submit a mortgage loan or mortgage loan application to [Select Retail Lenders] for review, underwriting, purchase, and/or funding. This requirement is limited to [Select Retail Lenders]. UWM will not add any other mortgage lender....

All-In Addendum at § 3.03(x), PageID.111. The Addendum further provides that, in the event of a breach of Section 3.03(x), the Broker Partner must pay liquidated damages to UWM:

> Broker and UWM agree that the measure of damages in the event of a breach of Broker's representation and warranty under Section 3.03(x) may be difficult, if not impossible, to ascertain. Accordingly, in the event of a violation of Section 3.03(x), Broker shall immediately pay to UWM the greater of: (i) Five Thousand Dollars ($5,000.00) per loan closed with [the Select Retail Lenders], or (ii) Fifty Thousand Dollars ($50,000.00), as liquidated damages for such breach without

the need for proof of damages by UWM. UWM's right to liquidated damages are in addition to (not in lieu of) any other monetary or other remedies UWM may have under this Agreement and/or applicable law.

*Id.* ¶ 7.30, PageID.121–22.[1]

UWM pleads that, as provided by Section 7.08 of the Agreement, it was not required to compel Broker Partners to sign the All-In Addendum or a new wholesale broker agreement in order for the All-In Addendum to become effective as an amendment to the parties' Agreement. FAC ¶ 27. And if a Broker Partner did not want to abide by the All-In Addendum, the Broker Partner could terminate the Agreement pursuant to Section 7.06. *Id.* ¶ 28.

Atlantic Trust initially stopped submitting mortgage loans to UWM after the March 4, 2021 All-In Initiative announcement, with its last loan submitted to UWM on February 28, 2021 and closing on March 22, 2021. But Atlantic Trust never terminated the Agreement according to the requirements of Section 7.06. *Id.* ¶¶ 29–31. In addition, Atlantic Trust did not submit loans to the Select Retail Lenders from January 1, 2020 (over one year prior to the All-In Initiative) until on or about October 4,

---

[1] The Court further notes that the Agreement provides "[i]n the event a dispute arises under this Agreement between Broker and UWM, which dispute results in legal action being taken by one or both of the parties, the prevailing party shall be entitled to recover its reasonable attorney fees, costs and other expenses associated with the enforcement of its rights under the Agreement, and the non-prevailing party hereby agrees to pay same." FAC ¶ 21 (citing Agreement at § 7.16, PageID.100).

2022, when it closed its first loan using one of the Select Retail Lenders. *Id.* ¶¶ 32–33.

In or around November and December 2022, UWM contacted Atlantic Trust in an effort to regain its business. *Id.* ¶¶ 35–36. Specifically, UWM encouraged Atlantic Trust to submit new mortgage loans to UWM—and not the Select Retail Lenders, pursuant to the terms of the All-In Addendum—during a 60-day "trial" period, after which, if Atlantic Trust was not satisfied, it could terminate the Agreement and again work with the Select Retail Lenders. *Id.* ¶¶ 36–37. UWM asserts that the 60-day "trial" period was intended to remind Atlantic Trust of the superior service that Broker Partners receive when they work with UWM, and thus convince Atlantic Trust to continue its relationship with UWM going forward. *Id.* ¶ 38.

On December 19, 2022, shortly before Atlantic Trust submitted its first mortgage loan to UWM since UWM had implemented the All-In Initiative, Atlantic Trust reviewed UWM's yearly renewal package, which included the All-In Addendum. *Id.* ¶ 40. Then on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal. *Id.*

Atlantic Trust accepted UWM's invitation for a 60-day trial period and, between December 22, 2022 and February 23, 2023, had 10 mortgage loans close with UWM. *Id.* ¶¶ 39, 41–42. Atlantic Trust

continued to submit mortgage loans to UWM following the expiration of the trial period— submitting 87 mortgage loans in total. *Id.* ¶¶ 44-45.

UWM alleges, however, that beginning in or around March 2023, and continuing through February 2024, Atlantic Trust also began submitting mortgage loans—at least 71 loans—to one or both of the Select Retail Lenders at the same time it was continuing to submit mortgage loans to UWM. *Id.* ¶¶ 46–48. UWM asserts that Atlantic Trust's mortgage loan submissions to one or both of the Select Retail Lenders violates the parties' Agreement, as amended. UWM alleges that it has been damaged by Atlantic Trust's breach of the parties' Agreement, and that Atlantic Trust's submission of at least 71 mortgage loans to one or both of the Select Retails Lenders equates to at least $350,000.00 in liquidated damages. *Id.* ¶¶ 51–52.

## B. Procedural History

UWM filed this lawsuit against Atlantic Trust asserting a single claim for breach of contract based on Atlantic Trust's 71 loans to the Select Retail Lenders in violation of the All-In Addendum to the parties' Agreement. ECF No. 1. Atlantic Trust filed a motion to dismiss UWM's Complaint, ECF No. 11, and in response UWM filed its First Amended Complaint. ECF No. 13.[2]

---

[2]    On the same day that UWM filed its First Amended Complaint it also filed a response in opposition to Atlantic Trust's initial motion to dismiss. ECF No. 14. Because UWM's First Amended Complaint

Atlantic Trust has now filed a motion to dismiss UWM's First Amended Complaint. ECF No. 15. Atlantic Trust argues that the All-In Addendum was not a valid amendment to the parties' Agreement because Atlantic Trust never signed the Agreement with the All-In Addendum and the All-In Addendum is not the type of amendment that may be made without a signed writing according to Section 7.08 of the Agreement. In the alternative, Atlantic Trust  argues that there was no additional consideration for the All-In Addendum, as required by MCL § 566.1.

UWM filed a response in opposition to Atlantic Trust's motion. ECF No. 16. UWM argues that the All-In Addendum is a valid amendment of the Agreement pursuant to Section 7.08 of the Agreement, and under the terms of that Section, such an amendment did not need to be signed by the parties. UWM further argues that there is valid consideration for the amendment—the parties' continued business relationship—thus complying with MCL § 566.1's restrictions.

Atlantic Trust filed a reply in support of its motion to dismiss, again arguing that the unsigned All-In Addendum is invalid under Sections 7.01 and 7.08 of the Agreement, and also invalid under Michigan law because it is not supported by consideration. ECF No. 17.

---

supersedes its original Complaint, Atlantic Trust's first motion to dismiss was denied without prejudice as moot. ECF No. 18.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows for the dismissal of a case where the complaint fails to state a claim upon which relief can be granted. To state a claim, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "[T]he complaint 'does not need detailed factual allegations' but should identify 'more than labels and conclusions.'" *Casias v. Wal-Mart Stores, Inc.*, 695 F.3d 428, 435 (6th Cir. 2012) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

When reviewing a motion to dismiss under Rule 12(b)(6), a court must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 538 (6th Cir. 2012). The court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Id*. at 539 (internal citations and quotation marks omitted); *see also Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). In other words, a plaintiff must provide more than a "formulaic recitation of the elements of a cause of action" and his or her "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555–56; *see also Agema v. City of Allegan*, 826 F.3d 326, 331 (6th Cir. 2016) ("To survive a motion to dismiss, a litigant must allege enough facts to make it plausible that the

10

defendant bears legal liability. The facts cannot make it merely possible that the defendant is liable; they must make it plausible.") (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). It is the defendant who "has the burden of showing that the plaintiff has failed to state a claim for relief." *Wesley v. Campbell*, 779 F.3d 421, 428 (6th Cir. 2015).

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the plaintiff's complaint and that are central to plaintiff's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829–30 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings…. [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.").

## III.   DISCUSSION

### A. Whether the First Amended Complaint Sufficiently Pleads That the All-In Addendum is a Valid Amendment to the Parties' Agreement

Atlantic Trust argues that Section 7.01 of the parties' Agreement requires any amendment to be "in a writing executed by authorized representatives of both Broker and UWM." It states that the "purported 'amendment'" at Exhibit B to UWM's FAC is not signed by either party and UWM does not allege in the FAC that this "purported 'amendment'" was ever signed. Atlantic Trust contends that the All-In Addendum therefore is an invalid amendment of the parties' Agreement because it is contrary to Section 7.01 of that Agreement. Atlantic Trust further argues that the All-In Addendum does not meet the "limited exception" in Section 7.08 of the Agreement, because that section permits amendments only if they relate to "Mortgage Loan Applications" and "Mortgage Loans" submitted to UWM, as those terms are defined in the 2018 Wholesale Broker Agreement, and not to *all* the terms in the parties' Agreement. Atlantic Trust argues that to apply Section 7.08 to every type of amendment of the Agreement would "completely gut Section 7.01 and render Section 7.01 as mere surplusage." ECF No. 15, PageID.164–72.

UWM argues in response that the Agreement's plain terms allow multiple ways to amend the Agreement. Section 7.01 provides that **"except as set forth on [sic] Section 7.08**, this Agreement may not be

12

amended except in writing executed by authorized representatives of both Broker and UWM." Agreement at § 7.01, PageID.99 (emphasis added). UWM contends that Section 7.01 specifically exempts amendments made by UWM pursuant to Section 7.08 of the Agreement, which expressly does not require a signed writing. UWM argues that the All-In Addendum is a valid amendment to the Agreement under Section 7.08. UWM further argues that Atlantic Trust's online acknowledgement of the All-In Addendum in January 2023 and its continuing conduct of submitting mortgage loans to UWM following notice of the All-In Addendum terms effectively operate as a mutual waiver of any applicable formal written modification clause in the Agreement. ECF No. 16, PageID.197–208.

Construing the FAC "in the light most favorable to" UWM, "accept[ing] its allegations as true, and draw[ing] all reasonable inferences in favor of" UWM, the Court agrees that UWM has sufficiently alleged that the All-In Addendum is an amendment to the parties' 2018 Agreement, pursuant to the terms of that Agreement. "The words of a contract 'are interpreted according to their plain and ordinary meaning,' and [a] Court 'gives effect to every word, phrase, and clause' while avoiding 'interpretations that would render any part of the document surplusage or nugatory.'" *Bayberry Grp., Inc. v. Crystal Beach Condo. Ass'n*, 964 N.W.2d 846, 852 (Mich. App. 2020) (quoting *Tuscany Grove Ass'n v. Peraino*, 875 N.W.2d 234. 237 (2015)); *see also English v. Blue*

13

*Cross Blue Shield of Mich.*, 688 N.W.2d 523, 537 (Mich. App. 2004) (stating under Michigan law, contractual language is given its "plain and ordinary meaning, avoiding technical and constrained constructions"). "A contract is ambiguous if its provisions may reasonably be understood in different ways." *Universal Underwriters Ins. Co. v. Kneeland*, 628 N.W.2d 491, 494 (Mich. 2001). Here, the parties' Agreement expressly provides for amendment of the Agreement by UWM either pursuant to Section 7.01 *or* Section 7.08. Section 7.01 of the Agreement plainly provides that ""**[e]xcept as set forth on Section 7.08**, this Agreement may not be amended except in writing executed by the authorized representatives of both Broker and UWM." Agreement at § 7.01, PageID.99. Section 7.08 then provides that UWM may amend the Agreement "by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement," and that "the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment *without further signature or consent of any kind*." Agreement at § 7.08 (emphasis added). Thus, Section 7.08 permits UWM to amend the Agreement without any writing or signature requirement, merely by posting such amendments on its website, requiring Brokers to check the website, and gaining agreement from Brokers by virtue of their submission to UWM of any Mortgage Loan Applications or Mortgage Loans.

UWM pleads it followed the process under Section 7.08 in this case. UWM alleges that it announced its "All-In Initiative" on March 4, 2021, and that, as part of this Initiative, UWM amended certain terms of the wholesale broker agreements by adding paragraphs 3.03(x) and 7.30 to the agreements, with the amendment known as the All-In Addendum. FAC ¶¶ 22–25. UWM pleads that Atlantic Trust reviewed UWM's yearly Agreement renewal package on December 19, 2022, which included the All-In Addendum, and that Atlantic Trust approved the renewal through UWM's online broker-facing portal on January 19, 2023. *Id.* ¶ 40. Thereafter, Atlantic Trust's submission of Mortgage Loan Applications or Mortgage Loans to UWM constituted Atlantic Trust's agreement to the amendment "without further signature or consent of any kind." Agreement at § 7.08, PageID.99. Accordingly, UWM pleads that it properly amended the parties' Agreement under Section 7.08.

Atlantic Trust's reading of Sections 7.01's and 7.08's plain terms fails to persuade the Court otherwise. Atlantic Trust first appears to ignore the opening phrase in Section 7.01, "[e]xcept as set forth on Section 7.08," when it argues that any amendment to the Agreement must be in writing. Section 7.01 plainly provides otherwise. Atlantic Trust then similarly ignores the first two words of Section 7.08, "This Agreement," and instead only focuses on the second clause regarding "UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans" when arguing that Section 7.08

applies only to certain types of amendments concerning Mortgage Loan Applications and Mortgage Loans submitted to UWM, and not to an amendment to the Agreement as a whole such as the All-In Addendum. Again, "[t]he words of a contract are interpreted according to their plain and ordinary meaning," *Bayberry Grp.*, 964 N.W.2d at 852, and a plain reading of Section 7.08 of the parties' Agreement does not comport with Atlantic Trust's construction. Section 7.08 reads as follows:

> ***This Agreement***, ***and*** UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans, including but not limited to those contained in the UWM Guide, ***may be amended by UWM from time to time***, and UWM will endeavor to provide broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement. Broker agrees that the submission of any Mortgage Loan Applications or Mortgage Loans to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind. Any such amendment shall apply to pending, and/or future Mortgage Loan Applications submitted by Broker.

Agreement at § 7.08, PageID.99 (emphases added). This language is not ambiguous, and "[a]bsent an ambiguity or internal inconsistency, contractual interpretation begins and ends with the actual words of a written agreement." *Universal Underwriters Ins. Co.*, 628 N.W.2d at 494. Section 7.08 clearly states that UWM may amend "[t]his Agreement" pursuant to Section 7.08, and the All-In Addendum is such an

amendment to the Agreement. The section's plain language provides that both "This Agreement" ***and*** "UWM's policies, procedures, requirements and instructions concerning Mortgage Loan Applications and Mortgage Loans" may be amended by UWM from time to time. Agreement at § 7.08, PageID.99.

Moreover, the Court finds, contrary to Atlantic Trust's contention, that Section 7.08 does not render Section 7.01 superfluous. Section 7.01 provides that "[e]xcept as set forth in Section 7.08, this Agreement may not be amended except in writing executed by authorized representatives of *both* Broker and UWM." Agreement at § 7.01, PageID.99 (emphasis added). Section 7.08 provides an alternative method for amendment by which UWM, *but not the Broker*, may amend the Agreement by "provid[ing] Broker with prompt notice thereof, which may occur by posting any such amendments on UWM's website, which Broker is required to regularly check and monitor as a condition of this Agreement," and "Broker agrees that the submission of any Mortgage Loan Application or Mortgage Loan to UWM after such amendment shall be Broker's agreement to the amendment without further signature or consent of any kind." Agreement at § 7.08, PageID.99. Thus, under Section 7.08, UWM may amend the Agreement by posting it on its UWM website or otherwise, and the Broker's conduct after notice of that amendment, by submission of a Mortgage Loan Application or Mortgage Loan, constitutes the Broker's acceptance of the amendment without a

signed writing. The Broker however may not similarly amend the Agreement under Section 7.08, it may  only seek do so through Section 7.01. If a Broker does not want to agree to a UWM-proposed amendment under Section 7.08, it may terminate the Agreement, or it may stop submitting Mortgage Loan Applications and Mortgage Loans. Thus, Sections 7.01 and 7.08 can be read together without creating any ambiguity or rendering either provision surplusage. Atlantic Trust's contrary interpretation of those Sections is simply not a reasonable reading of the text. *See ChiRhoClin, Inc. v. Grand River Aseptic Mfg., Inc.*, No. 1:17-CV-993, 2019 WL 13100196, at *6 (W.D. Mich. June 20, 2019) ("Disagreement between the parties about the proper interpretation of a contract does not require the court to find the contract ambiguous; both interpretations must be reasonable.") (citing *Mayor of City of Lansing v. MPSC*, 680 N.W.2d 840, 847 (Mich. 2004), *superseded by statute on other grounds*, MCL § 247.183)).[3]

---

[3]    Atlantic Trust's argument that Exhibit B to the FAC is unsigned and therefore cannot be effective can be readily rejected. UWM asserts that it attached Exhibit B as an example of where the All-In Addendum terms were incorporated into the agreement. Whether Atlantic Trust's online acceptance of those terms was effective, as UWM pleads, is a fact question and not for disposition on a motion to dismiss.

The Court further notes that, even if it were to find the language in the parties' Agreement ambiguous, that would not aid Atlantic Trust's goal of dismissing the complaint. This is because "at the motion to dismiss stage the Court must resolve all ambiguities in the contract in the plaintiff's favor." *Franklin Cap. Funding LLC v. Austin Bus. Fin.,*

Accordingly, UWM has sufficiently pleaded that it amended the parties' Agreement through the All-In Addendum and asserted a viable cause of action for breach of contract against Atlantic Trust in its FAC.

### B. Whether the Complaint Adequately Pleads Consideration for the All-In Addendum

Atlantic Trust next argues that the All-In Addendum is void because of a Michigan statute providing that modifications to a contract may be made without additional consideration, but only when such modifications are in writing and signed by the parties. Section 566.1 of the Michigan Compiled Laws  provides:

> Sec. 1. An agreement hereafter made to change or modify, or to discharge in whole or in part, any contract, obligation, or lease, or any mortgage or other security interest in personal or real property, shall not be invalid because of the absence of consideration: Provided, That the agreement changing, modifying, or discharging such contract, obligation, lease,

---

*LLC*, 676 F. Supp. 3d 515, 525 (E.D. Mich. 2023) (Lawson, J.) (citing *Ajuba Int'l, L.L.C. v. Saharia*, 871 F. Supp. 2d 671, 689 (E.D. Mich. 2012) (Battani, J.) (internal quotation marks and citation omitted)). "A court should not choose between reasonable interpretations of ambiguous contract provisions when considering a motion to dismiss," meaning that the "construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim." *Ajuba Int'l*, 871 F. Supp. 2d at 689 (internal quotation marks and citations omitted); *see also Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 503 (6th Cir. 2014) (affirming denial of 12(b)(6) motion to dismiss a breach of contract claim after finding contractual provision ambiguous); *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453–54 (Mich. 2003) ("It is well settled that the meaning of an ambiguous contract is a question of fact that must be decided by the jury.").

> mortgage or security interest shall not be valid or binding unless it shall be in writing and signed by the party against whom it is sought to enforce the change, modification, or discharge.

MCL § 566.1. "MCL 566.1 requires that, in the absence of consideration, a writing must support the discharge. … In the absence of a writing, there must have been consideration to support the discharge." *In re Estate of Stephenson*, Nos. 348207, 348210, 2020 WL 4382789, at *6 (Mich. Ct. App. July 30, 2020) (citing MCL § 566.1; *Minor-Dietiker v. Mary Jane Stores of Mich., Inc.*, 141 N.W.2d 342, 344 (Mich. App. 1966) ("The intention of this statute is not to make unenforceable all oral modification agreements, but only those in which no valid consideration is alleged. An oral modification agreement supported by new consideration does not fall within the language of this statute.")); *see also Power-Tek Sols. Servs., LLC v. Techlink, Inc.*, 403 F.3d 353, 359 (6th Cir. 2005) ("Michigan courts have universally interpreted section 566.1 as rendering invalid any alleged agreement changing, modifying or discharging a contract where that alleged agreement is neither reduced to writing nor supported by additional consideration.").

While UWM agrees that MCL § 566.1 requires that oral modifications of written agreements be supported by sufficient consideration, UWM maintains that the Complaint adequately alleges sufficient consideration for the amendment. UWM contends that the

consideration took the form of the parties' jointly continued business relationship after notice of the All-In Addendum.

In support of its position, UWM relies on the Michigan Court of Appeals' decision in *Adell Broadcasting Corporation v. Apex Media Sales, Inc.*, 708 N.W.2d 778 (Mich. App. 2005). In *Adell*, the plaintiff broadcasting corporation and the defendant media representative were parties to an agreement under which the defendant was the plaintiff's exclusive media representative for certain broadcast spot and program sales for nearly ten years. *Id.* at 780. Toward the end of the parties' relationship, both parties became dissatisfied with certain aspects of the relationship. *Id.* The parties agreed to amend various terms in their agreement in an attempt to save the relationship. *Id.* They thereafter continued working with each other for several months until the relationship faltered again, and the parties terminated the agreement. *Id.* The plaintiff sued on several theories, and the defendant counterclaimed seeking rescission of the modified agreement. *Id.*

The trial court found that there was no consideration for the amended agreement, but the Court of Appeals reversed, finding that MCL § 566.1 did not bar the amendment. *Id.* at 780–83. The court noted that "there was a bargained for modification of the parties' agreement," and "[t]he fact that parties consider it to their advantage to modify their agreement is sufficient consideration" such that "no other consideration for the amended agreement was necessary." *Id.* at 782. The court

21

"nevertheless f[ound] additional bargained consideration in this case" as evidenced by the "parties' continuation of their business relationship." *Id.* The court noted that, following the modification of the parties' agreement, the defendant "continued to represent" the plaintiff, and the plaintiff (1) "actively contacted potential clients and asked them to deal with" the defendant and (2) did not hire another marketing firm to handle its business, reject business the defendant obtained, or interfere with the defendant's ability to obtain business for the plaintiff. *Id.* at 783. The court found that "the parties' continuation of their business relationship was consideration for the amended agreement." *Id.* at 783.

"[P]arties to a contract are free to mutually waive or modify their contract." *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666 N.W.2d 251, 253 (Mich. 2003). Consideration for such modification exists "if the promisee in return for a promise does anything legal which he is not bound to do or refrains from doing anything which he has a right to do, whether there is any actual loss or detriment to him or actual benefit to the promisor or not." *In re Louise K.*, Nos. 345908, 345909, 2019 WL 5418343, at *4 (Mich. Ct. App. Oct. 22, 2019) (quoting *Stott v. Stott*, 242 N.W.2d 747, 747 (Mich. 1932)). "There must be a benefit on one side, or a detriment suffered, or service done on the other." *General Motors Corp. v. Dep't of Treasury, Revenue Div.*, 644 N.W.2d 734, 738 (Mich. 2002). "Generally, courts do not inquire into the sufficiency of consideration: '[a] cent or a pepper corn, in legal estimation, would constitute a sufficient

consideration.'" *Innovation Ventures v. Liquid Mfg.*, 885 N.W.2d 861, 871 (Mich. 2016) (quoting *General Motors Corp.*, 644 N.W.2d at 738).

In this case, UWM pleads that following amendment of the parties' Agreement by the All-In Addendum, Atlantic Trust affirmatively acknowledged those terms—which included agreeing to forego entering into mortgage loans with the Select Retail Lenders—by renewing with UWM through the online broker-facing portal, and it then continued its business relationship with UWM by submitting loans to UWM at least through February 2024. FAC ¶¶ 22–28, 35–45. In fact, UWM pleads that Atlantic Trust has not terminated its Agreement with UWM, *id.* ¶ 31, and thus the parties continue to have a business relationship.

Further, like in *Adell*, this case does not present "an issue of preexisting duty," as Atlantic Trust argues, but instead "a bargained modification of the parties' agreement." *See Adell*, 708 N.W.2d at 781–82. Under the preexisting duty rule, "doing what one is legally bound to do is not consideration for a new promise." *Yerkovich v. AAA*, 610 N.W.2d 542, 546 (Mich. 2000). As the *Adell* court explained, "[i]n *Yerkovich*, the plaintiff was required to sign a second agreement imposing additional obligations in order to receive what she was owed under the first agreement. The defendant had a preexisting duty to the plaintiff under the first contract, so the plaintiff was not required to assume additional obligations to receive what she was already owed." *Adell*, 708 N.W.2d at 781–82 (citing *Yerkovich*). However, "[i]t is axiomatic that parties to a

23

contract may modify the contract by a later agreement." *Id.* at 782 (citing *Quality Prods,* 666 N.W.2d at 258). That is what UWM pleads it did here. It did not seek to impose new obligations on Atlantic Trust with regard to loans submitted to UWM before the All-In Addendum. It instead modified the parties' Agreement to address loans submitted to UWM after the All-In Addendum, to required that Atlantic Trust forgo submitting loans to the Select Retail Lenders, which it pleads Atlantic Trust assented to when it "approved the renewal through UWM's online broker-facing portal" and it continued its business relationship with UWM through at least February 2024. FAC ¶¶ 40–47.

Accordingly, viewing UWM's allegations in the light most favorable to it, accepting its allegations as true, and drawing all reasonable inferences in UWM's favor, the Court finds that UWM has sufficiently plead consideration supporting the amendment to the parties' Agreement by the All-In Addendum. *See Adell*, 708 N.W.2d at 783 ("[T]he consideration for the amended agreement was the continuation of the parties' business relationship."); *see also RMT, Inc. v. SPE Utility Contractors, L.L.C.*, No. 09-CV-11650, 2010 WL 5211433, at *4 (E.D. Mich. Oct. 14, 2010) (Binder, M.J.) ("Michigan law indicates that continuation of the parties' business relationship is sufficient consideration for their amended agreement."), *adopted by* 2010 WL 5211432 (E.D. Mich. Dec. 16, 2010) (Ludington, J.). UWM has sufficiently

pleaded a breach of contract claim against Atlantic Trust to survive the motion to dismiss.

## IV.   CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant Atlantic Trust's Motion to Dismiss (ECF No. 15).

Atlantic Trust is **ORDERED** to file an Answer to the First Amended Complaint within 14 days.

This is not a final order and does not close the case.

**IT IS SO ORDERED.**

Dated: March 25, 2025          /s/Terrence G. Berg
                                            HON. TERRENCE G. BERG
                                            UNITED STATES DISTRICT JUDGE