## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

     Plaintiff/Counter-Defendant,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

     Defendant/Counter-Plaintiff.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

---

## UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISIS ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM

Plaintiff/Counter-Defendant United Wholesale Mortgage, LLC ("UWM"), by its attorneys, Bush Seyferth PLLC, moves under Fed. R. Civ. P. 12(b)(6) to dismiss Defendant/Counter-Plaintiff Atlantic Trust Mortgage Corporation's Counterclaim because it fails to state a cognizable fraud claim upon which relief can be granted. In support, UWM submits the following Brief in Support.

Under E. D. Mich. LR 7.1(a), there was a conference between the attorneys of the parties entitled to be heard on the motion in which counsel for UWM explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

WHEREFORE, UWM respectfully requests that the Court grant this motion and dismiss Atlantic Trust's Counterclaim.

Respectfully submitted,

/s/ Mahde Y. Abdallah
Moheeb H. Murray (P63893)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Date: April 30, 2025                    *Attorneys for United Wholesale Mortgage, LLC*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE
MORTGAGE, LLC,

      Plaintiff/Counter-Defendant,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

      Defendant/Counter-Plaintiff.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

## UNITED WHOLESALE MORTGAGE, LLC'S
## BRIEF IN SUPPORT OF ITS MOTION TO DISMISIS
## <u>ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM</u>

## <u>STATEMENT OF THE ISSUES PRESENTED</u>

1.      Should Atlantic Trust's fraud claims be dismissed where they are based on a future promise reserved for a contract claim, are devoid of bad-faith allegations, and are based on Atlantic Trust's unreasonable reliance on the future promise that contradicts the terms of the parties' integrated agreement and where Atlantic Trust cannot allege damages?

UWM answers:                Yes.

The Court should answer:     Yes.

## **CONTROLLING OR MOST APPROPRIATE AUTHORITY**

**Cases**

*Bye v. Nationwide Mut. Ins. Co.*,
    733 F. Supp. 2d 805 (E.D. Mich. 2010)

*Cook v. Little Caesar Enters., Inc.*,
    210 F.3d 653 (6th Cir. 2000)

*Cummins v. Robinson Twp.*,
    770 N.W.2d 421 (Mich. Ct. App. 2009)

*Gage Prods. Co. v. Henkel Corp.*,
    393 F.3d 629 (6th Cir. 2004)

*Hart v. Ludwig*,
    79 N.W.2d 895 (1956)

*Hi-Way Motor Co. v. Int'l Harvester Co.*,
    247 N.W.2d 813 (1976)

*Novak v. Nationwide Mut. Ins. Co.*,
    599 N.W.2d 546 (Mich. Ct. App. 1999)

*UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*,
    579 N.W.2d 411 (Mich. Ct. App. 1998)

*United Wholesale Mortg., LLC v. America's Moneyline, Inc.*,
    647 F. Supp. 3d 587 (E.D. Mich. 2022)


**Rules**

Fed. R. Civ. P. 9(b)

Fed. R. Civ. P. 12(b)(6)

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................1

STATEMENT OF FACTS ................................................1

LEGAL STANDARD ......................................................5

ARGUMENT ...................................................................6

    I.     Atlantic Trust's fraud claim legally fails because UWM's alleged promise pertained to future conduct and is governed by a contract. ............................................................7

          A.    UWM's alleged promise that Atlantic Trust would not be subject to the All-In Addendum during the 60-day period pertains to the future. ................................................7

          B.    Under Michigan law, Atlantic Trust cannot bring a tort claim over its contractual relationship with UWM...................8

    II.    Atlantic Trust's fraud claim fails because Atlantic Trust does not allege that UWM made a bad-faith promise without the intent to perform. ...................................................9

    III.   Atlantic Trust cannot allege any fraud where it unreasonably relied on UWM's representation. .......................................11

          A.    Atlantic Trust's reliance on the alleged promise is unreasonable where the parties' written contract includes the All-In Addendum. .................................................12

          B.    Atlantic Trust's reliance on the alleged promise is unreasonable where the parties' written contract includes an integration clause. .................................................15

               i.    The renewed Agreement contains a valid integration clause. .........................................15

ii.    Atlantic Trust does not allege that the Agreement's integration clause was procured by fraud or is otherwise invalid..............................................................17

iii.    Given the valid integration clause, Atlantic Trust cannot have reasonably relied on any alleged representation that the All-In Provisions would not be enforced because the Agreement says the opposite.........................................................................19

IV.    Atlantic Trust cannot show damages from the alleged fraud. ............21

CONCLUSION ........................................................................................23

# TABLE OF AUTHORITIES

## Cases

*ADR N. Am., L.L.C. v. Agway, Inc.*,
    303 F.3d 653 (6th Cir. 2002) ..........................................................................18

*Aron Alan, LLC v. Tanfran, Inc.*,
    240 F. App'x 678 (6th Cir. 2007) ...............................................................13

*Arrowood Indem. Co. v. City of Warren*,
    No. 13-13938, 2015 WL 58679 (E.D. Mich. Jan. 5, 2015), *aff'd sub*
    *nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015)...13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..............................................................................5, 22

*Bassett v. Nat'l Collegiate Athletic Ass'n*,
    528 F.3d 426 (6th Cir. 2008) ..........................................................................5

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..............................................................................5, 22

*Blackward Properties, LLC v. Bank of Am.*,
    476 F. App'x 639 (6th Cir. 2012)...............................................................11

*Bright v. Gallia Cty.*,
    753 F.3d 639 (6th Cir. 2014) ..........................................................................5

*Bye v. Nationwide Mut. Ins. Co.*,
    733 F. Supp. 2d 805 (E.D. Mich. 2010) ....................................................7, 8

*Case v. Hunt*,
    No. 341645, 2019 WL 1780643 (Mich. Ct. App. Apr. 23, 2019)................23

*Chelsea Inv. Grp. LLC v. Chelsea*,
    792 N.W.2d 781 (Mich. Ct. App. 2010).......................................................23

*Cook v. Little Caesar Enter., Inc.*,
    972 F. Supp. 400 (E.D. Mich. 1997) .............................................................7

*Cook v. Little Caesar Enters., Inc.,*
　　210 F.3d 653 (6th Cir. 2000) ........................................................... 12, 13, 14

*Cummins v. Robinson Twp.,*
　　770 N.W.2d 421 (Mich. Ct. App. 2009) ....................................................6, 13

*Dedvukaj v. Equilon Enterprises, L.L.C.,*
　　301 F. Supp. 2d 664 (E.D. Mich. 2004), *aff'd*, 132 F. App'x 582 (6th Cir.
　　2005) ...............................................................................................................12

*Derderian v. Genesys Health Care Sys.,*
　　689 N.W.2d 145 (Mich. Ct. App. 2004) ......................................................10

*Gage Prods. Co. v. Henkel Corp.,*
　　393 F.3d 629 (6th Cir. 2004) ........................................................................9

*Hamade v Sunoco Inc.,*
　　721 N.W.2d 233 (Mich. Ct. App. 2006) ......................................................15

*Hart v. Ludwig,*
　　79 N.W.2d 895 (1956) ...................................................................................8

*Hi-Way Motor Co. v. Int'l Harvester Co.,*
　　247 N.W.2d 813 (Mich. 1976) ...................................................................7, 21

*MY Imagination, LLC v. M.Z. Berger & Co.,*
　　726 F. App'x 272 (6th Cir. 2018) .................................................................20

*Novak v. Nationwide Mut. Ins. Co.,*
　　599 N.W.2d 546 (Mich. Ct. App. 1999) .......................................... 19, 20, 21

*Oliverio v. Nextel West Corp.,*
　　No. 13-10296, 2013 WL 2338706 (E.D. Mich. May 29, 2013) ............. 14, 21

*Ram Int'l, Inc. v. ADT Sec. Servs., Inc.,*
　　555 F. App'x 493 (6th Cir. 2014) .................................................................15

*Star Ins. Co. v. United Com. Ins. Agency, Inc.,*
　　392 F. Supp. 2d 927 (E.D. Mich. 2005) ......................................................20

*Thompson v. Paasche*,
    950 F.2d 306 (6th Cir. 1991) ........................................................................21

*Travis v. ADT Sec. Servs., Inc.*,
    884 F. Supp. 2d 629 (E.D. Mich. 2012) .........................................................7

*UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*,
    579 N.W.2d 411 (Mich. Ct. App. 1998).......................................... 16, 17, 18

*United Wholesale Mortg., LLC v. America's Moneyline, Inc.*,
    647 F. Supp. 3d 587 (E.D. Mich. 2022) ............................................... passim

*Winnett v. Caterpillar, Inc.*,
    553 F.3d 1000 (6th Cir. 2009) .......................................................................6

*Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*,
    761 N.W.2d 151 (Mich. Ct. App. 2008)........................................................11

## **Rules**

Fed. R. Civ. P. 12 .............................................................................................1, 5

Fed. R. Civ. P. 8 ...................................................................................................5

Fed. R. Civ. P. 9 ...................................................................................... 5, 11, 22

# INTRODUCTION

United Wholesale Mortgage, LLC ("UWM") sued Atlantic Trust Mortgage Corporation after it repeatedly breached a contract provision requiring Atlantic Trust to refrain, if it wanted to avail itself of the benefits of doing business with UWM, from sending mortgage loans or mortgage applications to two specified competitors. Unsatisfied with simply asserting its putative defenses and litigating UWM's claim, Atlantic Trust has filed vague and unviable counterclaims for fraud and fraud-in-the-inducement—the separation of which cannot be discerned within the Counterclaim. Assuming both claims were asserted, Atlantic Trust's fraud claims fail because they are based on a future promise reserved for a contract claim, are devoid of bad-faith allegations, and are based on Atlantic Trust's unreasonable reliance on the future promise that contradicts the terms of the parties' integrated agreement. Moreover, Atlantic Trust cannot allege any way in which it was damaged by the alleged fraud. The only harm it seeks to avoid is being held liable for damages if the contract is enforced. The fraud claims should therefore be dismissed.

# STATEMENT OF FACTS

UWM is a wholesale mortgage lender. Counterclaim, ECF No. 20, PageID.261 at ¶ 5. UWM does not work directly with borrowers (Atlantic Trust's Answer to UWM's First Amended Complaint ("Answer"), ECF No. 20, PageID.254 at ¶ 8); rather, it partners with independent-mortgage brokers to provide residential-

mortgage loans to consumers. Counterclaim, PageID.261-262, ¶¶ 2, 5, 8-9; First Amended Complaint ("FAC"), ECF No. 13-1, PageID.92. Atlantic Trust—an independent mortgage broker that once worked with UWM—assists borrowers with their residential-mortgage-loan needs, such as completing and processing loan applications. Counterclaim, PageID.261 at ¶ 2. UWM and Atlantic Trust began their relationship in January 2018 when Atlantic Trust entered a Wholesale Broker Agreement ("Agreement") with UWM. Answer, PageID.254 at ¶ 13; Counterclaim, PageID.262 at ¶ 8. The Agreement was for an initial one-year term and automatically renewed for successive one-year terms, unless otherwise terminated under Section 7.06 of the Agreement. Agreement, ECF No. 13-1, PageID.99 at § 7.05.

On March 4, 2021, UWM announced its "All-In Initiative." Answer, PageID.255 at ¶ 22; Counterclaim, PageID.262 at ¶ 9. As part of the All-In Initiative, UWM informed mortgage-broker partners of the "All-In Addendum," which is a warranty and representation UWM added to the Wholesale Broker Agreement providing that a broker partner will not submit mortgage loans to two certain retail lenders, and if the broker partner does, such submissions constitute a breach of the broker's Wholesale Broker Agreement. FAC, PageID.83-84 at ¶¶ 24-25; Answer, PageID.255-256 at ¶ 24-25; Amended Agreement,[1] ECF No. 13-2, PageID.111 at §

---

[1] The All-In Addendum consists of Section 3.03(x) and 7.30 of the amended Wholesale Broker Agreement, ECF No. 13-2.

2

3.03(x). In the event of a breach of the All-In Addendum, the broker partner must pay liquidated damages to UWM. FAC, PageID.83-84 at ¶¶ 24-25; Answer, PageID.255-256 at ¶ 24-25; Amended Agreement, PageID.121 at § 7.30.

Atlantic Trust alleges that it terminated its relationship with UWM pursuant to the Agreement after UWM announced the All-In Initiative. Counterclaim, PageID.262 at ¶ 10. Later, in or around December 2022, UWM approached Atlantic Trust and invited Atlantic Trust to enter a 60-day trial period with UWM. Counterclaim, PageID.262 at ¶ 11. Atlantic Trust further alleges that UWM promised "a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as well as any other lender of Atlantic Trust's choice." Counterclaim, PageID.263 at ¶ 13. Specifically, UWM allegedly "promis[ed] and represent[ed] that Atlantic Trust would *not* be subject to the terms of the" All-In Addendum during the 60-day trial period. Counterclaim, PageID.263 at ¶ 14 (emphasis in original).

Soon thereafter, Atlantic Trust began to again send mortgage loans to UWM based on agreeing to the alleged 60-day trial period. Counterclaim, PageID.262 at ¶ 12; FAC, PageID.86 at ¶ 39; Answer, PageID.257 at ¶ 39. But on December 19, 2022, Atlantic Trust reviewed UWM's yearly Agreement renewal package, *which included the All-In Addendum*, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal. FAC, PageID.86-87 at ¶ 40;

Answer, PageID.257 at ¶ 40. On December 22, 2022, Atlantic Trust submitted its first mortgage loan to UWM since UWM had implemented the All-In Initiative. FAC, PageID.87 at ¶ 41; Answer, PageID.257 at ¶ 41. From December 22, 2022, through February 22, 2023, Atlantic Trust had 10 mortgage loans close with UWM. FAC, PageID.87 at ¶ 42; Answer, PageID.257 at ¶ 42. And after the end of the initial 60-day period, Atlantic Trust continued to submit mortgage loans to UWM. FAC, PageID.87 at ¶ 44; Answer, PageID.257 at ¶ 44. Yet Atlantic Trust continued its practice of submitting mortgage loans to both UWM and one or both of the retail lenders prohibited under the All-In Addendum through February 2024 (FAC, PageID.87 at ¶ 47; Answer, PageID.257 at ¶ 47), despite that Atlantic Trust previously agreed to the All-In Addendum. FAC, PageID.86-87 at ¶ 40; Answer, PageID.257 at ¶ 40. Since December 2022, Atlantic Trust submitted at least 71 mortgage loans to at least one of the retail lenders prohibited under the All-In Addendum. FAC, PageID.87 at ¶ 48; Answer, PageID.257 at ¶ 48.

On January 26, 2024, UWM filed this action against Atlantic Trust to enforce the All-In Addendum for Atlantic Trust's breaches.[2] ECF No. 1. Atlantic Trust countersued with a fraud claim. Counterclaim, PageID.261-265. Atlantic Trust's fraud claim rests on its allegations that UWM "now claims," several months after

---

[2] UWM alleges in its First Amended Complaint that Atlantic Trust did not terminate the Agreement. FAC, PageID.85 at ¶ 31.

offering the 60-day trial period, "that the 60-day trial [and subsequent relationship] was somehow governed by the terms of the" All-In Addendum. Counterclaim, PageID.263 at ¶¶ 13-14. Atlantic Trust does not allege that UWM acted in bad faith at the time UWM is alleged to have offered Atlantic Trust the 60-day trial period. Counterclaim, PageID.261-265.

## LEGAL STANDARD

A compliant must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). And when the claim is for fraud, "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Under Rule 12(b)(6), courts accept non-conclusory allegations in the complaint as true. *Bright v. Gallia Cty.*, 753 F.3d 639, 652 (6th Cir. 2014). In addition to the complaint, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may [also] consider . . . items appearing in the record of the case." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008). The facts that are pleaded must show a "plausible claim for relief"—a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009). Deficient claims should be exposed and dismissed early to prevent unnecessary "expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). All the detail in the world cannot save a cause of action that fails as a matter of law,

"regardless of whether the . . . factual allegations are true or not." *Winnett v. Caterpillar, Inc.*, 553 F.3d 1000, 1005 (6th Cir. 2009).[3]

## ARGUMENT

"Fraud requires proof that (1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage." *Cummins v. Robinson Twp.*, 770 N.W.2d 421, 435 (Mich. Ct. App. 2009). Atlantic Trust's fraud claims fail because they are based on a future promise reserved for a contract claim, are void of any allegations of bad faith, and are based on Atlantic Trust's unreasonable reliance on the future promise that contradicts the terms of the parties' integrated agreement. Moreover, Atlantic Trust cannot allege any way in which it was damaged by the purported fraud. The fraud claims should therefore be dismissed.

---

[3] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

I.    **Atlantic Trust's fraud claim legally fails because UWM's alleged promise pertained to future conduct and is governed by a contract.**

    A.    **UWM's alleged promise that Atlantic Trust would not be subject to the All-In Addendum during the 60-day period pertains to the future.**

"[A]n action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud." *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976); *see also Travis v. ADT Sec. Servs., Inc.*, 884 F. Supp. 2d 629, 639 (E.D. Mich. 2012) ("The ADT representative's alleged statement to Plaintiff that police would be immediately dispatched to his house relates to a promise to perform in the future, not to a past or existing fact.") Thus, "[a] representation that relates to the future (i.e. if you meet your projected performance goals, we will forgive your loan) sounds in contract, not tort." *Bye v. Nationwide Mut. Ins. Co.*, 733 F. Supp. 2d 805, 820 (E.D. Mich. 2010).

Indeed, "[s]ince fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured." *Id.* (quoting *Cook v. Little Caesar Enter., Inc.*, 972 F. Supp. 400, 410 (E.D. Mich. 1997) ("*Cook I*")) Nor is such nonperformance evidence of fraud. *Id.* "[A] mere promise to perform an

act in the future is not, in a legal sense, a representation, and a failure to perform it does not change its character." *Id*. "Moreover, a representation that something will be done in the future, or a promise to do it, from its nature cannot be true or false at the time it was made." *Id*.

Here, Atlantic Trust pleads that UWM made a promise of future conduct—specifically that "Atlantic Trust would *not* be subject to the terms" of the All-In Addendum if it entered the 60-day trial. ECF No. 20, PageID.263 at ¶ 14 (emphasis in original). Because UWM's alleged representation relates to the future, Atlantic Trust does not state a viable tort claim for fraud.

### B. Under Michigan law, Atlantic Trust cannot bring a tort claim over its contractual relationship with UWM.

Further to the point that future promises are contractual in nature, under *Hart v. Ludwig*, 79 N.W.2d 895, 897 (1956), "Michigan law is well-established that parties generally cannot sue in tort over relationships governed by contract." *United Wholesale Mortg., LLC v. America's Moneyline, Inc.*, 647 F. Supp. 3d 587, 594 (E.D. Mich. 2022). "[I]f the alleged tort claim would not exist absent the contract, and the harm claimed does not extend beyond the realm of the contract, no action in tort will lie." *Id*. at 595.

In *America's Moneyline*, a case like this one and dealing with the All-In Addendum, America's Moneyline's fraud claim was that "UWM misrepresented that the Ultimatum and Liquidated Damages Provision would not be enforced by

UWM and assured [America's Moneyline] that it could continue to conduct business with Rocket Pro without penalty." *Id*. The court noted that "UWM's assurances relate to obligations created under the agreement—namely, whether [America's Moneyline] must cease doing business with Rocket Pro or whether UWM waived that requirement." *Id*. *"*So," as the court held, "the promises cannot serve as the basis for a separate and independent tort claim. . . . And [America's Moneyline] has not identified any duties that UWM violated that are separate and distinct from the agreement." *Id*. The court accordingly dismissed the fraud claim.

Here, the same reasoning carries. Atlantic Trust claims that UWM promised that "Atlantic Trust would *not* be subject to the terms" of the All-In Addendum if it entered the 60-day trial. ECF No. 20, PageID.263 at ¶ 14 (emphasis in original). As in *America's Moneyline*, UWM's alleged assurances pertain to obligations within the All-In Addendum, and thus, cannot serve as the basis for a fraud claim.

## II.   Atlantic Trust's fraud claim fails because Atlantic Trust does not allege that UWM made a bad-faith promise without the intent to perform.

To fall within the exception that fraud cannot be based on a promise of future conduct, Atlantic Trust attempts to state a viable fraud-in-the-inducement claim. However, fraud in the inducement is actionable only if the alleged promise was "made in bad faith without intention of performance." *Gage Prods. Co. v. Henkel Corp.*, 393 F.3d 629, 645 (6th Cir. 2004); *see also America's Moneyline*, 647 F. Supp. 3d at 599 ("[B]roken contractual promises are actionable in tort if the promises

9

were made in bad faith without intention of performance."). Here, Atlantic Trust fails to plead the indispensable bad-faith element.

Atlantic Trust pleads that UWM initially "promise[d] a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as well as any other lender" and would "*not* be subject to the terms of the" All-In Addendum. ECF No. 20, PageID.263 at ¶¶ 13-14 (emphasis in original). Atlantic Trust's fraud claim relies on its allegations that UWM "now claims," several months later, "that the 60-day trial [and subsequent relationship] was somehow governed by the terms of the" All-In Addendum. ECF No. 20, PageID.263 at ¶¶ 13-14. Atlantic Trust's allegations do not amount to an allegation that, at the time UWM made the alleged promise of an unencumbered 60-day trial, UWM made the promise in bad faith without an intent to perform the promise. Rather, Atlantic Trust's allegations boil down to the narrative that UWM promised not to enforce the All-In Addendum against Atlantic Trust but changed its mind long down the road and elected to enforce the All-In Addendum. But "evidence of fraudulent intent, to come within the exception [that fraud cannot be based on a promise of future conduct], must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *America's Moneyline*, 647 F. Supp. 3d at 599 (quoting *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 156 (Mich. Ct. App. 2004)). Conduct or decisions made several

months later, such as UWM's election to enforce the All-In Addendum, do not suffice.

Atlantic Trust also vaguely pleads that UWM's conduct, without specifying which conduct under Fed. R. Civ. P. 9(b), was "intentional, malicious and willful." ECF No. 20, PageID.265 at ¶ 22. But as was the case in *America's Moneyline*, "[b]eyond citing conclusory statements in the countercomplaint," Atlantic Trust makes no allegation that UWM made a promise in bad faith with no intent to perform. *See* 647 F. Supp. 3d at 599 ("Beyond citing conclusory statements in the countercomplaint to suggest that certain UWM representatives made false, malicious, and willful misrepresentations, [America's Moneyline] makes no allegations that UWM made these promises in bad faith.") "Without more, evidence of a broken promise is not evidence of fraud." *Id.* (quoting *Blackward Properties, LLC v. Bank of Am.*, 476 F. App'x 639, 643 (6th Cir. 2012)). Atlantic Trust's fraud-in-the-inducement claim must therefore be dismissed as a matter of law.

### III. Atlantic Trust cannot allege any fraud where it unreasonably relied on UWM's representation.

Regardless of the fraud claim alleged, Atlantic Trust fails to allege that it reasonably relied on UWM's representation that the All-In Addendum would not be enforced during the 60-day trial period. *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) ("[T]o sustain a fraud claim, the party claiming fraud must *reasonably* rely on the material misrepresentation."

(emphasis in original)). Nor can it. A party's reliance on certain statements is not reasonable, as a matter of law, where those statements contradict the parties' written contract. *Cook v. Little Caesar Enters., Inc.,* 210 F.3d 653, 658 (6th Cir. 2000) ("*Cook II*") ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement.") This rule is bolstered when the contract includes an integration clause.[4]

### A.   Atlantic Trust's reliance on the alleged promise is unreasonable where the parties' written contract includes the All-In Addendum.

Here, Atlantic Trust affirmatively admits that, after it was offered the 60-day trial, it agreed to the All-In Addendum during its process of renewing UWM's yearly Agreement renewal package of the Wholesale Broker Agreement. *See* ECF No. 13, PageID.86-87 at ¶ 40 ("On December 19, 2022 Atlantic Trust reviewed UWM's yearly Agreement renewal package, *which included the All-In Addendum*, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal."); *see also* ECF No. 20, PageID.257 at ¶ 40 ("In answer to

---

[4] Michigan courts use the terms "merger clause" and "integration clause" interchangeably such that there does not appear to be any difference in their interpretation. *See, e.g.*, *Dedvukaj v. Equilon Enterprises, L.L.C.*, 301 F. Supp. 2d 664, 670 (E.D. Mich. 2004), *aff'd*, 132 F. App'x 582 (6th Cir. 2005) ("[T]he prevailing law in Michigan concerning integration clauses is that a contract with a merger clause nullifies all antecedent claims, including any collateral agreements that were allegedly an inducement for entering into the contract."). For clarity and consistency, UWM will refer to such a clause as a "integration clause" throughout its motion.

Paragraph 40, Atlantic Trust admits.").

With this admission, Atlantic Trust cannot escape the well-established principle that "alleged misrepresentations regarding the terms of written documents that are available to the plaintiff cannot support the element of reasonable reliance." *Cummins*, 770 N.W.2d at 437. That is because "[t]here can be no fraud where a person has the means to determine that a representation is not true." *Id*. at 435; *Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007) ("Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed."); *see also Arrowood Indem. Co. v. City of Warren*, No. 13-13938, 2015 WL 58679, at *6 (E.D. Mich. Jan. 5, 2015), *aff'd sub nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015) ("The determination whether a plaintiff's alleged reliance was reasonable can be made at the pleading stage and without discovery.").

Take for example, *Cook II*, 210 F.3d 653. Cook—a Little Caesar's franchisee—claimed he received both oral and written promises of exclusive territories for his restaurants in meetings with Little Caesar Enterprises representatives and within documents he received before signing his franchise agreements. *Id*. at 655-56. Yet the franchise agreements made no mention of exclusivity and "provide only that Little Caesar Enterprises will not establish other Little Caesar restaurants within one mile of Cook's locations." *Id*. at 656. The court

held that "Cook's signing the franchise agreements precludes his reasonable reliance on the prior representations." *Id*. at 658.

Similar too is *Oliverio v. Nextel West Corp.*, No. 13-10296, 2013 WL 2338706 (E.D. Mich. May 29, 2013). There, the plaintiffs entered a written contract with the defendant to lease a property to the defendant so it could place a cellular tower on the property. *Id.* at *1. The contract provided that the defendant could, in its "sole and absolute discretion and at any time and for any or no reason, terminate this Agreement without further liability by delivering prior written notice to [plaintiff]." *Id.* at *3. The defendant eventually terminated the contract after changing its plans. *Id.* at *1. In response, plaintiff sued for fraud. *Id.* The court rejected the claim and noted that, had "someone on behalf of Defendant verbally promised or told Plaintiffs that the termination provision did not apply, or that Defendant would not terminate or cancel the contract, any reliance on such a statement would be unreasonable as a matter of law" because "[s]uch statements are expressly contradicted by the terms of the written contract that Plaintiffs signed and agreed to that provide that Defendant may terminate the agreement 'at any time and for any or no reason' and 'without further liability' to Plaintiffs." *Id.* at *5.

So too, here. Even if a UWM representative with authority had assured Atlantic Trust that it would not be subject to the All-In Addendum for 60 days, Atlantic Trust could not have reasonably relied on such assurances when it later

agreed to the All-In Addendum as part of its Agreement renewal with UWM. As such, Atlantic Trust's fraud-based claims fail.

**B.   Atlantic Trust's reliance on the alleged promise is unreasonable where the parties' written contract includes an integration clause.**

"[R]eliance on an allegedly fraudulent representation is not reasonable if the representation" expressly contradicts a fully integrated contract between the parties that contains a valid integration clause, "unless the plaintiff can make out a claim of fraud in the inducement or fraud ***pertaining to the [] clause itself***." *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 501–02 (6th Cir. 2014); *Hamade v Sunoco Inc.*, 721 N.W.2d 233, 250 (Mich. Ct. App. 2006) ("[T]he valid integration clause renders reliance on the representation unreasonable as a matter of law."). Atlantic Trust's renewed Agreement with UWM contains a valid integration clause, which further precludes Atlantic Trust's fraud claims. *See America's Moneyline*, 647 F. Supp. 3d at 596–99. Thus, because (a) the parties' renewed Agreement includes a valid integration clause, (b) Atlantic Trust does not allege that the integration clause itself was precured by fraud or is otherwise invalid, and (c) the alleged promise contradicts the integrated renewed Agreement such that Atlantic Trust's reliance on any such statement is per se unreasonable, Atlantic Trust cannot recover for any purported fraud.

**i.   The renewed Agreement contains a valid integration clause.**

An integration clause is a contractual provision that "declares in express terms

that [the contract] contains the entire agreement of the parties." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 415 (Mich. Ct. App. 1998). Section 7.12 of the Agreement is entitled "Entire Agreement" and is the integration clause carried over to the renewed Agreement:

> **7.12  Entire  Agreement.**  The  arrangements  and  relationships contemplated in this Agreement and/or any document referred to herein constitute  the  sole  understanding  and  agreement  of  the  parties.  This Agreement  supersedes  all  other  agreements,  covenants, representations,  warranties,  understandings  and  communications between  the  parties,  whether  written  or  oral,  with  respect  to  the transactions contemplated by this Agreement.

Agreement, PageID.100 at § 7.12; ECF No. 13-2, PageID.118 at § 7.12. Indeed, Atlantic Trust admits that "On December 19, 2022 [it] reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, [] approved the renewal through UWM's online broker-facing portal." *See* FAC, PageID.86-87 at ¶ 40; Answer, PageID.257 at ¶ 40. This yearly Agreement renewal was just that—a renewal of terms that Atlantic Trust originally agreed to in 2018—like  the  integration  clause—alongside  the  All-In  Addendum.[5]  *Compare* Agreement, PageID.100 at § 7.12 *with* ECF No. 13-2, PageID.118 at § 7.12. The renewed Agreement is therefore integrated.

---

[5] Indeed, UWM explained in the FAC that it requires all of its broker partners to approve yearly Agreement renewals on the anniversary date of their initial signing of the Agreement with UWM. FAC, PageID.82 at ¶ 19. Atlantic Trust does not deny this allegation. Answer, PageID.255 at ¶ 19.

### ii. Atlantic Trust does not allege that the Agreement's integration clause was procured by fraud or is otherwise invalid.

When contracting parties "include an integration clause in their written contract, it is conclusive" and parol evidence is not admissible to "contradict the explicit integration clause" except "in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.'" *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 418. Neither is present here.

Atlantic Trust does not allege that there was fraud in the inducement of the integration clause itself. Nor could it. The same integration clause included in the renewed Agreement was included in the original Agreement, about which Atlantic Trust makes no complaint. *See* Answer, PageID.254 at ¶ 13; Counterclaim, PageID.262 at ¶ 8. Further, Atlantic Trust's claims are based solely on its allegations that it was fraudulently induced into agreeing to the All-In Addendum. *See* Counterclaim, PageID.262-265. Atlantic Trust does not raise any objection to the integration clause (Section 7.12) itself, or the circumstances under which it twice agreed to the integration clause.

Further, to recognize Atlantic Trust's claim and thereby discard the renewed Agreement and its integration clause, the Court would have to accept (and condone) that ***Atlantic Trust itself*** made a misrepresentation when it agreed not to send

mortgage loans or applications to the prohibited retail lenders, and was actually relying on extrinsic representations whose existence it explicitly denied via the integration clause. In other words, no fraud on UWM's part could be found without first accepting Atlantic Trust's admission of its own false representation and then absolving Atlantic Trust of responsibility for that misrepresentation. Legal gymnastics are not warranted here—Atlantic Trust did not plead and cannot show any fraud that would invalidate the integration clause itself.

Neither is the renewed Agreement "incomplete on its face" such that parol evidence is necessary to "fill the gaps." *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 418. "An agreement is incomplete on its face where it fails to specify 'obvious elements of the deal struck.'" *ADR N. Am., L.L.C. v. Agway, Inc.*, 303 F.3d 653, 658 (6th Cir. 2002) (quoting *UAW-GM Hum. Res. Ctr.*, 579 N.W.2d at 420 n.12). A court "should construe the incompleteness exception narrowly, as 'a broad interpretation of this exception would largely vitiate the purpose of an integration clause.'" *Id.*

There are no "obvious elements" missing here. Indeed, Atlantic Trust claims only that it was misled into believing that Atlantic Trust "would *not* be subject to the terms of the" All-In Addendum. Answer, PageID.263 at ¶ 14 (emphasis in original). In other words, Atlantic Trust's claims are not based on any allegation that there was an "element of the deal struck" omitted from the terms of the renewed Agreement. Instead, Atlantic Trust claims only that it struck a different deal—one that

contradicts the central change from the original to the renewed Agreement. That is not even arguably an incompleteness issue; it is merely an attempt at a do-over.

> ### iii. Given the valid integration clause, Atlantic Trust cannot have reasonably relied on any alleged representation that the All-In Provisions would not be enforced because the Agreement says the opposite.

Again, a party's reliance on certain statements is not reasonable, as a matter of law, where those statements contradict the parties' written contract. *See Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 552–53 (Mich. Ct. App. 1999). Atlantic Trust's alleged reliance on UWM's alleged promise that Atlantic Trust would not be subject to the terms of the All-In Addendum is unreasonable as a matter of law. It essentially seeks to render the parties' renewed Agreement meaningless, containing words but no real obligations. This would be nonsensical even without the integration clause; with that clause, it is impossible. The renewed Agreement "constitute[d] the sole understanding and agreement of the parties" and "supersede[d] all other . . . representations . . . and communications between the parties, whether written or oral." Agreement, PageID.100 at § 7.12; ECF No. 13-2, PageID.118 at § 7.12. And the renewed Agreement sets forth the All-In Addendum provisions, which are the very things Atlantic Trust claims it was told would not apply. No greater contradiction between written terms and alleged promise is possible, and no alleged reliance could be more unreasonable.

*America's Moneyline* is, again, directly on point. America's Moneyline "claim[ed] that it relied on an oral promise not to enforce the ultimatum even after it executed a contract where it (1) agreed to be bound by the ultimatum and (2) agreed that the contract was the "Entire Agreement" between the parties." 647 F. Supp. 3d at 597. As the court stated simply, "[t]hat was unreasonable." *Id*. For its reasoning, the court relied on well-established precedent: "As one court succinctly put it, [America's Moneyline] 'should not be heard to complain that [it] relied on oral promises regarding additional or contrary contract terms when there is written proof, signed by both parties, to the contrary.'" *Id*. (quoting *Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005)) (internal quotations and brackets in original). "Indeed, claims like [America's Moneyline's] 'are precisely what merger clauses seek to avoid: courts . . . reading additional terms into contracts years after the fact.'" *Id*. (quoting *MY Imagination, LLC v. M.Z. Berger & Co.*, 726 F. App'x 272, 277-78 (6th Cir. 2018)) (internal quotations in original).

*Novak* is also illustrative. The plaintiff there signed an employment agreement with the defendants, which stated that "plaintiff's employment was terminable at will by either party" and that "plaintiff was not to sell insurance for any other insurance carriers other than defendants unless defendants specifically directed him to do so." 599 N.W.2d at 549. After being fired, plaintiff asserted a fraudulent

misrepresentation claim and contended that the "defendants induced him into signing the written contract by fraudulently informing him that . . . the at-will provision in the written contract did not apply to him, and . . . he would be allowed to sell insurance for [other insurance carriers]." *Id.* at 552–53. The court found that plaintiff's misrepresentation claim with respect to those statements failed "because plaintiff's reliance on [the statements] was not reasonable in light of the written contract," which "with its integration clause, expressly contradicted [the] statements." *Id.* at 553–54. "As a matter of law," then, the statements "did not support a misrepresentation claim." *Id.* at 554; *see also Oliverio*, 2013 WL 2338706 at *5 ("The [] Agreement also contains an integration clause . . . Accordingly, any reliance on the alleged statements would be unreasonable as a matter of law.")

Atlantic Trust could not have reasonably relied on any extrinsic assurances by UWM because the renewed Agreement was a fully integrated contract. As such, Atlantic Trust's fraud claims.

## IV.   Atlantic Trust cannot show damages from the alleged fraud.

To plead a claim for fraud, a plaintiff must also allege that it "suffered injury" as a result of its reliance on the false material misrepresentation. *See Hi-Way Motor Co.*, 247 N.W.2d at 816. A "fraud plaintiff is entitled to the benefit of the *bargain*," which is what the plaintiff "would have gotten had the representations been true." *Thompson v. Paasche*, 950 F.2d 306, 314 (6th Cir. 1991) (emphasis in original).

Atlantic Trust does not plead sufficient facts that could create a plausible inference it suffered damages because of UWM's alleged "fraud." It merely announces, without elaboration, that it "incurred substantial attorneys' fees, costs, and expenses to defend against UWM's claim" and "lost the benefits of relationships with other lenders and the revenue from such loans." ECF No. 20, PageID.264-265 at ¶¶ 21-22. Such conclusory, catch-all averments do not satisfy *Iqbal/Twombly* or Fed. R. Civ. P. 9(b). Moreover, taking Atlantic Trust's allegations as true, the essence of its story is that it submitted mortgages to the retail lenders prohibited under the All-In Addendum with the expectation that the Addendum would not be enforced. But Atlantic Trust does not soundly suggest it was damaged in any way by taking that action. To the contrary, the only reasonable inference is that Atlantic Trust benefitted from its submissions to the other lenders while also submitting loans to UWM. Indeed, Atlantic Trust was free to work with any lender, except the two retail lenders prohibited under the All-In Addendum, while Atlantic Trust did business with UWM after the All-In Initiative commenced. And further, once Atlantic Trust's relationship with UWM ended, Atlantic Trust was free to work with the prohibited retail lenders too.

At best, Atlantic Trust's alleged damages are premature. Atlantic Trust has paid no liquidated damages to UWM and has not incurred losses by doing business with the retail lenders prohibited under the All-In Addendum. So, no claim has

accrued. *See Chelsea Inv. Grp. LLC v. Chelsea*, 792 N.W.2d 781, 792 (Mich. Ct. App. 2010) ("[D]amages that are speculative or based on conjecture are not recoverable."); *Case v. Hunt*, No. 341645, 2019 WL 1780643, at *5 (Mich. Ct. App. Apr. 23, 2019) ("Plaintiffs['] . . . request for damages is in anticipation of damages that may occur. But a plaintiff may not recover damages that are speculative or based upon conjecture."). Moreover, Atlantic Trust has no damages where the Wholesale Broker Agreement contains a prevailing-party, attorney-fee-shifting provision. *See* Agreement, PageID.100 at § 7.16; ECF No. 13-2, PageID.119 at § 7.16.

In reality, Atlantic Trust's claim is nothing more than a defense dressed up as a counterclaim. Atlantic Trust's damages theory seems to be that it ***will*** be damaged if the All-In Addendum is enforced and Atlantic Trust is required to pay UWM damages for its breach. But if Atlantic Trust were able to avoid its contractual obligation due to alleged fraud, it would never have to pay damages to UWM. In other words, there is no circumstance under which this so-called claim could result in a recovery, which is a strong indication that it is not a claim at all. The claim should be dismissed.

## CONCLUSION

For the reasons set forth above, UWM respectfully requests that the Court grant this motion and dismiss Atlantic Trust's Counterclaim.

Respectfully submitted,

*/s/ Mahde Y. Abdallah*
Moheeb H. Murray (P63893)
Mahde Y. Abdallah (P80121)
**BUSH SEYFERTH PLLC**
100 West Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800
murray@bsplaw.com
abdallah@bsplaw.com

A. Lane Morrison (P87427)
**BUSH SEYFERTH PLLC**
5810 Wilson Road, Suite 125
Humble, TX 77396
T/F: (281) 930-6853
morrison@bsplaw.com

Date: April 30, 2025          *Attorneys for United Wholesale Mortgage, LLC*