# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE, LLC,

      Plaintiff/Counter-Defendant,

v.

ATLANTIC TRUST MORTGAGE CORPORATION,

      Defendant/Counter-Plaintiff.

Case No. 2:24-cv-10216
Hon. Terrence G. Berg
Chief Mag. J. David R. Grand

_____/

# ATLANTIC TRUST MORTGAGE CORPORATION'S ANSWER TO UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISS ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM [ECF NO. 23]

Defendant/Counter-Plaintiff, Atlantic Trust Mortgage Corporation ("Atlantic Trust"), by and through its attorneys, answers Plaintiff/Counter-Defendant, United Wholesale Mortgage, LLC's, Motion to Dismiss Atlantic Trust's Counterclaim [ECF No. 23], as follows:

Atlantic Trust's Counterclaim does state a claim for which relief may be granted as fully set forth in the accompanying Brief in Opposition.

WHEREFORE, Atlantic Trust respectfully requests that this Court deny the Motion and award costs and attorneys' fees to Atlantic Trust for having to defend against this Motion.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant/Counter-Plaintiff
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated:  May 21, 2025         jhirsch@morganrothlaw.com

1

# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

      Plaintiff/Counter-Defendant,

v.                                                            Case No. 2:24-cv-10216
                                                    Hon. Terrence G. Berg
                                                    Chief Mag. J. David R. Grand

ATLANTIC   TRUST   MORTGAGE
CORPORATION,

      Defendant/Counter-Plaintiff.

_____/

# ATLANTIC TRUST MORTGAGE CORPORATION'S BRIEF IN OPPOSITION TO UNITED WHOLESALE MORTGAGE, LLC'S MOTION TO DISMISS ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM [ECF NO. 23]

## **Table of Contents**

Index of Authorities ................................................................................... ii

Statement of Issues Presented ..................................................................... v

Most Controlling Authorities ...................................................................... vi

Introduction ................................................................................................. 1

Statement of Facts ....................................................................................... 3

Argument ..................................................................................................... 6

   I.     Standard of Review ........................................................................ 6

   II.    Atlantic Trust's Counterclaim Properly Alleges a Viable Claim for
        Fraud and Misrepresentation ...................................................... 7

     A.   Atlantic Trust's Counterclaim Sufficiently Alleges that UWM Had No
          Present Intention to Perform Its Promises ............................................ 7

     B.   The Integration Clause in the Alleged Amendment Does Not Preclude
          Atlantic Trust's Counterclaim for Fraud in the Inducement ............... 10

   III.   Atlantic Trust Has alleged that it Reasonably Relied upon UWM's
         False Representations ............................................................... 15

   IV.   Atlantic Trust Has Alleged that it Suffered Damages ........................ 18

Conclusion ................................................................................................. 20

Certificate of Service ................................................................................. 21

i

## Index of Authorities

**Cases**                                                                                        **Page(s)**


*Ashcroft v. Iqbal*,
    566 U.S. 662; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009) ............................6, 7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007) ................................6

*Black v. Columbus Pub. Sch.*,
    2007 U.S. Dist. LEXIS 68672, 2007 WL 2713873
    (S.D. Ohio Sept. 17, 2007) ...........................................................................19

*Bontkowski v. Smith*,
    305 F.3d 757 (7th Cir. 2002) ........................................................................19

*Custom Data Solutions, Inc. v. Preferred Capital, Inc.*,
    274 Mich.App. 239; 733 N.W.2d 102 (2006) ...............................................13

*Diamond Computer Sys. v. SBC Communities, Inc.*,
    424 F.Supp.2d 970(E.D. Mich. 2006) ..........................................................13

*Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Group L.L.C.*,
    635 F.3d 1106 (8th Cir. 2011) ......................................................................18

*Giasson Aero Science Inc. v. RCO Eng'g, Inc.*,
    2014 U.S. Dist. LEXIS 160368 (E.D. Mich. 2014) ......................................13

*Hi-Way Motor Corp. v. International Harvester Co.*,
    398 Mich. 330; 247 N.W.2d 813 (1976) .........................................................7

*Jackson v. Richards Med. Co.*,
    961 F.2d 575 (6th Cir. 1992) ..........................................................................6

*Jenson v. Gallagher*,
    2014 Mich.App. LEXIS 301 (2014) ............................................................11

*LA Ins. Agency Franchising, LLC v. Montes*,
    2016 U.S.Dist. LEXIS 31440 (E.D. Mich. 2016) ........................................12

*Llewellyn-Jones v. Metro Prop. Group, LLC*,
    22 F.Supp.3d 760 (E.D. Mich. 2014) ........................................................12

*Mediaform LLC v. Suszko*,
    2010 Mich. App. LEXIS 1102 (2010) ........................................................13

*Moratorium Now! v. Detroit 300 Conservancy*,
    2015 U.S. Dist. LEXIS 178732 (E.D. Mich. 2015) .....................................18

*Samuel D. Begola Servs., Inc. v. Wild Bros.*,
    210 Mich.App. 636; 534 NW2d 217 (1995) ..................................................7

*Star Ins. Co. v. United Commercial Ins. Agency, Inc.*,
    392 F.Supp.2d 927 (E.D. Mich. 2005) ........................................................11

*UAW-GM Human Resource Ctr. v. KSL Recreation Corp.*,
    228 Mich.App. 486; 579 N.W.2d 411 (1998) ..............................................11

*Van Marter v. American Fid. Fire Ins. Co.*,
    114 Mich.App. 171; 318 N.W.2d 679 (1982) ................................................7

**<u>Rules</u>**                                        **<u>Page(s)</u>**

Fed. R. Civ. P. 8(a)(2) ........................................................................18, 6

Fed. R. Civ. P. 8(a)(3) ....................................................................... 18, 19

Fed. R. Civ. P. 9(b) .................................................................................6

Fed. R. Civ. P. 12(b)(6) ................................................................ 6, 18, 19

Fed. R. Civ. P. 26(a)(1)(A)(iii) ...............................................................19

**<u>Other Authorities</u>**                                                    **<u>Page(s)</u>**

5 C. Wright & A. Miller, Federal Practice and Procedure
　　§ 1255, pp. 508-11 (2004) ...............................................................18

iv

## **Statement of Issues Presented**

1. Whether Defendant/Counter-Plaintiff, Atlantic Trust Mortgage Corporation ("Atlantic Trust"), has stated a counterclaim for fraud and misrepresentation against Plaintiff/Counter-Defendant, United Wholesale Mortgage, LLC ("UWM"), for which relief can be granted where:

   A. UWM made false promises as to the terms of a 60-day trial period which UWM had no present intention to perform;

   B. Atlantic Trust reasonably relied upon UWM's promises and representations; and

   C. But for Atlantic Trust's reasonable reliance upon UWM's promises and representations, Atlantic Trust would not have entered into any business arrangement at all with UWM.

   Atlantic Trust answers:          YES

   UWM answers:                     NO

   The Court Should Answer:         YES

# Most Controlling Authorities

*Diamond Computer Sys. v. SBC Communities, Inc.*,
    424 F.Supp.2d 970(E.D. Mich. 2006) ..........................................................13

*Jackson v. Richards Med. Co.*,
    961 F.2d 575 (6th Cir. 1992) ............................................................6

*Moratorium Now! v. Detroit 300 Conservancy*,
    2015 U.S. Dist. LEXIS 178732 (E.D. Mich. 2015) ......................................18

*Samuel D. Begola Servs., Inc. v. Wild Bros.*,
    210 Mich.App. 636; 534 NW2d 217 (1995) ...................................7

*Star Ins. Co. v. United Commercial Ins. Agency, Inc.*,
    392 F.Supp.2d 927 (E.D. Mich. 2005) ..........................................11

*Van Marter v. American Fid. Fire Ins. Co.*,
    114 Mich.App. 171; 318 N.W.2d 679 (1982) .................................7

Fed. R. Civ. P. 8(a)(2) ........................................................................18, 6

## Introduction

In a desperate effort to quell public scrutiny of, and growing outrage about, UWM's business practices, UWM seeks dismissal of Atlantic Trust's counterclaim for fraud and misrepresentation based upon UWM's false promises and representations of an unrestricted 60-day trial period which UWM itself proposed in order to induce Atlantic Trust to do business with UWM after it ceased to do so and even though UWM had no intention to perform its false promises.

Specifically, there is no dispute that Atlantic Trust ceased doing business with UWM after UWM announced its so-called "All-In Initiative" whereby UWM indicated that it would not do business with purportedly *independent* mortgage brokers who also did business with certain competitors of UWM. ECF No. 13, PagID.85, ¶¶ 29-30. Furthermore, there is no dispute that UWM offered Atlantic Trust a "60-day trial period" to "submit new mortgage loans to UWM." *Id.*, PageID.85-86, ¶ 36.

Nonetheless, UWM now claims in its First Amended Complaint that what UWM itself called a "60-day trial period" was really nothing more than a façade to convince Atlantic Trust to do business with UWM under the terms of the so-called "All-In Initiative," (*i.e.*, the same terms UWM offered to everyone regardless of any "trial period") and which terms Atlantic Trust had refused to accede to. UWM subsequently filed this lawsuit against Atlantic Trust for alleged breaches of the so-

1

called "All-In Initiative" both during the 60-day trial period (essentially negating the existence of any trial period at all) and thereafter. ECF No. 13, PageID.87, ¶ 48.

As a result, Atlantic Trust filed a counterclaim against UWM for fraud and misrepresentation as to the terms of the 60-day trial period, which UWM represented would permit Atlantic Trust to send loans to UWM *without* any other restrictions or encumbrances. ECF No. 20, PageID.262, ¶¶ 11-12. In reliance upon UWM's promises, Atlantic Trust in fact did send loans to UWM instead of other lenders and to the detriment of Atlantic Trust's relationship with other lenders. But UWM, contrary to its express promises and representations, now claims that the 60-day trial period was nothing of sort and was, according to UWM, really just an agreement to do business with UWM on UWM's unilaterally imposed terms, which Atlantic Trust had previously rejected.

Because Atlantic Trust's counterclaim for fraud and misrepresentation does state a counterclaim for which relief can be granted, and UWM's arguments for dismissal of Atlantic Trust's counterclaim are without merit, as set forth below, UWM's Motion should be denied.

**Statement of Facts**

Atlantic Trust executed a Wholesale Broker Agreement with UWM in January 2018 (the "2018 Agreement"). ECF No. 20, PageID.262, ¶ 8. The 2018 Agreement did not place any restriction upon Atlantic Trust's ability, as an independent mortgage broker, to conduct business with any lender it chose. ECF No. 13-1.

In March 2021, UWM announced an ultimatum whereby it indicated that UWM would cease doing business with any independent mortgage broker who did not agree to cease doing business with two of UWM's competitors (the "Ultimatum"). ECF No. 20, PageID.262, ¶ 9. As a result of the Ultimatum, Atlantic Trust terminated its relationship with UWM. *Id*. at ¶ 10.

In or around December 2022, after Atlantic Trust had ceased sending loans to UWM, UWM approached Atlantic Trust and invited Atlantic Trust to enter into a 60-day trial period wherein Atlantic Trust could submit loans to UWM without any restriction upon Atlantic Trust's right to also conduct business with other lenders. *Id*. at ¶ 11. Atlantic Trust agreed to the 60-day trial period with the express understanding that it could continue to submit loans to any lender of its choice, including Rocket Mortgage, and made clear that it did not and would not agree to any agreement with UWM that included the Ultimatum. *Id*. at ¶ 12.

Notwithstanding UWM's promise of a risk free and unencumbered 60-day

trial period during which Atlantic Trust was permitted to submit loans to UWM as well as any other lenders of Atlantic Trust's choice, UWM now claims that the 60-day trial it offered was no "trial period" at all, but rather was governed by the terms of the Ultimatum and that, after the 60-day trial period ended, Atlantic Trust was somehow still bound to the terms of the Ultimatum that it had never agreed to. *Id.*, PageID.263, ¶ 13.

Atlantic Trust has brought its counterclaim for fraud and misrepresentation because UWM falsely represented that Atlantic Trust would not be subject to any restrictions (*i.e.*, the prohibitions of the Ultimatum) during the 60-day trial period and, to the extent Atlantic Trust submitted loans to UWM and/or signed up for UWM's requisite online access, UWM would not enforce the Ultimatum during the 60-day trial period but did so anyway. Specifically, Atlantic Trust alleges in its counterclaim that UWM fraudulently induced Atlantic Trust to enter into the 60-day trial period by promising and representing that Atlantic Trust would not be subject to the terms of the Ultimatum although it had no intention to follow through on such promises and now alleges in its First Amended Complaint that Atlantic Trust was not only bound to the terms of the Ultimatum during the 60-day trial period but also remained bound to the terms of the Ultimatum after the 60-day trial period ended. *Id.* at ¶ 14.

Because Atlantic Trust only agreed to the 60-day trial with the express

understanding that the Ultimatum would not apply based upon UWM's fraudulent misrepresentations, Atlantic Trust sent loans to UWM which it otherwise would not have and thereby did not commit this business to other lenders to foster its relationships with such other lenders. *Id*. at ¶ 15. Nonetheless, UWM has now sued Atlantic Trust contended, among other things, the "60-day trial period" promised by UWM was no trial period at all and was in fact nothing more than a fraudulent ploy to convince Atlantic Trust to conduct business with UWM based upon false pretenses.[1] *Id*., PagID. 264, ¶ 20.

UWM now seeks dismissal of Atlantic Trust's counterclaim on the basis that UWM cannot be held to any promises or representations it made as to the terms of the 60-day trial period because, according to UWM, these were merely future promises or were subsumed in the alleged "amended terms" UWM contends Atlantic Trust somehow agreed to. But Atlantic Trust's counterclaim is viable because UWM

---

[1] UWM notes that it alleges that Atlantic Trust "did not terminate the [January 2018] Agreement" [ECF No. 23, PageID.285, n.2], but UWM concedes that, in its announcement of the Ultimatum, *UWM* announced that *it* would "end its business relationships with Broker Partners who chose to continue to continue originating loans with … Select Retail Lenders," that Atlantic Trust ceased sending loans to UWM and that Atlantic Trust sent loans to one of the Select Retail Lenders "[o]n or about October 4, 2022." ECF No. 13, PageID.83, ¶ 22, PageID.85, ¶¶ 29-30, 33. Thus, UWM's contention that Atlantic Trust did not terminate the 2018 Agreement is contradicted both by Atlantic Trust's express allegation that it did terminate its relationship with UWM following UWM's announcement of the Ultimatum (ECF No. 20, PageID.262, ¶ 10), which must be taken as true, as well as UWM's own allegation that *UWM* would not do business with brokers who sent loans to one of the Select Retail Lenders.

never had any intention to perform its promises as to the terms of its 60-day trial period, and even if Atlantic Trust electronically acknowledged the alleged amended terms, such purported acknowledgement is void, unenforceable and subject to recission because it was procured by fraud in the inducement.

## Argument

### I.   Standard of Review.

Pursuant to Fed. R. Civ. P. 8(a)(2), a pleading must state "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"

Pursuant to Fed. R. Civ. P. 9(b), for a claim involving fraud, "a party must state with particularity the circumstances constituting fraud[.]"

A motion brought pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim tests the legal sufficiency of a claimant's claims. The court must accept as true all factual allegations in the pleadings, and any ambiguities must be resolved in favor of the non-moving party. *Jackson v. Richards Med. Co.*, 961 F.2d 575, 577-578 (6th Cir. 1992). Rule 12(b)(6) requires that a plaintiff allege facts sufficient "to raise a right to relief above the speculative level" so that the claim is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570; 127 S.Ct. 1955; 167 L.Ed.2d 929 (2007). *See also, Ashcroft v. Iqbal*, 566 U.S. 662, 677; 129 S.Ct. 1937; 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Iqbal*, 566 U.S. at 677.

## II.    Atlantic Trust's Counterclaim Properly Alleges a Viable Claim for Fraud and Misrepresentation.

### A. Atlantic Trust's Counterclaim Sufficiently Alleges that UWM Had No Present Intention to Perform Its Promises.

Michigan law is clear that "[a] claim of fraud may be predicated on a future promise if the promise is made in bad faith without present intention to perform." *Van Marter v. American Fid. Fire Ins. Co.*, 114 Mich.App. 171, 184; 318 N.W.2d 679 (1982). See also, *Hi-Way Motor Corp. v. International Harvester Co.*, 398 Mich. 330, 337; 247 N.W.2d 813 (1976). Furthermore, fraud in the inducement to enter into a contract renders the contract voidable at the option of the defrauded party. *Samuel D. Begola Servs., Inc. v. Wild Bros.*, 210 Mich.App. 636, 639-640; 534 NW2d 217 (1995).

Here, Atlantic Trust has alleged that UWM expressly promised that, during the 60-day trial period, there would be no restriction upon Atlantic Trust's right to submit loans to any other lender and that was a material reason that Atlantic Trust agreed to the 60-day trial period.[2] ECF No. 20, PageID.262, ¶ 11. But UWM has

---

[2] Although UWM contends that Atlantic Trust may not have raised a counterclaim for fraudulent inducement, Atlantic Trust has clearly done so. ECF No. 20, PageID.263, ¶ 14 ("UWM fraudulently induced Atlantic Trust to enter into the 60-day trial by promising and representing that Atlantic Trust would not be subject to the terms of the Ultimatum[.]"); PageID.265, ¶ 24 ("Atlantic Trust is entitled to the rescission of any alleged agreement entered into as a result of UWM's fraud in the inducement.").

conceded that it never intended to waive compliance with the Ultimatum, *even at the time it proposed the 60-day trial period and represented that it would do so*. ECF No. 13, PageID.85-86, ¶¶ 36-37. Furthermore, Atlantic Trust has alleged facts to support that UWM's promise was made in bad faith inasmuch as Atlantic Trust alleged that UWM reversed course on its promise of an unrestricted and unencumbered 60-day trial period by filing a lawsuit against Atlantic Trust which alleges breaches by Atlantic Trust during the 60-day trial period. ECF No. 20, PageID.263-264, ¶¶ 13, 19.

Given that Atlantic Trust's allegations must be taken as true for the purposes of this motion, and UWM concedes that it had no present intent to ever follow through on the promise, Atlantic Trust has stated a counterclaim for fraud upon which relief can be granted.

UWM nonetheless attempts to recharacterize Atlantic Trust's allegations claiming that they "boil down to the narrative that UWM promised not to enforce the All-In Addendum against Atlantic Trust but changed its mind long down the road and elected to enforce the All-In Addendum." ECF No. 23, PageID.291. In fact, UWM's own allegations in its First Amended Complaint concede that, when UWM offered the 60-day trial period to Atlantic Trust, UWM never intended to waive enforcement of the Ultimatum, *i.e.*, this was not a decision made "long down the road" but rather UWM always intended to enforce the Ultimatum even though it

8

represented the contrary in order to convince Atlantic Trust to return to doing business with UWM. *Cf.*, ECF No. 13, PageID.85-87, ¶¶ 36-37, 40-41 and ECF No. 23, PageID.291-292. At a minimum, UWM concedes that it offered the 60-day rial period in December 2022 (ECF No. 13, PageID.85-86, ¶ 36) which Atlantic Trust alleges included a promise that there would not restriction upon Atlantic Trust's freedom to dela with lenders of its choice (ECF No. 20, PageID.262-263, ¶¶ 11-13), but in the very same month UWM required Atlantic Trust to review UWM's "renewal package" containing a contrary provision (ECF No.13, PageID.86-87, ¶ 40). Thus, the factual allegations support that UWM had contemporaneously decided it would not perform its promise of a 60-day trial period without restriction at the very same time it made such offer to Atlantic Trust.

UWM also contends that Atlantic Trust has somehow not adequately pleaded what conduct by UWM was intentional, malicious and willful. ECF No. 23, PageID.292. In fact, Atlantic Trust has alleged specific conduct by UWM such as: (1) UWM's act of approaching Atlantic Trust in December 2022 in an effort to woo Atlantic Trust back to doing business with UWM (ECF No.20, PageID.262, ¶ 11); (2) "UWM's promise of a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as any other of Atlantic Trust's choice[.]" (ECF No. 20, PageID.263, ¶ 13); and (3) UWM making express promises and representations that "Atlantic Trust would not be subject to the terms

of the Ultimatum" (*Id.*, ¶ 14).These allegations, read in context with Atlantic Trust's entire counterclaim, provide sufficient factual support that UWM's conduct was intentional, willful and malicious.

### B. The Integration Clause in the Alleged Amendment Does Not Preclude Atlantic Trust's Counterclaim for Fraud in the Inducement.

UWM contends that the integration clause in the alleged amendment bars Atlantic Trust's counterclaim for fraud in the inducement because Atlantic Trust did "not allege that there was fraud in the inducement as to the integration clause itself." ECF No. 23, PageID.298.

As a threshold matter, the integration clause upon which UWM relies does not apply at all here. Specifically, the integration clause states that it applies to "[t]he arrangements and relationships contemplated in this Agreement [i.e., the proposed amended agreement]" ECF No. 13-2, PageID.118, § 7.12. But the alleged amended agreement does not govern a 60-day trial period *at all*. On its face, the alleged amended agreement governs a one-year agreement which renews automatically for additional one year terms unless and until it is terminated. *Id.*, PageID.117, § 7.05. Thus, by its own terms, the integration clause did not apply at all to a 60-day trial period which is at issue here.

Even if the integration clause in the purported amended agreement did somehow apply, Michigan precedent is clear that an integration clause does *not* preclude a claim for fraud that would invalidate an entire contract, as Atlantic Trust's

10

counterclaim here would do. For instance, in *UAW-GM Human Resource Ctr. v. KSL Recreation Corp.*, 228 Mich.App. 486, 503; 579 N.W.2d 411 (1998), the Michigan Court of Appeals held:

> While parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract. Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that invalidates the merger clause itself, *i.e.* fraud relating to the merger clause *or fraud that invalidates the entire contract including the merger clause*. (emphasis added, internal citation omitted).

As Magistrate Judge Pepe explained, to preclude a fraud claim based solely on a merger clause "would provide protection for disreputable parties who knowingly submit false accountings, doctored credentials and/or already encumbered properties as security to unknowing parties as long as they were savvy enough to include a merger clause in their contracts." *Star Ins. Co. v. United Commercial Ins. Agency, Inc.*, 392 F.Supp.2d 927, 928-929 (E.D. Mich. 2005).

In *Jenson v. Gallagher*, 2014 Mich.App. LEXIS 301 (2014), the plaintiffs alleged that they were erroneously informed that the real property that they purchased included fifty feet of lake frontage. The trial court concluded that the plaintiffs could not establish the essential element of reasonable reliance and granted summary disposition in favor of the defendants. The Michigan Court of Appeals reversed, finding that the integration clause in the purchase agreement did *not* preclude a claim of fraud based on representations *not* contained in the purchase agreement. The

Court concluded that plaintiffs were not attempting to introduce new or different contract terms but were taking the position that they were *fraudulently induced to enter into the contract in the first place because of false representations as to the nature of the property that they were purchasing*. *Id*. at *15-*16.

In *Llewellyn-Jones v. Metro Prop. Group, LLC*, 22 F.Supp.3d 760 (E.D. Mich. 2014), the plaintiffs alleged that they were fraudulently induced into investing in rental properties based on misrepresentations that the homes were refurbished, approved under a federal housing program standard, already had tenants, and would yield a specific rate of return each year. The defendants moved to dismiss, arguing that the plaintiffs could not establish the reasonable reliance element of a fraud claim because the contract contained a merger clause and declared that the properties were sold in an "As Is Condition." Judge Lawson denied the motion on the ground that the "presence of a merger clause in a written contract will *not* preclude a claim for fraud in the inducement where the plaintiff can show that it would have avoided the agreement entirely had it known that the defendant's fraudulent representations in fact were false."[3] *Id*. at 784 (emphasis added).

---

[3] *See also*, *LA Ins. Agency Franchising, LLC v. Montes*, 2016 U.S.Dist. LEXIS 31440, *29-*30 (E.D. Mich. 2016) (Grand, Mag. J.) (internal citations omitted) ("These alleged fraudulent misrepresentations are not ones which attempt to alter the franchise agreements' terms, but rather are allegedly false 'representations of fact made by [L.A. Insurance] to [Montes] to induce [her] to enter into a contract,' which could conceivably 'invalidate[] the entire contract … Thus, the mere fact that the franchise agreements contain a merger clause does not necessarily doom

In any event, even if a specific allegation of fraud related to the integration clause itself is required, Atlantic Trust has made such an allegation here. Specifically, Atlantic Trust alleges that "UWM fraudulently induced Atlantic Trust to enter into the 60-day trial by promising and representing that Atlantic Trust would not be subject to the terms of the Ultimatum …" and that "Atlantic Trust never executed any agreement containing the Ultimatum and agreed only to the 60-day trial with the express understanding that the Ultimatum would not apply." ECF No. 20, PageID.263, ¶¶ 14-15. Thus, to the extent the integration would somehow serve to bar Atlantic Trust's reliance upon UWM's promises of an unrestricted and unencumbered 60-day trial period, as UWM now contends, Atlantic Trust has

---

defendants' fraud claims."); *Giasson Aero Science Inc. v. RCO Eng'g, Inc.*, 2014 U.S. Dist. LEXIS 160368 (E.D. Mich. 2014) (Cleland, J.) (court concluded that the plaintiff's fraudulent inducement claim was not barred by the merger clause because it related to representations of fact to induce the plaintiff to enter into the contract rather than a collateral agreement or understanding that was not expressed in the settlement agreement); *Mediaform LLC v. Suszko*, 2010 Mich. App. LEXIS 1102,*4-*5 (2010) (Michigan Court of Appeals concluded that the integration clause did not bar a fraudulent inducement claim premised on statements or promises not contained in a contract because the misrepresentation would "invalidate the entire contract including the merger clause."); *Custom Data Solutions, Inc. v. Preferred Capital, Inc.*, 274 Mich.App. 239, 244; 733 N.W.2d 102 (2006) ("the evidence presented relating to the fraud used to induce Plaintiff into the service and equipment contracts establishes fraudulent inducement and invalidates the entire contract including the merger clause"); *Diamond Computer Sys. v. SBC Communities, Inc.*, 424 F.Supp.2d 970, 986 (E.D. Mich. 2006) (because the plaintiff argued that "it would not have entered into these agreements but for the misrepresentations concerning exclusivity and quick and easy connectivity, the plaintiff alleges fraud that would invalidate the entire contracts, including the merger clauses").

sufficiently alleged that it was fraudulently induced to purportedly agree to such a provision.[4] *Id.*

Finally, UWM claims that there are no "obvious elements" missing from the alleged agreement. But the alleged agreement contains no provision for a 60-day trial period (or any trial period at all, for that matter), which UWM itself concedes was to provide the fundamental framework for Atlantic Trust's renewed relationship with UWM. ECF No. 13, PageID.85-86, ¶¶ 36-38. Thus, even based upon *UWM's own allegations*, the alleged agreement did *not* include all the material terms governing the relationship for the 60-day trial period.[5]

---

[4] UWM also oddly claims that this Court would somehow "have to accept (and condone) that Atlantic Trust itself made a misrepresentation when it agreed not to send mortgage loans or applications to the prohibited retail lenders." ECF No. 23, PageID.298-299. This argument is both circular and nonsensical. To the extent Atlantic Trust prevails on its counterclaim for fraud in the inducement, the alleged agreement would be vitiated entirely and therefore there was no representation by Atlantic Trust at all. If the agreement is valid, UWM would have only a claim for breach of contract, which it is currently pursuing, so this Court is hardly accepting or condoning anything (other than the sufficiency of the pleadings) at this stage of these proceedings. Furthermore, UWM's position is *exactly backward*. Atlantic Trust alleges that it terminated its relationship with UWM as a result of the Ultimatum (*i.e.*, because Atlantic Trust would *not* agree to the Ultimatum) and did not agree to a 60-day trial period to renew its business relationship with UWM until it received express assurances from UWM that from UWM that Atlantic Trust would *not* be subject to the terms of the Ultimatum. ECF No. 7, PageID.262-263, ¶¶ 10, 12, 14.

[5] The alleged amended agreement is for "an initial term of one (1) year and shall automatically renew for successive terms of one (1) year each, unless terminated pursuant to Section 7.06 below," and makes no mention of any trial period. ECF No. 13-2, PageID.117,§ 7.05.

### III. Atlantic Trust Has alleged that it Reasonably Relied upon UWM's False Representations.

UWM contends that Atlantic Trust fails to state a counterclaim for fraud because Atlantic Trust has purportedly failed to allege that it reasonably relied upon UWM's representation that the Ultimatum would not be enforced during the 60-day trial period. On the contrary, Atlantic Trust has alleged more than sufficient facts to support that it reasonably upon UWM's false representations that it would not enforce the Ultimatum during the 60-day trial period as a precondition for Atlantic Trust to resume its business relationship with UWM.

As a threshold matter, although UWM does not dispute that it offered Atlantic Trust a 60-day trial period (ECF No. 13, PageID.85-86, ¶¶ 36-37), UWM apparently contends that this "trial period" was no different than simply entering into UWM's standard agreement containing the Ultimatum. The mere fact that UWM concededly proposed a 60-day trial period supports Atlantic Trust's position that its understanding that UWM's proposal for a "60-day trial period" represented terms that were necessarily *different* than simply entering into UWM's boilerplate agreement, which Atlantic Trust could have done at any time (but did not do because it contained the Ultimatum), was entirely reasonable.[6] Simply put, it was entirely

---

[6] In its First Amended Complaint, UWM suggests that the fact that Atlantic Trust "could terminate the agreement and again work with the Select Retail Lenders" after the 60-day trial period somehow defines the period as a "trial." ECF No. 13,

reasonable for Atlantic Trust to believe that the 60-day trial period meant something other than simply entering into to UWM's boilerplate agreement and Atlantic Trust has specifically alleged that it understood the 60-day trial period to *exclude* the terms of the Ultimatum (ECF No. 20, PageID.262-263, ¶¶ 11-13). Nevertheless, UWM contends that the integration clause in the UWM's boilerplate agreement makes Atlantic Trust's reliance upon UWM's representations that the 60-day trial period would not include any restrictions *de facto* unreasonable. But the fact that Atlantic Trust accepted UWM's online renewal package when directed to do so by UWM as a condition of entering into the 60-day trial period with the express understanding that the online renewal was merely necessary for UWM to process loans during the 60-day trial period only underscores and supports Atlantic Trust's fraud in the inducement claim, which renders that entire agreement voidable. Here, Atlantic Trust expressly alleges that it would *not* have agreed to the online renewal package at all (including any integration clause) but for UWM's express promise of an unencumbered 60-day trial period. ECF No. 20, PageID.263, ¶¶ 14-15.

---

PageID.85-86 at ¶¶ 36-37. But this is nonsensical because the boilerplate agreement containing the Ultimatum is, on its face, terminable by either party with only seven days' notice. ECF No. 13-2, PageID.117, § 7.04 ("This Agreement may be terminated by either party for any reason, with or without cause, breach or other justification, upon seven (7) days prior written notice[.]"). Thus, UWM's alleged definition of the 60-day trial period, if accepted, would be entirely illusory.

In any event, as UWM concedes, the purported renewed agreement containing the integration clause upon which UWM seeks to rely was an entirely separate agreement from the 60-day trial period because it purported to amend the 2018 Agreement. ECF No. 23, PageID.297. Atlantic Trust has alleged that the 2018 Agreement was terminated, so there was no existing agreement to amend in January 2023 when UWM alleges that the Atlantic Trust approved a "renewal." ECF No. 20, PageID.262, ¶ 10; ECF No. 13, PageID.86-87, ¶ 40. Atlantic Trust has further alleged that it never executed any agreement containing the Ultimatum. ECF No. 20, PageID. 263, ¶ 15. Thus, Atlantic Trust's admission that it "approved the renewal through UWM's online broker-facing portal" in order to commence the 60-day trial on the terms promised by UWM simply does not mean that Atlantic Trust agreed to terms *contradictory* to the terms UWM and Atlantic Trust had already agreed upon for the 60-day trial period.

Furthermore, UWM's contention that Atlantic Trust's reliance upon UWM's false promises and representations could not be reasonable where such statements contradict the written agreement is inapplicable here. Specifically, UWM's statements did *not* contradict the written agreement at all because the alleged written agreement did not establish *any* terms or conditions for the 60-day trial period.

17

**IV.   Atlantic Trust Has Alleged that it Suffered Damages.**

UWM argues that the fraud and misrepresentation claim should be dismissed because of a lack of damages.  Not only has Atlantic Trust pled damages, but an alleged lack of damages cannot serve as the basis for a motion to dismiss under Fed. R. Civ. P. 12(b)(6) in any event. In *Moratorium Now! v. Detroit 300 Conservancy*, 2015 U.S. Dist. LEXIS 178732, *4-*6 (E.D. Mich. 2015), Judge Friedman held:

> Defendant's motion confuses the difference between a claim and a demand for relief. See Fed. R. Civ. P. 8(a)(2) & (3). Rule 12(b)(6) permits a defendant to seek dismissal only of the former. As one respected treatise has noted,
>
>> *[t]he sufficiency of a pleading is tested by the Rule 8(a)(2) statement of the claim for relief and the demand for judgment is not considered part of the claim for that purpose*, as numerous cases have held. Thus, the selection of an improper remedy in the Rule 8(a)(3) demand for relief will not be fatal to a party's pleading if the statement of the claim indicates the pleader may be entitled to relief of some other type. Nor is the court limited by the demand for judgment if a deviation seems appropriate at any point after the interposition of the pleading. The liberal policies reflected in Rules 15(a) and 15(b) permit the demand to be amended either before or during trial. Moreover, under Rule 54(c), . . . the district court may grant any relief to which the evidence shows a party is entitled, even though that party has failed to request the appropriate remedy or remedies in his pleading.
>
> 5 C. Wright & A. Miller, Federal Practice and Procedure § 1255, pp. 508-11 (2004) (emphasis added; footnotes omitted). "The amount of damages to be recovered is based upon the proof, not the pleadings." *Dingxi Longhai Dairy, Ltd. v. Becwood Tech. Group L.L.C.*, 635 F.3d 1106, 1108-09 (8th Cir. 2011) … A 12(b)(6) motion "test[s] the formal sufficiency of the statement of the claim for relief," and plaintiff's

18

demand for relief is irrelevant to this inquiry because "the demand is not itself a part of the plaintiff's claim." *Black v. Columbus Pub. Sch.*, 2007 U.S. Dist. LEXIS 68672, 2007 WL 2713873, at \*9 (S.D. Ohio Sept. 17, 2007). See also *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("Although Rule 8(a)(3) of the civil rules requires that a complaint contain 'a demand for judgment for the relief the pleader seeks,' the demand is not itself a part of the plaintiff's claim, and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6)."). *Defendant cites no authority for the proposition, and the Court is aware of none, that a complaint may be dismissed under Fed. R. Civ. P. 12(b)(6) when the allegations in the complaint do not support the amount or type of damages demanded.* (emphasis added, some citations omitted).

In any event, UWM's contention that Atlantic Trust cannot show that it suffered damages is false. Atlantic Trust has alleged that it has suffered damages as a direct result of UWM's fraud. ECF No. 20, PageID.264-265, ¶¶ 20-21. Fed. R. Civ. P. 8(a)(3) requires only that a pleading state "a demand for relief sought." Fed. R. Civ. P. 26(a)(1)(A)(iii) requires that initial disclosures state "a computation of each category of damages claimed by the disclosing party." Thus, there is no basis to dismiss the Counterclaim which provides a short and plain statement of Atlantic Trust's demand for relief.

## **<u>Conclusion</u>**

For all the foregoing reasons, Atlantic Trust respectfully requests that this Court

deny the Motion and award costs and attorneys' fees to Atlantic Trust for having to

defend against this Motion.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: <u>/s/ Jeffrey B. Morganroth</u>
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant/Counter-Plaintiff
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com

Dated:  May 21, 2025                                   jhirsch@morganrothlaw.com

## **Certificate of Service**

I hereby certify that on May 21, 2025, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel in this matter registered with the ECF system.

Respectfully Submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jason R. Hirsch
JASON R. HIRSCH (P58034)
Morganroth & Morganroth, PLLC
Dated:  May 21, 2025          Email: jhirsch@morganrothlaw.com

21