# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

| | |
|---|---|
| UNITED WHOLESALE MORTGAGE, LLC, | Case No. 2:24-cv-10216 |
| Plaintiff/Counter-Defendant, | Hon. Terrence G. Berg |
| v. | Mag. David R. Grand |
| ATLANTIC TRUST MORTGAGE CORPORATION, | |
| Defendant/Counter-Plaintiff. | |

**UNITED WHOLESALE MORTGAGE, LLC'S**
**REPLY IN SUPPORT OF ITS MOTION TO DISMISIS**
<u>**ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM**</u>

The Court should dismiss Atlantic's Counterclaim.[1] Atlantic gave up on its fraud claim and its allegations fail to establish that it alleges a viable fraud-in-the-inducement claim.

## I. Atlantic abandoned its fraud claim.

Atlantic deserted its fraud claim and focuses only on its fraud-in-the-inducement claim. Indeed, Atlantic did not respond to UWM's arguments that the fraud claim must be dismissed because (1) UWM's alleged promise pertains to future conduct and (2) the claim is governed by the parties' contract. Mot., ECF No. 23 at PageID.288–90. Atlantic thus conceded its fraud claim, and it must therefore be dismissed. *Eid v. Wayne State Univ.*, 599 F. Supp. 3d 513, 532 (E.D. Mich. 2022), *aff'd,* (6th Cir. Mar. 15, 2023).

## II. Atlantic fails to allege a bad-faith promise with no intent to perform.

UWM established that Atlantic's fraud-in-the-inducement claim must be dismissed because Atlantic failed to plead that UWM made a bad-faith promise it did not intend to perform when the promise was made. In response, Atlantic tries but fails to rectify its failure by commingling and mischaracterizing its[2] and UWM's pleadings. Atlantic mischaracterizes paragraphs 36–37 of UWM's Complaint

---

[1] Capitalized terms have the same meaning provided in UWM's motion.
[2] Atlantic's statement in its Statement of Facts that UWM "had no intention to follow through on such promises" is unsupported by the cited paragraph 14 of the Counterclaim. Resp. at PageID.329.

1

(PageID.85–86)—which it denied are true (Answer, PageID.256 at ¶¶ 36–37)—to claim that "UWM concedes that it had no present intent to ever follow through on the promise" that it would not enforce the All-In Addendum. Resp., ECF No. 25, PageID.333–34. That Atlantic relies on UWM's Complaint (rather than *Atlantic's* own pleading) is proof enough that the Counterclaim fails to allege a bad-faith promise. Regardless, UWM's Complaint nowhere alleges any promise that it would not enforce the All-In Addendum during the 60-day trial. Rather, UWM alleges that the 60-day trial would be governed by the All-In Addendum. Compl. at ¶¶ 36–37, PageID.85–86. Atlantic's gross mischaracterization of UWM's allegations is not the type of "reasonable inference" allowed under the Rule 12(b)(6) analysis.

Atlantic also tips its hand to show that its Counterclaim does not actually allege a bad-faith promise that UWM never intended to perform. Atlantic states it "has alleged facts to support that UWM's promise was made in bad faith inasmuch as Atlantic Trust alleged that UWM *reversed course* on its promise."[3] Resp. at PageID.333. But "revers[ing] course" is not evidence of a bad-faith promise UWM never intended to perform—it is evidence only of an alleged future-performance promise about which UWM changed its mind. The same goes for Atlantic's argument that it adequately pled "intentional, malicious and willful" conduct. Resp.

---

[3] Unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

at PageID.334. Again, UWM seeking continued business from Atlantic and allegedly promising not to sue for breach of the All-In Addendum during a 60-day trial but later deciding to sue for breach of the All-In Addendum is evidence of an alleged promise it breached—nothing more. Atlantic's Counterclaim simply nowhere alleges that UWM made a bad-faith promise that UWM never intended to perform, and therefore, Atlantic's fraud-in-the-inducement claim must be dismissed.

### III. Atlantic's purported reliance is inherently unreasonable because the Agreement included the All-In Addendum and an integration clause.

#### A. The parties' Agreement includes the All-In Addendum.

Atlantic cannot have reasonably relied on an alleged prior promise of a 60-day trial unencumbered by the All-In Addendum because Atlantic agreed to the All-In Addendum when it renewed its Agreement with UWM. Mot. at PageID.293; Resp. at PageID.342. Atlantic spills much ink to unsuccessfully argue otherwise.

First, Atlantic argues its agreement to the All-In Addendum is reasonable because the alleged prior promise by UWM excluded the All-In Addendum. Resp. at PageID.342. Next, although unsupported by the pleadings, Atlantic claims that the renewal was simply a formality to start the 60-day trial.[4] *Id*. at PageID.341–42.

---

[4] Atlantic mischaracterizes UWM's Motion and claims that UWM conceded the renewed Agreement is "an entirely separate agreement from the 60-day trial period because it purported to amend the 2018 Agreement" that Atlantic previously terminated. Resp. at PageID.342. There was no such concession. Rather, UWM relies on Atlantic's admitted allegations that it approved "UWM's yearly Agreement renewal package, which included the All-In Addendum." Mot. at PageID.297.

Atlantic also claims that the alleged terms of the 60-day trial encompassing an alleged promise to not enforce the All-In Addendum somehow do not contradict the parties' Agreement that included the All-In Addendum because the Agreement did not establish terms for the 60-day trial. *Id*. These arguments lack merit because Atlantic agreed to the All-In Addendum upon renewing its Agreement. *Cook v. Little Ceaser Enters., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000) ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement."); *Aron Alan, LLC v. Tanfran, Inc.*, 240 F. App'x 678, 682 (6th Cir. 2007) ("Unreasonable reliance includes relying on an alleged misrepresentation that is expressly contradicted in a written contract that the plaintiff reviewed and signed."). Atlantic's agreement to the All-In Addendum renders any reliance on any contrary prior representation or understanding as unreasonable.

### B.     The Agreement includes an integration clause.

Atlantic's reliance is especially unreasonable where the parties' Agreement contains an integration clause. Relying on *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411 (Mich. Ct. App. 1998), Atlantic claims that the

---

Atlantic therefore agreed to renew the terms that it originally agreed to in 2018, but this time including the All-In Addendum. Atlantic's purported prior termination does not impact or contradict Atlantic's renewed agreement to the All-In Addendum. Further, Atlantic's continued claim that it "never executed any agreement containing the" All-In Addendum, Resp. at PageID.342, is a red herring. There is no exclusive physical execution requirement. *See United Wholesale Mortg., LLC v. Atlantic Trust Mortg. Corp.*, 2025 WL 907883 (E.D. Mich. Mar. 25, 2025).

4

integration clause does not apply to its fraud-in-the-inducement claim because Atlantic seeks to rescind the entire Agreement. Resp. at PageID.335–36. This argument was rejected in *United Wholesale Mortg., LLC v. America's Moneyline, Inc.*, 647 F. Supp. 3d 587 (E.D. Mich. 2022), because, like Atlantic here, America's Moneyline did not make an "allegation that it was led to believe that there was no merger clause or that the contract did not include the ultimatum." *Id*. at 598. In fact, like Atlantic's attempts here to avoid the All-In Addendum before renewing the Agreement, America's Moneyline's "repeated attempts to avoid the ultimatum before formally executing the amended agreement underscores its knowledge of its terms." *Id*. "So fraud does not invalidate the whole contract." *Id*. at 598–99.

Atlantic alternatively argues that "if a specific allegation of fraud related to the integration clause itself is required, Atlantic Trust has made such an allegation" because it alleges (1) UWM fraudulently induced Atlantic to enter the 60-day trial, (2) Atlantic never executed an agreement containing the All-In Addendum, and (3) Atlantic only agreed to the trial with the understanding that the All-In Addendum did not apply. Resp. at PageID.338–39. None of these allegations soundly state or conclude, particularly under Rule 9(b), that Atlantic "was led to believe that there was no merger clause." *Moneyline*, 647 F. Supp. 3d at 598. Atlantic cannot therefore credibly claim here that it alleged fraud as to the integration clause.

Atlantic also ignores an important distinction precluding its positions:

5

although "a party could reasonably rely upon representations made by another party regarding things outside the scope of the contractual terms," "it is unreasonable to rely on prior collateral agreements." *Moneyline*, 647 F. Supp. 3d at 597 (citing *Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005)). Thus, "this case clearly falls into the collateral agreement camp because [Atlantic] allegedly relied on assurances that either contradicted or varied the explicit terms of the [Agreement]. The merger clause, by its own terms, extinguishes such assurances." *Id*. at 597–98. Atlantic cites *Star Insurance* (and various cases directly relying on it) to wedge itself into the exception but ignores the key distinction "between (a) representations of fact made by one party to another to induce that party to enter into a contract, and (b) collateral agreements or understandings between two parties that are not expressed in a written contract." *Star Ins.*, 392 F. Supp. 2d at 928–29; *see also Moneyline*, 647 F. Supp. 3d at 598 ("[T]he cases [America' Moneyline] relies on," that are relied upon here by Atlantic, "fall into the representations of fact camp.") Whether UWM would enforce the All-In Addendum amounts to a collateral understanding about the Agreement's terms, not a representation of fact about something entirely apart from the Agreement. Atlantic's cited cases offer it no help to avoid the integration clause.

Lastly, Atlantic claims that the integration clause is inapplicable, Resp. at PageID.335, and that terms relating to the 60-day trial are missing from the

6

Agreement, *id.* at PageID.339, and cites to the one-year terms of the Agreement for support. *Id.* at PageID.339. Again, Atlantic's argument has no merit because terms of a collateral 60-day trial contradict the integrated Agreement's terms. *Moneyline, Inc.*, 647 F. Supp. 3d 587; *Star Ins.*, 392 F. Supp. 2d at 927. Atlantic's fraud-in-the-inducement claim thus fails where Atlantic unreasonably relied on a representation contradicted by the integrated Agreement.

**IV.    Atlantic conflates a prayer for relief with the obligation to plead damages.**

Atlantic next tackles UWM's no-damages argument, Resp. at PageID.343–44, but misses the point. The argument is not about a demand for relief or a computation. Rather, it is that Atlantic has not pled facts—distinct from conclusions—that give rise to even a plausible inference that it suffered any harm at all. And Atlantic needs more than mere plausibility here: Rule 9(b) requires that Atlantic's "injury resulting from the fraud" be pled with particularity. *U.S. ex rel. Bledsoe v. Cmty. Health Sys.*, Inc., 501 F.3d 493, 504 (6th Cir. 2007). Atlantic's failure to allege that it has suffered damages by the purported fraud—an essential element for any fraud claim—requires dismissal of the Counterclaim.

Respectfully submitted,

*/s/ Mahde Y. Abdallah* (P80121)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
T/F: (248) 822-7800; abdallah@bsplaw.com
*Attorneys for United Wholesale Mortgage, LLC*

Date: June 11, 2025

7