UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED WHOLESALE MORTGAGE, LLC,**<br><br>    Plaintiff/Counter-Defendant<br>vs.<br><br>**ATLANTIC TRUST MORTGAGE CORPORATION,**<br><br>    Defendant/Counter-Plaintiff. | **2:24-CV-10216-TGB-DRG**<br><br>HON. TERRENCE G. BERG<br><br>**ORDER GRANTING MOTION TO DISMISS ATLANTIC TRUST MORTGAGE CORPORATION'S COUNTERCLAIM (ECF NO. 23)** |

In 2021, United Wholesale Mortgage, LLC ("UWM"), a wholesale mortgage broker, issued an "ultimatum" to its mortgage broker partners, including Atlantic Trust Mortgage Corporation ("Atlantic Trust"), to require that the independent mortgage brokers stop working with two of UWM's competitors as a condition of continuing to work with it. Atlantic Trust ceased doing business with UWM after announcement of the ultimatum until, relying on UWM's alleged promise of a 60-day trial period during which Atlantic Trust could submit loans to UWM and also conduct business with other lenders, it submitted loans to UWM and its competitors. UWM then sued Atlantic Trust for breach of their Amended Wholesale Broker Agreement, and Atlantic Trust countersued for fraud and misrepresentation.

Now before the Court is UWM's Motion to Dismiss Atlantic Trust's Counterclaim. ECF No. 23. The motion has been fully briefed. Upon

review of the parties' filings, the Court concludes oral argument will not aid in the resolution of this matter. Accordingly, the Court will resolve the present motion on the briefs pursuant to E.D. Mich. LR 7.1(f)(2). For the reasons stated below, UWM's Motion to Dismiss Atlantic Trust's Counterclaim will be **GRANTED.**

## I.    BACKGROUND[1]

### A. Factual Background

United Wholesale Mortgage, LLC ("UWM") is a wholesale mortgage lender. Counterclaim, ¶ 5, ECF No. 20. UWM does not work directly with borrowers but  rather, it partners with independent-mortgage brokers to provide residential-mortgage loans to consumers. *Id.* ¶¶ 2, 5; Answer ¶¶ 7, 8, ECF No. 20. Atlantic Trust is an independent mortgage broker that assists borrowers with their residential-mortgage-loan needs, such as completing and processing loan applications. Counterclaim,¶ 2.

UWM and Atlantic Trust began their relationship in January 2018 when Atlantic Trust entered a Wholesale Broker Agreement ("Agreement") with UWM. Answer, ¶ 13; Counterclaim, ¶ 8. Under that

---

[1]    Because UWM seeks dismissal of Atlantic Trust's counterclaim under Federal Rule of Civil Procedure 12(b)(6), the Court accepts as true the factual allegations in Atlantic Trust's countercomplaint as well as all facts Atlantic Trust admits in its answer to UWM's First Amended Complaint. *Jackson v. City of Cleveland*, 64 F.4th 736, 743 (6th Cir. 2023); *Arclin USA, LLC v. Vits Tech. GMBH*, No. 1:20-cv-01197, 2020 WL 10056280, at *1 (N.D. Ga. Nov. 25, 2020).

Agreement, Atlantic Trust agreed to offer UWM's mortgage loan products and, when it submitted mortgage loans to UWM, to make certain warranties and representations as to each submitted loan. Answer, ¶¶ 14–15; Agreement at 1 and § 3.03, ECF No. 13-1, PageID.92, 95–96. Atlantic Trust was not "obligated to submit any particular mortgage loan applications or any minimum number of loan applications to UWM." Answer, ¶ 16; Agreement at § 7.03, PageID.99. And either party could terminate the Agreement at any time and for any reason with seven days' prior written notice. Answer, ¶ 17; Agreement at § 7.06, PageID.99. The Agreement was for an initial one-year term and automatically renewed for successive one-year terms, unless otherwise terminated under Section 7.06 of the Agreement. Answer, ¶ 18; Agreement at § 7.05, PageID.99.

On March 4, 2021, UWM announced its "All-In Initiative." Answer, ¶ 22; Counterclaim, ¶ 9. As part of the All-In Initiative, UWM informed its mortgage-broker partners of the "All-In Addendum," which is a warranty and representation UWM added to the Wholesale Broker Agreement providing that a broker partner agrees not to submit mortgage loans to two particular retail lenders who are competitors to UWM, and if the broker partner does, such submissions constitute a breach of the broker's Wholesale Broker Agreement. Answer, ¶¶ 24–25; see Amended Agreement at § 3.03(x), ECF No. 13-2, PageID.111. The Amended Agreement provides that in the event of a breach of the All-In

3

Addendum, the broker partner must pay liquidated damages to UWM. Answer, ¶¶ 24–25; Amended Agreement at § 7.30, PageID.121.

Atlantic Trust alleges that it terminated its relationship with UWM pursuant to the Agreement after UWM announced the All-In Initiative. Counterclaim, ¶ 10. Later, in or around December 2022, UWM approached Atlantic Trust and invited Atlantic Trust to enter a 60-day "trial period" with UWM. *Id* ¶ 11. Atlantic Trust further alleges that UWM promised "a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as well as any other lender of Atlantic Trust's choice." *Id.* ¶¶ 11–13. Specifically, UWM allegedly "promis[ed] and represent[ed] that Atlantic Trust would *not* be subject to the terms of the" All-In Addendum during the 60-day trial period. *Id* ¶ 14 (emphasis in original). Atlantic Trust then began to send mortgage loans to UWM based on agreeing to the alleged terms of the 60-day trial period. *Id.* ¶ 12; Answer, ¶ 39.

On December 19, 2022, Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal. Answer, ¶ 40. On December 22, 2022, Atlantic Trust submitted its first mortgage loan to UWM since UWM had implemented the All-In Initiative. *Id.* ¶ 41. From December 22, 2022, through February 22, 2023 (the 60-day trial period), Atlantic Trust had 10 mortgage loans close with UWM. *Id.* ¶ 42. While UWM alleges that

4

Atlantic Trust did not submit any mortgage loans to any prohibited retail lenders during the 60-day trial period, FAC ¶ 43, ECF No. 13, PageID.87, Atlantic Trust denies that allegation as untrue. Answer, ¶ 43.

After the end of the 60-day period, Atlantic Trust continued to submit mortgage loans to UWM, submitting 87 mortgage loans to UWM in total. *Id.* ¶¶ 44–45. Atlantic Trust continued its practice of submitting mortgage loans to both UWM and to one or both of the retail lenders prohibited under the All-In Addendum through February 2024. *Id.* ¶ 47. Since December 2022, Atlantic Trust submitted at least 71 mortgage loans to at least one of the retail lenders prohibited under the All-In Addendum. *Id.* ¶ 48.

## B. Procedural History

On January 26, 2024, UWM filed this lawsuit against Atlantic Trust asserting a single claim for breach of contract based on Atlantic Trust's 71 loans to the Select Retail Lenders in violation of the All-In Addendum to the parties' Agreement. ECF No. 1. Atlantic Trust filed a motion to dismiss UWM's Complaint, ECF No. 11, and in response UWM filed its First Amended Complaint ("FAC"). ECF No. 13.

Atlantic Trust filed a motion to dismiss UWM's First Amended Complaint, ECF No. 15, which this Court denied on March 25, 2025. ECF No. 19.

Atlantic Trust then filed its Answer to UWM's First Amended Complaint, and asserted a counterclaim for fraud and misrepresentation.

ECF No. 20. Atlantic Trust alleges that UWM "now claims that the 60-day trial was somehow governed by the terms of the Ultimatum and that, after the 60-day trial period ended, Atlantic Trust was somehow bound to the terms of the Ultimatum that it never agreed to." *Id.* ¶¶ 13–14, 19. Atlantic Trust asserts that it "relied to its detriment upon the false representations made by UWM" and "entered into the 60-day trial period and thereafter continued its relationship with UWM with the understanding that the Ultimatum did not apply." *Id.* ¶ 18.

UWM filed a motion to dismiss Atlantic Trust's counterclaim pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 23. The motion has been fully briefed. ECF Nos. 25, 27.

## II.    LEGAL STANDARD

"The legal standard for motions to dismiss counterclaims follows the same standard as other motions to dismiss under Rule 12(b)(6)." *Selby v. Schroeder*, 567 F. Supp. 3d 841, 845 (M.D. Tenn. 2021). A counterclaim is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must construe the counterclaim in a light most favorable to the nonmoving party, accepting "as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*, 41 F.3d 1061, 1064 (6th Cir. 1994) (citing *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976)). The nonmoving party, however, must plead more than bare legal conclusions. *See Lillard*

*v. Shelby Cnty. Bd. of Educ.*, 76 F.3d 716, 726 (6th Cir. 1996). Rather, the counterclaim "must contain (1) 'enough facts to state a claim to relief that is plausible,' (2) more than 'a formulaic recitation of a cause of action's elements,' and (3) allegations that suggest a 'right to relief above a speculative level.'" *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The pleading need not contain detailed factual allegations, but the nonmoving party must allege facts that, when "accepted as true ... 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 663 (2009) (citation omitted)

In ruling on a motion to dismiss, the Court may consider the complaint as well as: (1) documents that are referenced in the complaint and that are central to the non-moving party's claims; (2) matters of which a court may take judicial notice; (3) documents that are a matter of public record; and (4) letters that constitute decisions of a governmental agency. *Thomas v. Noder-Love*, 621 F. App'x 825, 829–30 (6th Cir. 2015) ("Documents outside of the pleadings that may typically be incorporated without converting the motion to dismiss into a motion for summary judgment are public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.") (internal quotation marks and citations omitted); *Armengau v. Cline*, 7 F. App'x 336, 344 (6th Cir. 2001) ("We have taken a liberal view of what matters fall within the pleadings for purposes of Rule 12(b)(6). If referred

to in a complaint and central to the claim, documents attached to a motion to dismiss form part of the pleadings.... [C]ourts may also consider public records, matters of which a court may take judicial notice, and letter decisions of governmental agencies.").

## III.   DISCUSSION
### A. Fraud and Misrepresentation Claim

UWM first argues that Atlantic Trust's general fraud and misrepresentation claim fails because UWM's alleged promise to Atlantic Trust in December 2022 not to enforce the All-In Addendum pertains to future conduct and conduct governed by the parties' contract. ECF No. 23, PageID.288–90.

Under Michigan law, to state a claim for fraud, the plaintiff must establish: "(1) that defendant made a material representation; (2) that it was false; (3) that when he made it he knew that it was false, or made it recklessly, without any knowledge of its truth, and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury." *Prime Rate Premium Fin. Corp. v. Larson*, 226 F. Supp. 3d 858, 868 (E.D. Mich. 2016) (Lawson, J.) (citation modified) (quoting *Hi-Way Motor Co. v. Int'l Harvester Co.*, 247 N.W.2d 813, 816 (Mich. 1976)). "An action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact." *Hi-*

*Way Motor Co.*, 247 N.W.2d at 816. "Future promises are contractual and do not constitute fraud." *Id.*

Further, "Michigan law is well-established that parties [generally] cannot sue in tort over relationships governed by contract." *United Wholesale Mortg., LLC v. America's Moneyline, Inc.*, 647 F. Supp. 3d 587, 594–95 (E.D. Mich. 2022) (Michelson, J.) (collecting cases). As the Michigan Supreme Court has explained, under the *Hart* rule, "if a relation exists which would give rise to a legal duty without enforcing the contract promise itself, the tort action will lie, otherwise not." *Hart v. Ludwig*, 79 N.W.2d 895, 898 (Mich. 1956); *see also Brock v. Consol. Biomedical Laby's*, 817 F.2d 24, 25 (6th Cir. 1987). "To make that distinction, courts are to focus on 'whether the [counter-]plaintiff alleges violation of a legal duty separate and distinct from the contractual obligation." *America's Moneyline*, 647 F. Supp. 3d at 595 (citing *Rinaldo's Constr. Corp. v. Michigan Bell Tel. Co.*, 559 N.W.2d 647, 658 (1997)).

UWM argues that Atlantic Trust's fraud claim fails because Atlantic Trust pleads the UWM made a promise of future conduct—that if it entered the 60-day trial "Atlantic Trust would *not* be subject to the terms" of the All-In-Addendum, Counterclaim, ¶ 14 (emphasis in original)—and thus Atlantic Trust alleges a representation related to a future promise. ECF No. 23, PageID.288–90. UWM further argues that its alleged assurances, as plead by Atlantic Trust, pertain to obligations

9

within the All-In-Addendum, and thus are contractual in nature and cannot serve as the basis for a fraud claim. *Id.*

Atlantic Trust does not address these arguments in its response brief. The Court finds UWM's arguments well-taken. Atlantic Trust's general fraud and misrepresentation claim is essentially that UWM misrepresented that the All-In Addendum, including its liquidated damages provision, would not be enforced by UWM against Atlantic Trust and that Atlantic Trust could continue to conduct business with the prohibited retail lenders. Thus, UWM's alleged promise is a promise to do something in the future and cannot support a fraud claim. *See Hi-Way Motor Co.*, 247 N.W.2d at 816 ("Future promises are contractual and do not constitute fraud."). Further, this alleged promise relates to duties under the Wholesale Broker Agreement and whether Atlantic Trust is permitted to continue to conduct business with the prohibited lenders while submitting loans to UWM. The alleged promise therefore is contractual and cannot serve as the basis for a separate and independent tort claim. *See America's Moneyline*, 647 F. Supp. 3d at 595–96 (because "AML's fraud claim is essentially that UWM 'misrepresent[ed] that the Ultimatum and Liquidated Damages Provision would not be enforced by UWM and assur[ed] AML that it could continue to conduct business with Rocket Pro without penalty," and thus "'relate[s] to obligations under the [a]greement,'" the promises are contractual and cannot serve as a basis for a separate and independent fraud claim). The Court therefore finds

10

that Atlantic Trust cannot state a general fraud and misrepresentation claim against UWM.

Michigan courts, however, have recognized the intentional tort of fraud in the inducement as an exception to the general rule that parties cannot sue for fraud based on a promise of future conduct. *See America's Moneyline*, 647 F. Supp. 3d at 595–96. Under a fraud in the inducement claim, broken promises can be actionable if the promises were "made in bad faith without intention of performance." *See Gage Prod. Co. v. Henkel Corp.*, 393 F.3d 629, 645 (6th Cir. 2004) (quoting *Hi-Way Motor Co.*, 247 N.W.2d at 816). The Court will address that claim next.

### B. Bad Faith Promise Without Intent to Perform

Atlantic Trust contends that "UWM fraudulently induced [it] to enter into the 60-day trial by promising and representing that Atlantic Trust would not be subject to the terms of the Ultimatum[.]" Counterclaim, ¶ 14.

To establish a claim for fraud in the inducement, a party must show that "'(1) the defendant made a material representation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.'" *Custom Data Sols., Inc. v. Preferred*

*Cap., Inc.,* 733 N.W.2d 102, 104–05 (Mich. Ct. App. 2006) (citation omitted). Fraudulent inducement "addresses a situation where the claim is that one party was tricked into contracting. It is based on pre-contractual conduct which is, under the law, a recognized tort." *Llewellyn-Jones v. Metro Prop. Grp., LLC*, 22 F. Supp. 3d 760, 778 (E.D. Mich. 2014) (Lawson, J.) (citing *Huron Tool & Eng'g Co. v. Precision Consulting Servs., Inc.*, 532 N.W.2d 541, 544 (Mich. Ct. App. 1995)). As stated above, broken promises can be actionable if the promises were "made in bad faith without intention of performance," *Hi-Way Motor Co.*, 247 N.W.2d at 816, and it "occurs where a party materially misrepresents future conduct under circumstances in which the assertions may reasonably be expected to be relied upon and are relied upon." *LIAC, Inc. v. Founders Ins. Co.*, 222 F. App'x 488, 492 (6th Cir. 2007) (citation omitted). "[E]vidence of fraudulent intent, to come within the exception must relate to conduct of the actor at the very time of making the representations, or almost immediately thereafter." *Derderian v. Genesys Health Care Sys.*, 689 N.W.2d 145, 156 (Mich. Ct. App. 2004).

UWM argues that Atlantic Trust has not pled that UWM made a bad faith promise without present intent to perform. ECF No. 23, PageID.291–92. UWM asserts that Atlantic Trust pleads that UWM initially "promise[d] a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as well as any other lender" and that it would "*not* be subject to the terms

of the" All-In-Addendum. Counterclaim, ¶¶ 13–14 (emphasis in original). Atlantic Trust then pleads that UWM "*now claims* that the 60-day trial [and subsequent relationship] was somehow governed by the terms of the" All-In-Addendum. *Id.* (emphasis added). UWM argues that, at best, Atlantic Trust alleges that UWM changed its mind and elected to enforce the All-In Addendum, but that Atlantic Trust fails to allege facts regarding UWM's conduct "at the very time of making the representations, or immediately thereafter" and that UWM made the promise in bad faith with no intent to perform the promise. ECF No. 23, PageID.291–92 (quoting *America's Moneyline*, 647 F. Supp. 3d at 599). UWM argues that Atlantic Trust therefore fails to allege that UWM made a promise in bad faith with no intent to perform. *Id.*

In response, Atlantic Trust first contends that UWM conceded that it never intended to waive compliance with the All-In Addendum, "*even at the time it proposed the 60-day trial period and represented that it would do so.*" ECF No. 25, PageID.332–34 (emphasis in original). However, in support of this argument, Atlantic Trust cites two paragraphs in UWM's First Amended Complaint, *id.* (citing FAC, ¶¶ 36–37), not its Counterclaim. This argument fails for two reasons. First, Atlantic Trust denied the truth of the allegations in paragraphs 36 and 37 of the First Amended Complaint in its Answer, and accordingly those paragraphs cannot support Atlantic Trust's bad faith claim. Second, those paragraphs do not allege that UWM made any promise that it

would not enforce the All-In Addendum during the 60-day trial period in bad faith without intention of performance. Rather, UWM alleges in those paragraphs that the 60-day trial period would be governed by the All-In Addendum. First Amended Complaint, ¶¶ 36–37 ("UWM welcomed Atlantic Trust to submit loans to UWM during this 60-day trial period, subject to the same terms as the Agreement, as amended by the All-In Addendum…").

Atlantic Trust then contends that it has alleged that UWM "reversed course on its promise … by filing a lawsuit against Atlantic Trust which alleges breaches by Atlantic Trust during the 60-day trial period." ECF No. 25, PageID.333 (citing Counterclaim, ¶¶ 13, 19). However, alleging that UWM at some time "reversed course" or changed its mind does not allege that UWM made the alleged promise with no present intention of performance. "[E]vidence of fraudulent intent, to come within the exception [that fraud cannot be based on a promise of future conduct], must relate to conduct of the actor *at the very time of making the representations, or almost immediately thereafter.*" *Derderian*, 689 N.W.2d at 156 (emphasis added). For example, the court found sufficient evidence of bad faith where the defendant promised his soon-to-be-ex-wife that he had no intention of selling their business when he made contemporaneous, contradictory statements to others that he did plan to sell. *Foreman v. Foreman*, 701 N.W.2d 167, 178 (Mich. Ct. App. 2005). Atlantic Trust makes no similar factual allegations that

14

UWM made promises in bad faith, and without more, evidence of a broken promise is not evidence of fraud." *Blackward Props., LLC v. Bank of Am.*, 476 F. App'x 639, 643 (6th Cir. 2012) (citing *Derderian*, 689 N.W.2d at 156).

Atlantic Trust's contentions in its Response that it adequately pled "intentional, malicious and willful" conduct by alleging that (1) UWM approached Atlantic Trust in December 2022 "in an effort to woo Atlantic Trust back to doing business with UWM" and (2) promised "a risk free and unencumbered 60-day trial period during which Atlantic Trust was permitted to submit loans to UWM as any another of Atlantic Trust's choice" and (3) UWM promised that "Atlantic Trust would not be subject to the terms of the Ultimatum," ECF No. 25, PageID.334–35, also fail to adequately plead that UWM acted in bad faith with no present intent to perform. Rather, these are allegations of an alleged breached future promise, not that Atlantic Trust alleges UWM made a promise it never intended to perform.

The Court finds that Atlantic Trust fails to plead anything more than an alleged broken promise by UWM, and because "evidence of a broken promise is not evidence of fraud," *Blackward Props., LLC*, 476 F. App'x at 643 (citing *Derderian*, 689 N.W.2d at 156), Atlantic Trust's fraud in the inducement claim fails as a matter of law.

**C. No Reasonable Reliance**

UWM further argues that regardless of the fraud claim alleged, Atlantic Trust fails to allege that it reasonably relied on UWM's alleged representation that the All-In Addendum would not be enforced during the 60-day trial period because that statement contradicts the parties' written Agreement, which Atlantic Trust agreed to as part of its Agreement renewal with UWM. ECF No. 23, PageID.292–96.

To bring a fraudulent inducement claim, "a [counter]plaintiff must demonstrate that he or she reasonably relied on the [counter]defendant's representations." *Ram Int'l, Inc. v. ADT Sec. Servs., Inc.*, 555 F. App'x 493, 499 (6th Cir. 2014); *Zaremba Equip., Inc. v. Harco Nat'l Ins. Co.*, 761 N.W.2d 151, 165 (Mich. Ct. App. 2008) ("[T]o sustain a fraud claim, the party claiming fraud must *reasonably* rely on the material misrepresentation."). However, "[r]eliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement." *Cook v. Little Ceasar Enters., Inc.*, 210 F.3d 653, 658 (6th Cir. 2000) (citing *3 P.M., Inc. v. Basic Four Corp.*, 591 F. Supp. 1350, 1366 (E.D.Mich.1984) (Pratt, J.) (interpreting Michigan law and holding that a plaintiff may not reasonably rely on prior oral statements that directly contradict the terms of a written contract)). "The determination whether a plaintiff's alleged reliance was reasonable can be made 'at the pleading stage and without discovery.'" *Arrowood Indem. Co. v. City of Warren*, No. 13-13938, at *6 (E.D. Mich. Jan. 15, 2015)

16

(Lawson, J.) (quoting *MacDonald v. Thomas M. Cooley Law Sch.,* 724 F.3d 654, 664 (6th Cir.2013)), *aff'd sub nom. Arrowood Indem. Co. v. Cristini*, 630 F. App'x 512 (6th Cir. 2015).

UWM argues that Atlantic Trust fails to allege that it reasonably relied on UWM's representation that the All-In Addendum would not be enforced during the 60-day trial period or thereafter because Atlantic Trust later agreed to the All-In Addendum as part of its Agreement renewal with UWM. ECF No. 23, PageID.292–96. Specifically, Atlantic Trust admits that after it was offered the 60-day trial, it agreed to the All-In Addendum during its process of renewing UWM's yearly Agreement renewal package of the Wholesale Broker Agreement. *Id.* at PageID.293 (citing Answer, ¶ 40 (admitting that "[o]n December 19, 2022 Atlantic Trust reviewed UWM's yearly Agreement renewal package, which included the All-In Addendum, and on January 19, 2023, Atlantic Trust approved the renewal through UWM's online broker-facing portal.")). UWM argues that, with this admission, any alleged reliance on UWM's alleged prior representations would be unreasonable, and that Atlantic Trust's alleged reliance is especially unreasonable because the parties' Agreement contains a merger clause. ECF No. 23, PageID.296–302.

A merger clause is a contractual provision that "declares in express terms that [the contract] contains the entire agreement of the parties." *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 415

17

(Mich. Ct. App. 1998). "Michigan law … establishes that when a written contract, with a[ merger] clause, expressly contradicts a party's allegedly fraudulent representations not contained in the contract, a plaintiff's reliance on such representations cannot be reasonable." *Ram Int'l*, 555 F. App'x at 499 (citation modified); *see also Novak v. Nationwide Mut. Ins. Co.*, 599 N.W.2d 546, 553 (Mich. Ct. App. 1999) ("[T]he written contract, with its integration clause, expressly contradicted [certain alleged promises,] making plaintiff's alleged reliance on these statements unreasonable."). And "reliance on an allegedly fraudulent representation is not reasonable if the representation is expressly contradicted in a valid merger clause contained in a contract between the parties, unless the plaintiff can make out a claim of fraud in the inducement or fraud pertaining to the merger clause itself." *Ram Int'l*, 555 F. Appx' at 501–02.

In this case, Atlantic Trust alleges that it relied on an oral promise not to enforce the All-In Addendum even after it reviewed the yearly renewal package with the All-In Addendum on December 19, 2022 and renewed its Agreement with UWM with the All-In Addendum on January 19, 2023. Such reliance is unreasonable considering the merger clause in the parties' Agreement, which provides:

> **7.12   Entire Agreement**. The arrangements and relationships contemplated in this Agreement and/or any documents referred to herein constitute the sole understanding and agreement of the parties. This Agreement

supersedes all other agreements, covenants, representations, warranties, understandings, and communications between the parties, whether written or oral, with respect to the transactions contemplated by this Agreement.

Agreement at § 7.12, ECF No. 13-1, PageID.100; Agreement at § 7.12, ECF No. 13-2, PageID.118. As a sister court decided under similar facts applying the same All-In Addendum between UWM and a broker, "the merger clause [in the parties' Agreement] would preclude [the broker's] fraudulent-inducement claim." *America's Moneyline*, 647 F. Supp. 3d at 599. In that case, the broker "claims that it relied on an oral promise not to enforce the ultimatum even after it executed a contract where it (1) agreed to be bound by the ultimatum and (2) agreed that the contract was the 'Entire Agreement' between the parties," and the Court found the alleged reliance "was unreasonable." *Id.* at 597. *See also Watkins & Son Pet Supplies v. Iams Co.*, 254 F.3d 607, 614 (6th Cir. 2001) (finding it generally "unreasonable to continue to rely on representations after stating in writing that you are not so relying" and affirming dismissal of a fraud claim under analogous Ohio law).

Atlantic Trust argues that the merger clause in the parties' Agreement does not apply here because the Agreement with the All-In Addendum does not govern the prior agreement to the 60-day trial period. ECF No. 25, PageID.335. However, this argument misses the point and ignores Atlantic Trust's express admission that it did approve the Agreement, and thus the All-In Addendum, upon renewing its

Agreement through UWM's online broker-facing portal on January 19, 2023. *See Cook*, 210 F.3d at 658 ("Reliance upon oral representations or prior documents, even if false, is unreasonable if the party enters into a subsequent agreement."). Atlantic Trust's approval of the All-In Addendum rendered reliance on any contrary prior representation or understanding unreasonable and precludes Atlantic Trust's fraudulent-inducement claim. *See America's Moneyline*, 647 F. Supp. 3d at 598–99.

Atlantic Trust next argues that the merger clause in the Agreement does not preclude a claim for fraud that would invalidate the entire Agreement. ECF No. 25, PageID.335–37. "Fraud that would invalidate the entire contract could take the form of, 'tricking the other party into signing a document thinking it is something other than it is (a contract rather than a will, for example), or of misreading the contents of the document to the signor, or of inducing the signor not to the read the contents of the document at all.'" *Newburgh/Six Mile Ltd. P'ship II v. Adlabs Films USA, Inc.*, 724 F. Supp. 2d 740, 756 (E.D. Mich. 2010) (Murphy, J.) (citing *Tocco v. Tocco,* 409 F. Supp. 2d 816, 828–29 (E.D. Mich. 2005) (Borman, J.)), *aff'd,* 483 F. App'x 85 (6th Cir. 2012). No such allegations are present in this case. Atlantic Trust has failed to point to any "allegation that it was led to believe that there was no merger clause or that the contract did not include the [All-In Agreement]." *See America's Moneyline*, 647 F. Supp. 3d at 598. As the Sixth Circuit explained: a "distinction must be drawn between fraud claims based on

'collateral agreements' not expressed in the contract—which a merger clause invalidates—and claims stemming from 'representations of fact made by one party to another to induce that party to enter into the contract'—which a merger clause does *not* invalidate." *Ram Int'l*, 555 F. App'x at 499–500 (citing *Barclae v. Zarb*, 834 N.W.2d 100, 118 (Mich. Ct. App. 2013)); *see also America's Moneyline*, 647 F. Supp. 3d at 597 ("In other words, while it is unreasonable to rely on prior collateral agreements, a party could reasonably rely 'upon representations made by another party regarding things outside the scope of the contractual terms, such as the other party's solvency, indebtedness, experience, clientele, client retention rate, business structure, etc.'") (citing *Star Ins. Co. v. United Com. Ins. Agency, Inc.*, 392 F. Supp. 2d 927, 930 (E.D. Mich. 2005) (Pepe, M.J.)). Here, Atlantic Trust alleges that it relied on a promise that the All-In Addendum would not apply to the parties' relationship/dealings. That alleged promise is plainly a "collateral agreement" that is barred by the Agreement's merger clause because the alleged promise contradicts the terms of the Agreement with the All-In Addendum.

The cases Atlantic Trust cites in its Response brief, on the other hand, fall into the "representations of fact" camp as opposed to collateral agreements, and thus are plainly distinguishable. *See, e.g., Jenson v. Gallagher*, No. 312739, 2014 WL 667790 (Mich. Ct. App. Feb. 18, 2014) (permitting claim for fraud based on misrepresentation relating to

character of the property sold—that it had lake frontage); *Llewellyn-Jones*, 22 F. Supp. 3d at 779 (permitting claim for misrepresentation related to condition of investment properties). *See also* ECF No. 25, PageID.337–38 at fn.3 (collecting cases stating that alleged false representations of fact, rather than a collateral agreement, or promises made in bad faith with no present intention to perform, do not bar a fraud or misrepresentation claim)

Atlantic Trust also faults the Agreement for not providing for a sixty-day trial period, which Atlantic Trust argues is a material term. Atlantic Trust also contends that it believed that "the online renewal was merely necessary for UWM to process loans during the 60-day trial period" and that this "underscores and supports Atlantic Trust's fraud in the inducement claim, which renders the entire agreement voidable." ECF No. 25, PageID.341. However, aside from the fact that Atlantic Trust fails to make that allegation in its Counterclaim, Atlantic Trust fails to point to any provision in the Agreement stating that claimed purpose (that the online renewal was necessary to process loans on a trial period basis) on which it could reasonably rely. It is well settled that "when a 'written contract, with [an] integration clause, expressly contradict[s]' a defendant's alleged fraudulent representations *not contained in the contract*, a plaintiff's reliance on such representations cannot be reasonable." *Novak*, 599 N.W.2d at 553–54; *see also Symplr Software LLC v. Theoria Med. PLLC*, No. 23-10698, 2025 WL 838445, at

*8 (E.D. Mich. Mar. 17, 2025) (Michelson, J.) ("[A] party cannot vitiate a contract simply by asserting that the reason it entered the agreement was some extracontractual understanding not ultimately included in the parties' writing"). Thus, the failure of the parties' written Agreement to provide for the 60-day trial period renders Atlantic Trust's alleged reliance on that term unreasonable.

Atlantic Trust also contends that because it had previously terminated the 2018 Agreement, there was no existing agreement to amend in January 2023 when UWM alleges that Atlantic Trust approved a "renewal." ECF No. 25, PageID.342. Atlantic Trust argues that its admission that it "approved the renewal through UWM's online broker-facing portal" to commence the 60-day trial does not mean that Atlantic Trust agreed to terms contradictory to the terms it alleges it and UWM previously agreed on. ECF No. 25, PageID.342. Yet, that is exactly what it means.[2] When Atlantic Trust approved the renewal of the Agreement with the All-In Addendum, which contained a merger clause, Atlantic Trust's reliance on any alleged prior "contradictory" collateral agreement was no longer reasonable, and was barred by the Agreement's merger

---

[2] Unfortunately for Atlantic Trust's claim, this is a case where the law requires a result that appears to endorse or permit a business practice, which, as alleged in the counterclaim, does appear to run counter to the principles of good faith and fair dealing that ought to characterize commercial relationships. Nonetheless, because the alleged facts are not sufficient to support the legal claims in the Defendant's Counterclaim, it must be dismissed.

clause. *See America's Moneyline*, 647 F. Supp. 3d at 597–98 ("[T]his case clearly falls into the collateral agreement camp because [Atlantic Trust] allegedly relied on assurances that either contradicted or varied the explicit terms of the [Agreement]. The merger clause, by its own terms, extinguishes such assurances."); *see also Symplr Software LLC*, 2025 WL 838445 at *8 ("[A] party cannot vitiate a contract simply by asserting that the reason it entered the agreement was some extracontractual understanding not ultimately included in the parties' writing."). "[F]raud that relates solely to a[ ] [precontractual] agreement later nullified by a valid merger clause does not render the contract voidable." *Newburgh/Six Mile Ltd. P'ship II*, 724 F. Supp. 2d at 755.

Accordingly, Atlantic Trust fails to state a claim for fraudulent inducement and its Counterclaim will be **DISMISSED**. Given this conclusion, the Court need not consider UWM's arguments related to damages. *See* ECF No. 23, PageID.302–04.

## IV.   CONCLUSION

Accordingly, for the reasons stated above, UWM's motion to dismiss Atlantic Trust's counterclaim, ECF No. 23, is **GRANTED** and Atlantic Trust's Counterclaim in ECF No. 20, PageID.261–66, is **DISMISSED**.

**IT IS SO ORDERED.**

Dated: March 13, 2026          /s/Terrence G. Berg
                              HON. TERRENCE G. BERG
                              UNITED STATES DISTRICT JUDGE