**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED WHOLESALE MORTGAGE, LLC,

     Plaintiff,

v.

ATLANTIC TRUST MORTGAGE CORPORATION,

     Defendant.

Case No. 2:24-cv-10216
Hon. Terrence G. Berg
Chief Mag. J. David R. Grand

_____/

**ATLANTIC TRUST'S MOTION PURSUANT TO THE COURT'S APRIL 9, 2026 ORDER [ECF NO. 36] ADDRESSING (1) WHETHER THE DEPOSITION OF MR. ISHBIA AS PREVIOUSLY ORDERED BY THE COURT IS JUSTIFIED BY THE FEDERAL RULES OF CIVIL PROCEDURE, RELEVANT CASE LAW, AND THE FACTUAL DEVELOPMENT OF THE CASE; AND (2) WHETHER PLAINTIFF SHOULD BE HELD IN CONTEMPT FOR NOT COMPLYING WITH THE COURT'S ORAL ORDER AT THE DECEMBER 12, 2025 STATUS <u>CONFERENCE TO ALLOW MR. ISHBIA'S DEPOSITION</u>**

Pursuant to this Court's April 9, 2026 Order [ECF No. 36], Defendant, Atlantic Trust Mortgage Corporation ("Atlantic Trust"), by and through its attorneys, hereby moves that Plaintiff, United Wholesale Mortgage, LLC ("UWM") be ordered to promptly produce Mat Ishbia for deposition as justified by the Federal Rules of Civil Procedure, relevant case law and the factual development of this case, and that UWM be held in contempt for failing to comply with this Court December 12, 2025 order that UWM produce Mr. Ishbia for deposition.

This Motion is supported by the accompanying Brief in Support.

WHEREFORE, Atlantic Trust respectfully requests that this Court: (1) order that UWM promptly produce Mr. Ishbia for deposition as ordered by this Court; and (2) hold UWM in contempt for failing to comply with this Court's prior orders to produce Mr. Ishbia for deposition.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: April 23, 2026          jhirsch@morganrothlaw.com

1

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

UNITED WHOLESALE MORTGAGE,
LLC,

      Plaintiff/Counter-Defendant,

v.

ATLANTIC   TRUST   MORTGAGE
CORPORATION,

      Defendant/Counter-Plaintiff.

_____/

Case No. 2:24-cv-10216
Hon. Terrence G. Berg
Chief Mag. J. David R. Grand

**ATLANTIC TRUST'S BRIEF IN SUPPORT OF MOTION PURSUANT TO THE COURT'S APRIL 9, 2026 ORDER [ECF NO. 36] ADDRESSING (1) WHETHER THE DEPOSITION OF MR. ISHBIA AS PREVIOUSLY ORDERED BY THE COURT IS JUSTIFIED BY THE FEDERAL RULES OF CIVIL PROCEDURE, RELEVANT CASE LAW, AND THE FACTUAL DEVELOPMENT OF THE CASE; AND (2) WHETHER PLAINTIFF SHOULD BE HELD IN CONTEMPT FOR NOT COMPLYING WITH THE COURT'S ORAL ORDER AT THE DECEMBER 12, 2025 STATUS <u>CONFERENCE TO ALLOW MR. ISHBIA'S DEPOSITION</u>**

## **Table of Contents**

Index of Authorities ................................................................................. ii

Statement of Issues Presented .............................................................. iv

Most Controlling Authorities ................................................................ vi

Preliminary Statement ............................................................................1

Argument ...............................................................................................10

   I.    UWM Should Be Ordered to Comply with this Court's December
       12, 2025 Order and Promptly Produce Mr. Ishbia for his deposition ....10

      a.   Standard of Review ...........................................................11

      b.   The Federal Rules of Civil Procedure and Sixth Circuit Precedent
          Support Atlantic Trust's Right to Depose Mr. Ishbia. ........................12

      c.   The Evidence Adduced So Far in this Case Confirms that Mr. Ishbia
          Has Unique Personal Knowledge.......................................................15

      d.   UWM's *Post Hoc* Reasons for Seeking a Protective Order to Quash
          Mr. Ishbia's Deposition Fail as Matters of Fact and Law ..................17

   II.   UWM Should be Held in Contempt for its Violation of this Court's
       December 12, 2025 Order .......................................................................22

Conclusion .............................................................................................25

Certificate of Service .............................................................................26

## Index of Authorities

**Cases**                                                                                                      **Page(s)**

*Blue Cross Blue Shield of Mich. Mut. Ins. Co. v. Express Scripts, Inc.*,
    2025 U.S. Dist. LEXIS 136025 (E.D. Mich. Apr. 25, 2025) ........................15

*Green v. Platinum Rests. Mid-Am., LLC*, 2017 U.S. Dist. LEXIS 237096;
    2017 WL 11682937 (W.D. Ky. Oct. 24, 2017)...............................................21

*Harmon v. CSX Transp., Inc.*,
    110 F.3d 364 (6th Cir. 1997) ........................................................................25

*HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.)*,
    927 F.3d 919 (6th Cir. 2019) ........................................................................11

*In re Exemplar Mfg. Co.*,
    331 B.R. 704 (Bankr. E.D. Mich. 2005)........................................................20

*Nichols v. Seaks*,
    296 Mich. 154; 295 N.W. 596 (1941) ..........................................................21

*Serrano v. Cintas Corp.*,
    699 F.3d 884 (6th Cir. 2012) .................................................................. 12, 19

*Thomas v. State Farm Fire & Cas. Co.*,
    2023 U.S. Dist. LEXIS 144298 (E.D. Tenn. Aug. 17, 2023).........................25

*UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*,
    228 Mich.App. 486; 579 N.W.2d 411 (1998) ...............................................20

**Statutes**

18 U.S.C. § 401 ......................................................................................................22

**Other Authorities**

L.R. 7.1(h)(2) .........................................................................................................23

**Rules**

Fed R. Civ. P. 26(b)(1).................................................................. 11, 12

Fed. R. Civ. P. 26(b)(2)........................................................... 11, 12,13,15

Fed. R. Civ. P. 26(c)(1)........................................................ 11, 12, 13, 15

## **Statement of Issues Presented**

1. Whether the deposition of UWM's CEO, Mat Ishbia, as ordered by this Court, is supported by the Federal Rules of Civil Procedure, relevant case law and the factual development of the case where:

   A. Mr. Ishbia personally made the live public announcement of UWM's implementation of the so-called "All-In" iniative;

   B. Mr. Ishbia was personally and directly involved in the sole meeting establishing the "All-In" initiative and liquidated damages provision;

   C. Mr. Ishbia has unique personal knowledge about the basis and reasoning for the implementation of the "All-In" initiative and liquidated damages provision;

   D. No other deponent has or could provide first-hand knowledge of the basis or reasoning for the implementation of the "All-In" initiative, nor explain the reasoning or basis for the nature, structure and amount of liquidated damages provision; and

   E. Mr. Ishbia has publicly confirmed that he personally makes key decisions regarding UWM's policies and procedures, and therefore he is likely to have unique personal knowledge about the "All-In" initiative and liquidated damages provision.

   Atlantic Trust answers:                                         YES

   UWM answers:                                              NO

   The Court Has Answered and Should Continue to Answer:      YES

2. Whether UWM should be held in contempt for failing to comply with this Court's December 12, 2025 order to produce Mr. Ishbia's for deposition where:

   A. UWM did not object nor otherwise indicate that it would not comply with the Court's December 12, 2025 order at any time until March 17, 2026;

iv

B.  Atlantic Trust repeatedly requested alternative convenient dates for the deposition of Mr. Ishbia following the Court's December 12, 2025 order and for three months UWM never indicated that it would not comply with the order or refuse to produce Mr. Ishbia for deposition in accord with the terms of the December 12, 2025 order;

C.  UWM represented to Judge Michelson in a related case that it would comply with this Court's December 12, 2025 order and produce Mr. Ishbia for deposition; and

D.  UWM deliberately sought to stonewall, delay and obfuscate its intent to disregard this Court's December 12, 2025 order in a transparent effort to run the clock and increase the burden, expense and resources expended by Atlantic Trust to defend this matter.

Atlantic Trust answers:          YES

UWM answers:                        NO

The Court Should Answer:     YES

v

## Most Controlling Authorities

**Cases**

*Harmon v. CSX Transp., Inc.*, 110 F.3d 364 (6th Cir. 1997)

*Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)

*UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 228 Mich.App. 486; 579 N.W.2d 411 (1998)

**Rules**

Fed R. Civ. P. 26(b) & (c)

**Statutes**

18 U.S.C. § 401

**Preliminary Statement**

**Introduction**

This Court has already twice determined that UWM's CEO and chairman, Mat Ishbia, must sit for deposition in this case. And for good reason. The Federal Rules, case law, and the factual development in this case all call for the same conclusion.

Borrowers primarily choose to work with wholesale mortgage brokers because, as independent brokers, they can help look for the best overall deal for a borrower from *all* available lenders. On March 21, 2021, Mr. Ishbia, personally made a live public announcement that UWM would be implementing its so-called "All-In" initiative, which represented a fundamental shift in the wholesale broker market. ECF No. 13, PageID.83 at ¶ 22; Exh. 1. During the public announcement, Mr. Ishbia described the "All-In" initiative as follows: "[Y]ou can't work with UWM if you work with those guys [referring to two of UWM's competitors, Rocket Mortgage and Fairway Mortgage][1]." Exh. 1 at 14 (footnote added). Pursuant to this ultimatum, any mortgage broker who worked with both UWM and Rocket Mortgage would be subject to severe punitive financial penalties, which UWM falsely labeled as "liquidated damages." Accordingly, UWM's "All-In" initiative would, by design, preclude independent brokers from using UWM's largest competitor, Rocket

---

[1] Fairway has since exited the wholesale lending market and thus Atlantic Trust will only refer to Rocket Mortgage in this Brief.

1

Mortgage.

In his public announcement, Mr. Ishbia stated that UWM would not permit independent mortgage brokers who work with UWM to work with Rocket Mortgage because Rocket Mortgage operated a retail lending division which Mr. Ishbia claimed (without support) diverted loans from the wholesale channel. Mr. Ishbia said, "[T]hat's not *my* business model. *My* business model is helping you win … And *I* can't stop other people's business models. But what *I* can do, *I* can control *my* business model." *Id*. at 13-14 (emphasis added). Mr. Ishbia's word choices are not mere hyperbole or exaggeration – evidence indicates that Mr. Ishbia personally controls decisions made at UWM. Exhs. 2, 3. Mr. Ishbia has been publicly outspoken about this. *See, e.g.,* Exh. 3 (Mr. Ishbia stated during a 2024 UWM earnings call, "*I* set the margins daily." (*Id*. at 16 (emphasis added)).

UWM has now brought several lawsuits against independent mortgage brokers for alleged violations of the "All-In" provision seeking exorbitant damages. But UWM wants to have its cake and eat it, too. UWM contends that it can pursue its claims without providing reciprocal discovery as to the defenses raised by the independent mortgage brokers it has sued, including Atlantic Trust.

Notwithstanding Mr. Ishbia's very public statements about his direct involvement in the "All-In" initiative, UWM now claims that Mr. Ishbia should not have to address these very issues under oath while subject to cross-examination.

There is simply no reason that Mr. Ishbia should not be deposed in this matter (as this Court already twice determined). The Federal Rules, case law and the facts of this case fully support this conclusion.

**UWM Sues Atlantic Trust**

UWM filed its amended Complaint and Demand for Jury Trial (the "FAC") on April 5, 2024. ECF No. 13. Therein, UWM alleged that Atlantic Trust ceased submitting loans to UWM after UWM's announcement of the "All-In" initiative and only resumed submitting loans after UWM reached out to Atlantic Trust to invite it back for a 60-day trial period. *Id*., PageID.85-86 at ¶¶ 29, 36. UWM further alleges that Atlantic Trust violated the terms of the "All-In" initiative by sending loans to prohibited lenders during the 60-day trial period, even though Atlantic Trust was allowed to do so. *Id*., PageID.87 at ¶ 43. This forms the basis of UWM's single claim for breach of contract, for which UWM seeks hundreds of thousands of dollars in punitive "liquidated" damages.

On April 8, 2025, Atlantic Trust answered the FAC and raised a number of affirmative defenses. ECF No. 20. As relevant here, for example, Atlantic Trust alleged that the liquidated damages provision of the "All-In" initiative is unenforceable and punitive.

**Atlantic Trust's Requests for the Deposition of Mr. Ishbia**

From the outset of this case, Atlantic Trust identified Mr. Ishbia as a person

3

having relevant information. On May 5, 2025, the parties submitted their Joint Discovery and Rule 26(f) Plan. ECF No. 24. Therein, Atlantic Trust identified Mr. Ishbia as one of the UWM witnesses it intended to depose based on his "direct personal involvement in establishing the ['All-In' initiative] and liquidated damages provision," among other things. *Id.*, PageID.311. UWM did *not* indicate that it anticipated opposing the deposition of Mr. Ishbia. *Id.*, PageID.312-314.

Atlantic Trust again identified Mr. Ishbia as a person likely to have relevant information in its initial disclosures served on *May 23, 2025*. Exh. 4 at 4.

Atlantic Trust requested the deposition of Mr. Ishbia (along with the depositions of other representatives of UWM) on *July 15, 2025*, almost a full year ago. Exh. 5 at 2-3. When UWM failed to provide any dates for the requested depositions, Atlantic Trust sent another request on August 14, 2025. *Id.* at 2. Atlantic Trust sent a third request on October 28, 2025. *Id.* at 1.

On November 10, 2025, the parties engaged in a meet-and-confer session to discuss deposition scheduling. UWM, for the first time, indicated that it would not agree to produce Mr. Ishbia in this case. In other words, UWM waited *four months* from Atlantic Trust's first request to inform Atlantic Trust that it would not agree to produce Mr. Ishbia at all.

On November 25, 2025, Atlantic Trust again requested dates for the deponents UWM had agreed it would produce and indicated that it would seek a conference

4

with the Court to address UWM's refusal to produce Mr. Ishbia for deposition. Exh. 6 at 1.[2] On December 8, 2025, in accord with this Court's Discovery Practice Guidelines, Atlantic Trust requested a conference with this Court regarding UWM's refusal to provide any dates for the deposition of Mr. Ishbia and Mr. Glass. Exh. 7. Atlantic Trust explained that it sought to depose Mr. Ishbia about his unique personal knowledge and involvement in determining the nature, amount and structure of the liquidated damages provision, which is a central issue in this case and forms the basis of UWM's claim for damages. Atlantic Trust further explained that the details of the implementation and construction of the liquidated damages provision are relevant in this matter because Atlantic Trust is fully entitled to challenge the reasonableness and enforceability of the liquidated damages provision as well as its alleged nexus to any actual injury suffered.

This Court conducted a telephonic status conference on December 12, 2025. ECF No. 36, PageID.624-625. At the conference, this Court ordered

> Plaintiff to produce Mr. Glass[3] and Mr. Ishbia for deposition. The Court noted that Plaintiff initiated this lawsuit and explained that Defendant sufficiently argued that Mr. Ishbia was personally involved in the implementation and contours of UWM's "All In Addendum," including the Addendum's liquidated damages provision, and that Mr. Glass was involved in the decision to offer Defendant a 60-day trial period, and thus their depositions were relevant and permissible under the Rules. In

---

[2] Limited portions of this email chain are redacted to protect discussions governed by Fed. R. Evid. 408 which are unrelated to the issue at bar.

[3] Mr. Glass has been produced for his deposition.

5

an effort to avoid undue burden, abuse, and expense on the deponents, the Court limited each of the depositions to no more than four hours in length. *Both parties stated that they understood the Court's order and that they would comply*. *Id*. (emphasis and footnote added).

At no time during the December 12, 2025 conference did UWM indicate that it did not understand the Court's order nor indicate that it would not comply with it. *Id*. UWM did not request leave for any further briefing nor did UWM file any motion for reconsideration of the Court's December 12, 2025 order. Rather, UWM intentionally led the Court and Atlantic Trust to believe that it would produce Mr. Ishbia for deposition. Contrary to UWM's after-the-fact excuses, UWM produced Mr. Glass for deposition, demonstrating that it understood this Court's December 12, 2025 order requiring it to do so. Exh. 7.

**UWM Represented that It Would Produce Mr. Ishbia for Deposition**

Just days later, on December 15, 2025, Judge Michelson held a telephonic conference in *United Wholesale Mortgage LLC v. Madison Atrina, LLC d/b/a District Lending*, Case No. 2:23-cv-13176 (the "District Lending Case") wherein UWM has brought a similar claim of breach of contract against another independent mortgage broker, who is also seeking to depose Mr. Ishbia. At the conference, Judge Michelson was made aware of this Court's December 12, 2025 order regarding the deposition of Mr. Ishbia. Exh. 8. Importantly, *at no time during the telephonic conference with Judge Michelson did UWM ever indicate that it did not intend to comply with this Court's December 12, 2025 ruling and produce Mr. Ishbia for a*

6

*deposition in this case*. Rather, UWM implied it would be complying with this Court's order and therefore argued that there was no need for Judge Michelson to decide whether to separately order a deposition of Mr. Ishbia in the District Lending Case. Based on these arguments, Judge Michelson determined that the issues in this case are sufficiently similar to the issues in the District Lending Case. Accordingly, in light of this Court's December 12, 2025 order, Judge Michelson directed that the deposition of Mr. Ishbia in this case be conducted first. Judge Michelson indicated that, if the defendant in the District Lending Case believed it needed additional time to question Mr. Ishbia regarding issues related solely to the District Lending Case after Mr. Ishbia's deposition had been conducted in this case, it could then make such a request to Judge Michelson.

**Atlantic Trust Again Requests Dates for the Deposition of Mr. Ishbia**

In accord with this Court's December 12, 2025 order, Atlantic Trust once again requested the deposition of Mr. Ishbia (among others) on December 18, 2025. Exh. 9. Acknowledging the potential scheduling difficulties in finding a convenient date for Mr. Ishbia's deposition, Atlantic Trust suggested four separate dates in March 2026 for the deposition (giving Mr. Ishbia *three months* advance notice). *Id*.

On January 23, 2026, Atlantic Trust again inquired about a convenient date for Mr. Ishbia's deposition because UWM had still not provided a single date. Exh. 10 at 9-10. On January 30, 2026, Atlantic Trust repeated this request. *Id*. at 7-8.

On February 12, 2026, February 20, 2025, and February 25, 2026 Atlantic Trust again and again requested a date for the deposition, which Atlantic Trust had been requesting since July 2025. *Id*. at 2-3 4-5, 7. *At no time during any of these exchanges did UWM ever indicate that it did not intend to produce Mr. Ishbia in compliance with the Court's December 12, 2025 order nor did UWM file any motion for protective order or reconsideration of the December 12, 2025 order*.[4]

**On March 17, 2026, UWM Indicated it Would Not Comply with the Order**

On March 17, 2026, Atlantic Trust again contacted UWM requesting a date for the deposition of Mr. Ishbia. Exh. 10 at 2. Atlantic Trust indicated that, given the fast-approaching discovery deadline of March 31, 2026, it would be requesting another conference with the Court to address UWM's failure to provide any dates

---

[4] In its now-stricken Emergency Motion for Reconsideration of the Court's March 25, 2026 Text-Only Order (ECF No. 35), UWM suggested that it should be excused for failing to seek a protective order because Atlantic Trust had not unilaterally issued a deposition notice for Mr. Ishbia. ECF No. 35, PageID.407, ¶ 5; ECF No. 36. In fact, the parties had cooperated in scheduling every deposition in this case (as well as the depositions in related cases). UWM's suggestion that Atlantic Trust had some obligation to unilaterally issue a deposition notice based on UWM's failure to respond to good faith requests for mutually convenient deposition dates is disingenuous, and in fact would have violated at least the spirit of this Court's Civility Principles. *See* Civility Principle, Attorneys' Responsibilities to Other Counsel at ¶ 15 ("We will endeavor to accommodate previously-scheduled dates for … depositions that produce good-faith calendar conflicts on the part of other counsel"). Indeed, UWM's failure to acknowledge that it had no intention of producing Mr. Ishbia even after this Court's December 12, 2025 order certainly runs afoul of the spirit of the Civility Principles. *Id*. at ¶ 16 ("We will notify other counsel and, if appropriate, the Court or other persons, at the earliest possible time when … depositions … are to be canceled or postponed").

8

for the deposition of Mr. Ishbia. *Id*. In response, UWM, *for the first time*, indicated that it would be filing a motion for a protective order. *Id*. at 1.

The parties discussed this matter in person on March 24, 2026. At that in-person meeting, UWM proposed that it would produce an alternate witness, UWM's chief legal counsel, Adam Wolfe, if Atlantic Trust would agree to waive its right (pursuant to the Federal Rules and this Court's December 12, 2025 order) to depose Mr. Ishbia. Atlantic Trust promptly declined this offer because Mr. Wolfe is not an adequate substitute for the deposition of Mr. Ishbia. Exhs. 13, 14, 15. For starters, Mr. Wolfe was not even identified by UWM as a person who might have relevant knowledge as to the claims and defenses in UWM's June 11, 2025 Initial Disclosures (Exh. 11 at 1-2). In addition, UWM made clear that it would *not* waive any attorney-client privilege as to Mr. Wolfe's testimony. While UWM has belatedly indicated that Mr. Wolfe has knowledge about the implementation of the All-In Addendum and associated liquidated damages provision, they have not and cannot represent that he has any non-privileged information about the reasoning for their adoption or their nexus with any actual injury, for example. Nor has UWM represented that Mr. Wolfe had any decision-making authority with respect to their adoption.

**On March 25, 2026, this Court Again Orders the Deposition of Mr. Ishbia**

This Court scheduled a status conference for March 26, 2026. ECF No. 34. Following detailed written submissions by the parties, this Court canceled the

scheduled March 26, 2026 conference and instead ordered that UWM produce Mr. Ishibia for deposition within 30 days. Exh. 15.

**UWM's "Emergency" Motion for Reconsideration**

Still undeterred by two separate orders of this Court requiring that Mr. Ishbia be produced for a deposition, on March 26, 2026, UWM filed its improper "emergency" motion for reconsideration, which has now been stricken by the Court. ECF Nos. 35, 36. The motion was improper inasmuch as it was clearly not an "emergency" given that Atlantic Trust had been requesting the deposition of Mr. Ishbia since July 2025, UWM did not seek concurrence, and the "emergency" motion was really an untimely motion for reconsideration of this Court's December 12, 2025 order. *Id*.

In response to UWM's arguments, this Court ordered Atlantic Trust to submit this Motion to address two issues as follows:

> (1) whether the deposition of Mr. Ishbia as previously ordered by the Court is justified by the Federal Rules of Civil Procedure, relevant case law, and the factual development of the case, and (2) whether Plaintiff should be held in contempt for not complying with the Court's oral order at the December 12, 2025 status conference to allow Mr. Ishbia's deposition. *Id*., PageID.622-623

For the reasons fully set forth herein, UWM should be ordered to promptly produce Mr. Ishbia for deposition and UWM should be held in contempt.

## Argument

I.    **UWM Should Be Ordered to Comply with this Court's December 12, 2025 Order and Promptly Produce Mr. Ishbia for his deposition.**

10

a. **Standard of Review**.

Fed R. Civ. P. 26(b)(1) establishes the scope of discovery as follows:

> Parties may obtain discovery regarding any matter, not privileged, that is *relevant* to the claim or defense of any party ... For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. (emphasis added).

Fed. R. Civ. P. 26(b)(2)(C) states:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

Fed. R. Civ. P. 26(c)(1) states, in pertinent part:

> The court may, for good cause, issue an order to protect a party or person from *annoyance, embarrassment, oppression, or undue burden or expense*[.] (emphasis added).

The burden is upon the party seeking to preclude the discovery, and a protective order shall only be entered upon a showing of "good cause" *by the party seeking protection*. Fed. R. Civ. P. 26(c)(1); *HD Media Co., LLC v. United States DOJ (In re Nat'l Prescription Opiate Litig.)*, 927 F.3d 919, 929 (6th Cir. 2019).

Here, the deposition of Mr. Ishbia is relevant under Fed. R. Civ. P. 26(b)(1), is not precluded by Fed. R. Civ. P. 26(b)(2)(C) and UWM has not and cannot

11

demonstrate the requisite "good cause" required for a protective order by Rule 26(c)(1). Therefore, this Court should order the prompt deposition of Mr. Ishbia.

### b. The Federal Rules of Civil Procedure and Sixth Circuit Precedent Support Atlantic Trust's Right to Depose Mr. Ishbia.

In *Serrano v. Cintas Corp.*, 699 F.3d 884, 901 (6th Cir. 2012), the Sixth Circuit explained the standard for granting a protective order under Fed. R. Civ. P. 26(c)(1):

> This Circuit has endorsed the view that to justify a protective order, one of Rule 26(c)(1)'s enumerated harms "must be illustrated 'with a particular and specific demonstration of fact, as distinguished from stereotyped and conclusory statements.'" In keeping with this principle … we have not abandoned the requirement that one of the harms listed in Rule 26(c)(1)(A) [*sic*: 26(c)(1)] must be specified in order to warrant a protective order. Even in cases where we have considered extensively a corporate officer's knowledge and, thus, capacity to provide information relevant to the case, we have declined "to credit a [corporate officer's] bald assertion that being deposed would present a substantial burden," and still required the corporate officer to meet Rule 26(c)(1)'s requirements. (internal citations omitted).

UWM has not and cannot make the particular and specific showing required by *Serrano*, nor can it demonstrate any of the bases for precluding a deposition under Rule 26(b)(2).

As a threshold matter, UWM does not and cannot contend that the deposition of Mr. Ishbia is not relevant under Fed. R. Civ. P. 26(b)(1). There is no dispute that Mr. Ishbia was at the meeting where the decision was made by UWM to implement the "All-In" initiative and the liquidated damages provision. In fact, his public statements, as well as the factual record in this case, suggest that he was the primary,

12

if not sole, decision-maker in adopting this initiative and its punitive liquidated damages provision. *See*, *e.g.*, Exh. 1 at 13-14 (announcing the "All-In" initiative and explaining its adoption by stating, "And *I* can't stop other people's business models. But what *I* can do, *I* can control *my* business model.").

Neither Rule 26(b)(2) nor Rule 26(c)(1) provides any reason to preclude this deposition. Exh. 15. Specifically, the discovery sought is not unreasonably cumulative or duplicative. Indeed, Sara Deciantis, UWM's chief marketing officer, testified about this meeting in a related case. Ms. Deciantis confirmed that Mr. Ishbia was present at the meeting and, as CEO, was the highest-ranking corporate officer at the meeting.[5] Exh. 12 at 1617. It is reasonable to conclude from Mr. Ishbia's public statements that he drove the agenda, led the meeting and personally made decisions about the scope and adoption of "All-In" initiative and its punitive liquidated damages provision.

Indeed, Mr. Wolfe has averred that Mr. Ishbia leads most meetings he attends and those meetings involve significant decision-making for UWM. ECF No. 35-1, PageID.460 at ¶¶ 5-6. Mr. Wolfe has further averred that Mr. Ishbia's attendance at these meetings is "indispensable." *Id*. It is thus fair to infer that Mr. Ishbia's attendance at the meeting at issue here was *indispensable*, that Mr. Ishbia *led* the

---

[5] The deposition of Ms. Deciantis has been scheduled for May 21, 2026 in order to accommodate Ms. Deciantis' schedule.

13

meeting, and that Mr. Ishbia therefore has unique personal knowledge of the decision-making performed at the meeting. *Id*. The knowledge of any other attendee at the meeting is not a fair substitute for the knowledge of the indispensable person who led the meeting and the decision-making.[6]

Similarly, Atlantic Trust has not "had ample opportunity by discovery in the action to obtain the information sought" because only Mr. Ishbia has this unique knowledge. Notably, in its initial disclosures, UWM did not identify any of the other people present at this meeting as persons who may possess relevant knowledge as to the claims and defenses in this case, except for Ms. Deciantis (presumably because Ms. Deciantis was already questioned about this meeting in another matter). Exh. 11 at 2.[7]  And Atlantic Trust has deposed numerous other UWM witnesses, all of whom have disclaimed having relevant knowledge. *See infra.*

Finally, there will be no undue burden or expense placed on UWM for this discovery. Mr. Ishbia resides in Oakland County where the deposition will take place. As fully set forth above, the length of the deposition has been limited by this Court. Exh. 15. The discovery is likely to be beneficial to Atlantic Trust inasmuch as it will reveal Mr. Ishbia's underlying reasoning for the implementation of the

---

[6] No written record of this meeting has been produced by UWM.

[7] In any event, in her prior testimony, Ms. Deciantis could not provide any explanation as to the purpose or calculation of liquidated damages. Exh. 12 at 47-48, 192.

14

"All-In" initiative, and the reasons for the liquidated damages provision, including the basis for the amount of liquidated damages, under oath. This discovery is certainly *not* disproportionate to the needs of this case, wherein UWM seeks to recovery hundreds of thousands of dollars in liquidated damages from an independent mortgage broker. The deposition will certainly not strain UWM's resources, given that UWM has already likely expended far more time, energy and resources attempting to avoid this deposition than it would actually cost to simply conduct it. Thus, with the time limitation already imposed by this Court to ameliorate any potential burden, there is simply no other reason to preclude this deposition under Fed. R. Civ. P. 26(b)(2) or any other Federal Rule. *See Blue Cross Blue Shield of Mich. Mut. Ins. Co. v. Express Scripts, Inc.*, 2025 U.S. Dist. LEXIS 136025, *16 (E.D. Mich. Apr. 25, 2025) (denying motion for a protective order to preclude a deposition of a former CEO where "Plaintiffs have shown no specific, articulated burden under any of the Rule 26(c)(1) factors that would justify preventing [the CEO] from being deposed").

### c. The Evidence Adduced So Far in this Case Confirms that Mr. Ishbia Has Unique Personal Knowledge.

Atlantic Trust has, to date, conducted, four depositions in this matter: (1) Jesse Drury; (2) Hassan Elherchi; (3) Justin Glass; and (4) Heather Demy. None of these individuals has any knowledge of the meeting adopting the All-In" initiative, the reasons for implementing the "All-In" initiative or the structure or amount of the

15

liquidated damages provision.

Specifically, Mr. Drury testified that he had no involvement in preparing the language of the "All-In" provision (Exh. 16 at 31) or who made the decision to implement the "All-In" initiative (*Id*. at 32), and he knows nothing about the liquidated damages provision at all (*Id*. at 36-37).

Ms. Demy had no involvement in preparing the "All-In" provision and does not know who was involved, and she does not know why it was implemented or who made the decision to implement it. Exh. 17 at 33-34. Ms. Demy was not familiar with, nor had even heard of, the liquidated damages provision (*Id*. at 46, 55-56).

Mr. Glass testified that he had no involvement in preparing the "All-In" provision, does not know who was involved in that and was not present at any meeting with Mr. Ishbia where that was discussed. Exh. 18 at 22. Mr. Glass further testified that he was only familiar with the term "liquidated damages," but had no involvement in preparing the liquidated damages provision and does not know who did. *Id*. at 41-42.

Mr. Elherchi testified that had no involvement in drafting the language of the "All-In" provision, does not know who was involved in that, does not know why the "All-In" initiative was implemented, does not know the purpose and does not know who decided to implement it. Exh. 19 at 25-26. He also testified that he is not familiar with the liquidated damages provision. *Id*. at 35.

16

In other words, Atlantic Trust has deposed four of the five people identified by UWM as potentially having knowledge relative to the claims and defenses in this matter, and none have any knowledge at all about the reasoning, preparation or implementation of the "All-In" provision or the nature, amount or structure of the liquidated damages provision.

Furthermore, UWM has not produced any notes or documents reflecting the nature or substance of the meeting adopting this initiative, nor any documents at all explaining the basis or calculation for determining the amount of liquidated damages. In light of this complete absence of information on these topics, Atlantic Trust is certainly entitled to question the key, most senior person who attended the meeting at which these decisions were made and who all signs point to having personally made the decisions himself, which is Mr. Ishbia.

### d.  UWM's *Post Hoc* Reasons for Seeking a Protective Order to Quash Mr. Ishbia's Deposition Fail as Matters of Fact and Law.

As part of its now-stricken "emergency" motion, UWM included a proposed motion for protective order wherein UWM asserted a number of purported basis for quashing the deposition of Mr. Ishbia, all of which have already been raised by UWM and correctly rejected by this Court. *See*, *e.g.*, Exhs. 7, 14.

As a threshold matter, UWM should be estopped from seeking a protective order for a deposition that was first requested in July 2015. Exh. 5. To the extent UWM wanted to seek a protective order, it had both the time and the opportunity to do so.

17

Specifically, UWM waited eight months since Atlantic Trust first requested the deposition of Mr. Ishbia and three months since the Court ordered the deposition to proceed to file its motion, delaying seeking a protective order until the eleventh hour in hopes of running the clock on discovery. It should not be rewarded for this dilatory behavior.[8]

In any event, this Court fully and fairly took into account the concerns raised by UWM when it ordered the deposition of Mr. Ishbia on December 12, 2025. Specifically, UWM appears to offer four reasons why the deposition of Mr. Ishbia should be quashed, all of which were already fully considered and rejected by this Court, and which are without merit in any event.

First, UWM contends that the deposition would place an undue burden upon Mr. Ishbia. But the Court has already addressed this concern by limiting the time period of the deposition to four hours (significantly less than the normal seven hours permitted under the Federal Rules)[9] and ordering that the deposition be scheduled

---

[8] In its now-stricken "emergency" motion, UWM contends that it "prioritized producing several witnesses who … at least arguably had more relevant information and did not present the exceptional burden and proportionality concerns of a CEO-level deposition." ECF No. 35, PageID.407 at ¶ 5. Notably, UWM never shared its "prioritization" plan with Atlantic Trust or this Court. This Court did not condition its order that Mr. Ishbia be produced for deposition or any other depositions taking place first. And, as fully set forth herein, the witnesses produced by UWM lacked relevant information about the key issues in this case.

[9] UWM has suggested that Atlantic Trust sought to expand the four-hour limit set by this Court. Exh. 14 at 2. In fact, Atlantic Trust merely inquired if UWM would

on a convenient date, which Atlantic Trust has sought to do since July 2025. In addition, this Court cautioned that the deposition should not be abusive nor seek to rake the witness over the coals. This Court cautioned that questioning should get to the point and should not be onerous. Atlantic Trust expressly confirmed its understanding of this Court's admonitions.

Notably, Mr. Ishbia did not provide any affidavit to support his alleged time constraints. Instead, Mr. Wolfe provided an affidavit as part of UWM's now-stricken "emergency" motion. ECF No. 35-1. Therein, Mr. Wolfe contends that any deposition would "hamper UWM's ability to conduct its operations" because Mr. Ishbia days are "routinely packed with meetings, *most of which he leads*" and "involve *significant decision-making for UWM*." *Id.*, PageID.460-461 at ¶¶ 5-6, 17 (emphasis added). The Sixth Circuit has already refused "to credit" such a "bald assertion that being deposed would present a substantial burden," in a case where these assertions were made by the representative himself, which is not even the case here. *Serrano*, 699 F.3d at 901.[10]

---

agree to additional time for Mr. Ishbia's deposition in the same sitting which would then fully satisfy Mr. Ishbia's already-ordered deposition in this case, as well as the defendant's separate request to depose Mr. Ishbia in the District Lending Case. Exh. 9 at 1. UWM never responded to this request and certainly never indicated that it did not intend to produce Mr. Ishbia *at all* notwithstanding this Court's order.

[10] Mr. Wolfe's affidavit actually *supports* Atlantic Trust's position that Mr. Ishbia personally leads meetings and he is the person who makes significant decisions for UWM. These are the very reasons that Mr. Ishbia holds unique personal knowledge

19

Second, UWM contends that the topics Atlantic Trust intends to explore would somehow be irrelevant because, according to UWM, the wholesale broker agreement is unambiguous. But Atlantic Trust's position is that the liquidated damages provision, which changed over time, is an unenforceable penalty that has no nexus to any actual damage suffered by UWM. Michigan law makes clear that a liquidated damages provision cannot be a mere penalty. *UAW-GM Human Res. Ctr. v. KSL Rec. Corp.*, 228 Mich.App. 486, 508; 579 N.W.2d 411 (1998). "A liquidated damage clause is void as a penalty if it provides for an amount of damages that is unreasonable in light of the possible injury suffered in the event of a breach." *In re Exemplar Mfg. Co.*, 331 B.R. 704, 711-12 (Bankr. E.D. Mich. 2005) (emphasis added, internal citation omitted). Thus, the reason for the liquidated damages provision as well as the structure of the provision (*i.e.*, how the amount of liquidated damages was computed, what the amount is based upon and whether this amount has any nexus to actual damages allegedly suffered by UWM) are entirely relevant. In fact, a court must determine whether the "figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a *penalty* from the contract breaker." *Nichols v. Seaks*, 296 Mich.

---

about the decisions made at the meeting regarding the "All-In" initiative, which Mr. Ishbia acknowledged was a big deal for UWM and likely encompasses decisions he personally made. Exh. 1 at 11 (describing the "All-In" initiative, Mr. Ishbia says, "this is a big one").

20

154, 161; 295 N.W. 596 (1941) (emphasis added). In addition, this matter is set for a jury trial (requested by UWM) and a jury would certainly be entitled to hear material evidence about the implementation of both provisions at issue here.

Third, UWM contends that the information sought from Mr. Ishbia can be obtained from other sources. UWM has manufactured this *post hoc* reasoning because it refused to provide any date for the deposition of Mr. Ishbia while Atlantic Trust proceeded, in good faith, with conducting other depositions. In any event, as fully set forth above, no other witness has shed on light on the primary topics to be addressed with Mr. Ishbia.

Fourth, UWM contends, without any supporting affidavit, that Mr. Ishbia has no personal knowledge of broker specific issues related to Atlantic Trust. Even if this claim is true, it misses the point. UWM undisputedly used a mandatory form wholesale broker agreement with all the independent brokers with whom it conducts business, including Atlantic Trust, about which Mr. Ishbia *does* have personal knowledge. Accordingly, his proclaimed lack of knowledge about issues specific to Atlantic Trust cannot be used to shield Mr. Ishbia from a deposition about the very document and policies UWM seeks to enforce against Atlantic Trust. *See Green v. Platinum Rests. Mid-Am., LLC*, 2017 U.S. Dist. LEXIS 237096, *11; 2017 WL 11682937 (W.D. Ky. Oct. 24, 2017) (ordering deposition of president and founder because of "his possible direct involvement in the creation and company-wide

21

implementation" of applicable policies even if "he did not directly supervise the plaintiffs").

In sum, UWM's untimely and unsupported request for a protective order should be denied, and the deposition of Mr. Ishbia should go forward as ordered by this Court on December 12, 2025 and March 26, 2026.

## II.     UWM Should be Held in Contempt for its Violation of this Court's December 12, 2025 Order.

UWM should be held in contempt for two separate and distinct reasons.

First, UWM clearly knew it was obligated to produce Mr. Ishbia for deposition following the December 12, 2025 conference. *After* the December 12, 2025 conference, Atlantic Trust sent at least *eight emails* requesting the deposition of Mr. Ishbia. Exhs. 9; 10. UWM never once contended that it would not produce Mr. Ishbia, nor did it suggest that it somehow did not understand that the Court's order was anything other than that – a binding order. Demonstrating that it understood the binding nature of this order, UWM in fact produced Mr. Glass for deposition. Instead, UWM tried to run the clock on Mr. Ishbia's deposition. UWM's behavior amounts to direct and deliberate disobedience of the Court's December 12, 2025 order, which is contempt subject to punishment by this Court.[11]

---

[11] 18 U.S.C. § 401 states, "A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as … (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command."

Second, UWM is represented by sophisticated counsel who fully understood that UWM's recourse if it wished to challenge the Court's December 12, 2025 order was to timely file (within 14 days) a motion for reconsideration pursuant to L.R. 7.1(h)(2) or, at a minimum, to seek leave to file a motion for protective order notwithstanding the resolution of this dispute through the Court's Discovery Protocol and the December 12, 2025 conference. UWM did not do this and, worse yet, led Atlantic Trust, this Court and Judge Michelson to believe that it would comply with the December 12, 2025 order. It is now clear that UWM hoped to run the clock on discovery. This is a gamble UWM must lose because disregarding a Court order is contempt and UWM's gamesmanship is sanctionable.

UWM has proffered two purported justifications for its failure to file a timely motion for reconsideration of the December 12, 2025 order. UWM contends that "it believed that further development of the factual record might alleviate the need to formally seek a protective order." ECF No. 35, PageID.407 at ¶ 5. This justification is entirely unavailing inasmuch as this Court's December 12, 2025 order did not provide this option nor require that other depositions be taken prior to Mr. Ishbia's deposition. Rather, UWM intentionally manipulated the discovery process by ignoring Atlantic Trust's repeated attempts to work out a mutually convenient date for the deposition of Mr. Ishbia (and deliberately never stating that it would not produce Mr. Ishbia at all). Atlantic Trust, moreover, did conduct other depositions

23

(while consistently requesting dates for the deposition of Mr. Ishbia), confirming that the other witnesses identified by UWM lacked personal knowledge on key issues relating to the adoption of the "All-In" initiative and enforceability of the liquidated damages provision. Atlantic Trust's good faith cooperation in moving discovery forward based on witness availability cannot be weaponized to serve as a *post hoc* justification for UWM's failure to provide any dates for the deposition of Mr. Ishbia. Nor should UWM be permitted to use Atlantic Trust's cooperation in scheduling other depositions as a basis to deprive Atlantic Trust of Mr. Ishbia's deposition, which it has been consistently seeking to schedule since July 2025.

UWM's *post hoc* position that Court's December 12, 2025 order was something other than a binding order (ECF No. 35, PageID.407 at ¶ 4) is both disingenuous and contrary to UWM's own actions, as discussed above. As this Court has already ruled, the December ruling represented a "clear order" (ECF No. 36, PageID.626). Which is why UWM *never* took this position at any time between December 12, 2025 and March 17, 2026, *including at this Court's December 12, 2025 and the December 15, 2025 conference with Judge Michelson.*

In short, UWM has provided no tenable justification for its refusal to comply with the December 12, 2025 order, which has increased the time, burden and expense expended by Atlantic Trust in attempting to secure the ordered discovery. At a minimum, this Court should order UWM to reimburse Atlantic Trust for all expenses

24

it incurred in connection with this issue since December 12, 2025, and warn UWM that any such further contemptuous actions will result in dismissal of its claim with prejudice. *See Harmon v. CSX Transp., Inc.*, 110 F.3d 364, 368 (6th Cir. 1997) (affirming dismissal where plaintiff delayed "nearly a full year after [defendant] served [plaintiff] with its original discovery requests" "with disregard for [defendant's] persistent requests and with contempt for an order of the court."); *Thomas v. State Farm Fire & Cas. Co.*, 2023 U.S. Dist. LEXIS 144298, *5 (E.D. Tenn. Aug. 17, 2023) ("Repeated failure to respond to discovery requests can constitute 'contumacious conduct' warranting dismissal." (collecting cases)).

## Conclusion

For all the foregoing reasons, Atlantic Trust respectfully requests that this Court: (1) order that Mr. Ishbia promptly be produced for a deposition; and (2) UWM be held in contempt.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey B. Morganroth
JEFFREY B. MORGANROTH (P41670)
JASON HIRSCH (P58034)
Attorneys for Defendant
344 North Old Woodward Avenue, Suite 200
Birmingham, Michigan 48009
(248) 864-4000
jmorganroth@morganrothlaw.com
Dated: April 23, 2026          jhirsch@morganrothlaw.com

## Certificate of Service

I hereby certify that on April 23, 2026, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to counsel in this matter registered with the ECF system.

<div style="margin-left: 40%;">

Respectfully Submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jason R. Hirsch
JASON R. HIRSCH (P58034)
Morganroth & Morganroth, PLLC
Email: jhirsch@morganrothlaw.com

</div>

Dated: April 23, 2026

26