**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

UNITED WHOLESALE
MORTGAGE, LLC,

      Plaintiff,

v.

ATLANTIC TRUST
MORTGAGE CORPORATION,

      Defendant.

Case No. 2:24-cv-10216

Hon. Terrence G. Berg
Mag. David R. Grand

**UNITED WHOLESALE MORTGAGE, LLC'S BRIEF IN OPPOSITION TO
ATLANTIC TRUST'S MOTION TO COMPEL THE DEPOSITION OF
MATHEW ISHBIA AND TO HOLD UNITED WHOLESALE MORTGAGE
IN CONTEMPT**

**STATEMENT OF ISSUE PRESENTED**

1.      Should the Court deny Atlantic Trust's motion to compel the deposition of UWM's CEO, Mathew Ishbia, because allowing his deposition would impose an undue burden on him and UWM in light of the relevance of the testimony to be obtained, and the information sought can be obtained through other, less burdensome, forms of discovery that Atlantic Trust has not exhausted?

| | |
|---|---|
| UWM answers: | Yes. |
| Atlantic Trust answers: | No. |
| The Court should answer: | Yes. |

2.      Should the Court find UWM in contempt where the Court did not issue a written order or even a docket notation of its off-the-record resolution of a discovery issue raised informally, where no deadline was imposed, and where UWM did not refuse to produce Mr. Ishbia but rather sought the opportunity to move for a protective order well before the discovery cutoff?

| | |
|---|---|
| UWM answers: | No. |
| Atlantic Trust answers: | Yes. |
| The Court should answer: | No. |

i

## CONTROLLING OR MOST APPROPRIATE AUTHORITIES

- *Serrano v. Cintas Corp.*, 699 F.3d 884 (6th Cir. 2012)

- *Gascho v. Global Fitness Holdings, LLC,* 875 F.3d 795 (6th Cir. 2017)

- *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692 (6th Cir. 2017)

- *Zurich Ins. Co. v. CCR & Co.*, 576 N.W.2d 392 (Mich. Ct. App. 1997)

- *Glover v. Johnson*, 931 F. Supp. 1360 (E.D. Mich. 1996)

- *Fox v. Amazon.com, Inc.*, 2017 WL 9476870 (M.D. Tenn. Sept. 21, 2017)

- *Overall v. Oakland Cnty.*, 2022 WL 351068 (E.D. Mich. Feb. 4, 2022)

- *Ceiva Logic, Inc. v. Amazon.com, Inc.*, 2021 WL 12349625 (C.D. Cal. Nov. 10, 2021)

# TABLE OF CONTENTS

**PAGE(S)**

INTRODUCTION ...................................................................................1

BACKGROUND ....................................................................................2

      A.    Atlantic Trust breaches its agreement and UWM sues. ........................2

      B.    Atlantic Trust insists on deposing UWM's CEO. ................................4

      C.    Atlantic Trust rejects any compromise whatsoever. ............................5

LEGAL STANDARD.............................................................................6

ARGUMENT .........................................................................................7

      I.    The Court should deny the request to depose Mr. Ishbia......................9

          A.    Deposing Mr. Ishbia will unduly burden him and UWM...........9

          B.    The topics Atlantic Trust intends to explore are irrelevant. .................................................................................11

          C.    The information to be sought from Mr. Ishbia can be—or already has been—obtained through less burdensome means..................................................................................14

          D.    Mr. Ishbia has no personal knowledge of broker-specific issues about which Atlantic Trust intends to question him....................................................................................17

          E.    Atlantic Trust's refusal to discuss any reasonable limits reinforces the inference of harassment rather than legitimate discovery. ................................................................19

      II.    The Court should not hold UWM in contempt. ................................21

CONCLUSION....................................................................................25

iii

# INDEX OF AUTHORITIES

**PAGE(S)**

**CASES**

*Banks v. Off. of Senate Sergeant-at-Arms*,

　222 F.R.D. 7 (D.D.C. 2004)...............................................................................19

*Brian J. Lyngaas, D.D.S., P.L.L.C. v. Solstice Benefits, Inc.*,

　2023 WL 6302998 (E.D. Mich. Sept. 27, 2023) ........................................ 10, 16

*Ceiva Logic, Inc. v. Amazon.com, Inc.*,

　2021 WL 12349625 (C.D. Cal. Nov. 10, 2021) ................................................10

*Dietz v. Bouldin*,

　579 U.S. 40 (2016)............................................................................................25

*Eight Mile Style, LLC v. Spotify USA Inc.*,

　2022 WL 20936608 (M.D. Tenn. Mar. 31, 2022)..............................................20

*Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*,

　936 F.2d 889 (6th Cir. 1991) ............................................................................18

*Encore Big Beaver, LLC v. Uncle Julio's of Fla., Inc.*,

　2022 WL 15898128 (E.D. Mich. July 6, 2022).....................................................6

*Erickson's Flooring & Supply Co, Inc. v. Basic Coatings, Inc.*,

　370 Fed. App'x 632 (6th Cir. 2010) ...............................................................7, 22

*Fox v. Amazon.com, Inc.*,

　2017 WL 9476870 (M.D. Tenn. Sept. 21, 2017)...............................................10

*Gascho v. Global Fitness Holdings, LLC*,

　875 F.3d 795 (6th Cir. 2017) ..........................................................................7, 22

## INDEX OF AUTHORITIES
### (continued)

**PAGE(S)**

*Gen. Ret. Sys. of the City of Detroit v. Alamerica Bank*,

    No. 5:14-cv-10032 (E.D. Mich.) .........................................................................21

*Glover v. Johnson*,

    931 F. Supp. 1360 (E.D. Mich. 1996) .................................................................22

*Grace v. Ctr. for Auto Safety*,

    72 F.3d 1236 (6th Cir. 1996) ..........................................................................7, 22

*Haydar v. Amazon Corp., LLC*,

    2021 WL 4206279 (6th Cir. Sept. 16, 2021) .......................................................11

*Hemlock Semiconductor Corp. v. Kyocera Corp.*,

    2016 WL 1660862 (E.D. Mich. Apr. 27, 2016) ..................................................11

*Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*,

    867 F.3d 692 (6th Cir. 2017) ...............................................................................13

*In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, ......................................

    205 F.R.D. 535 (S.D. Ind. 2002) .........................................................................19

*Loomis v. Unum Grp. Corp.*,

    338 F.R.D. 225 (E.D. Tenn. 2021) ........................................................................7

*McCracken v. Ford Motor Co.*,

    2009 WL 10700999 (E.D. Pa. Apr. 21, 2009).....................................................14

*Mitchell v. Arnold*,

    2023 WL 7711478 (W.D. Ky. Nov. 15, 2023).....................................................18

**INDEX OF AUTHORITIES**
**(continued)**

**PAGE(S)**

*Morales v. E.D. Etnyre & Co.*,

　229 F.R.D. 661 (D.N.M. 2005)...........................................................................2

*Mulvey v. Chrysler Corp.*,

　106 F.R.D. 364 (D.R.I. 1985) .........................................................................16

*Odom v. Roberts*,

　337 F.R.D. 359 (N.D. Fla. 2020) .....................................................................20

*Overall v. Oakland Cnty.*,

　2022 WL 351068 (E.D. Mich. Feb. 4, 2022)................................... 10, 14, 15, 17

*Prosonic Corp. v. Stafford*,

　2008 WL 2323528 (S.D. Ohio June 2, 2008)....................................................18

*Rory v. Continental Ins. Co.*,

　473 Mich. 457 (2005) ....................................................................................13

*Serrano v. Cintas Corp.*,

　699 F.3d 884 (6th Cir. 2012) .......................................................................7, 11

*Shaker v. Champion Petfoods USA, Inc.*,

　No. 2:18-cv-13603 (E.D. Mich. Oct. 13, 2020)................................................21

*UWM v. America's Moneyline, Inc., et al.*,

　No. 2:22-cv-10228 (E.D. Mich.) ........................................................... 3, 4, 17

*UWM v. Kevron*,

　No. 2:22-cv-10395 (E.D. Mich.) ............................................................. *passim*

vi

## INDEX OF AUTHORITIES
## (continued)

**PAGE(S)**

*UWM v. Madison Atrina LLC d/b/a District Lending*,

    No. 2:24-cv-10216 (E.D. Mich.) ................................................................. *passim*

*Ward v. Am. Pizza Co.*,

    279 F.R.D. 451 (S.D. Ohio 2012) ....................................................................... 5

*Watson v. City of Cleveland*,

    202 F. App'x 844 (6th Cir. 2006) ..................................................................... 16

*Zurich Ins. Co. v. CCR & Co.*,

    226 Mich. App. 599 (1997) ....................................................................... 13, 15

**RULES**

Fed. R. Civ. P. 26 ........................................................................................ *passim*

## INTRODUCTION

The Court has asked for a fair and thorough exploration concerning the dispute over Mr. Ishbia's deposition; specifically, whether that deposition is justified and whether the Court should hold UWM in contempt for how it handled its opposition to that deposition. The facts reveal the answer to both questions is no.

Atlantic Trust seeks to depose the CEO of the country's largest mortgage lender purportedly to get "answers" to irrelevant questions regarding a contract the CEO did not draft, negotiate, or ever discuss with Atlantic Trust. The tactic of deposing top-level executives is suspect to begin with, and the undue burden it presents here places the deposition squarely at odds with Rule 26. Atlantic Trust either: (1) already has the information it seeks, (2) could more easily obtain that information from other depositions to which UWM has already agreed or has already completed, or (3) cannot obtain the information from Mr. Ishbia because he lacks personal knowledge. The heavy burden imposed by a CEO-level deposition is vastly disproportionate to the negligible information it could provide here.

As for the contempt issue, UWM regrets that its approach to this issue created any question of disrespect for the Court. Throughout, UWM acted in good faith in interpreting the resolution of the December teleconference, just as it did in invoking Rule 26's protections after further discovery and development of the record reinforced the propriety of relief. Moreover, UWM has attempted, more than once,

1

to find middle ground with Atlantic Trust that would provide it with all the information it claims to seek. UWM has even offered to produce Mr. Ishbia for a remote deposition on exactly the topics Atlantic Trust told the Court it wants to explore—but no others—and Atlantic Trust rebuffed that offer outright. UWM's efforts belie the notion that it has acted contemptuously, while Atlantic Trust's unbending rejection of any compromise supports the inference of harassment as the deposition's true purpose, and shows why UWM was, from the beginning, justified in opposing the deposition. The Court should deny Atlantic Trust's motion in full.

## BACKGROUND

### A.    Atlantic Trust breaches its agreement and UWM sues.

UWM is a wholesale mortgage lender that works exclusively with independent mortgage brokers and non-delegated correspondent lenders ("Broker Partners") nationwide to provide home mortgage products to borrowers. *See* ECF No. 13, PageID.80, ¶ 7. This distinguishes it from retail lenders, who deal directly with individual borrowers. *See id.*, PageID.80, ¶ 8.

Brokers who choose to work with UWM agree to the terms of a Wholesale Broker Agreement. *Id.*, PageID.81, ¶¶ 13–14; ECF Nos. 13-1, 13-2. In January 2018, Atlantic Trust entered into such an agreement with UWM. ECF No. 13, PageID.81, ¶ 13. The agreement's various amendment methods include posting an amendment to UWM's website. *Id.*, PageID.95–96, ¶ 20; ECF No. 13-1, PageID.99, § 7.08.

2

On March 4, 2021, UWM publicly announced its "All-In Initiative," stating it had decided to stop working with Broker Partners who chose to continue originating loans with two retail lenders specified in the Agreement (the "Select Retail Lenders"). ECF No. 13, PageID.83, ¶ 22. To further implement the All-In Initiative, UWM amended its Wholesale Broker Agreement to add an additional warranty and representation that a Broker Partner must make with each submitted loan that it will not submit a mortgage loan or mortgage loan application to a Select Retail Lender (the "All-In Addendum"). *Id.*, PageID.81, 83–84, ¶¶ 14-15, 24-25. A breach of this provision entitles UWM to liquidated damages. *Id.*, PageID.84, ¶ 26.

After the announcement, Atlantic Trust ceased submitting loans to UWM for a time, but later resumed doing so, subject to the All-In Addendum. *See id.*, PageID.85–87, ¶¶ 29-45. Despite becoming subject to the All-In-Addendum, Atlantic Trust submitted mortgage loans to at least one of the Select Retail Lenders while still submitting mortgage loans to UWM. *Id.*, PageID.87–88, ¶¶ 46-50. The submissions of loans to Select Retail Lenders constituted breaches of the Wholesale Broker Agreement, which are the subject of this and other cases involving different brokers. *See id.*; *UWM v. Kevron*, Case No. 2:22-cv-10395 (E.D. Mich.) ["*Kevron*"]; *UWM v. America's Moneyline, Inc., et al.*, Case No. 2:22-cv-10228 (E.D. Mich.) ["*America's Moneyline*"]; *UWM v. Madison Atrina LLC d/b/a District Lending*, Case No. 2:24-cv-10216 (E.D. Mich.) ["*District Lending*"]. Judge Michelson

3

entered judgment in UWM's favor in *Kevron* and found the broker liable to UWM in *America's Moneyline*; *District Lending* remains pending before her.

**B.     Atlantic Trust insists on deposing UWM's CEO.**

The defendant brokers in this case and in *District Lending* and *America's Moneyline* have the same counsel, who has made a concerted effort to force Mr. Ishbia's deposition. The issue of Mr. Ishbia's deposition was brought to the Court's attention in December. *See* Minute Entry of Dec. 11, 2025; Emails, ECF No. 37-8. Atlantic Trust's counsel explained that the reason for seeking Mr. Ishbia's deposition involved the decision to implement the All-In Addendum:

> As to Mr. Ishbia, he was personally involved in determining the nature, amount and structure of the Liquidated Damages provision which is a central issue in this case and forms the basis of UWM's claim for damages. In the related *Kevron* matter, UWM's Chief Marketing Officer [Sarah DeCiantis] confirmed under oath that Mr. Ishbia himself (*not* through a proxy or less senior executive) was present and directly and personally involved in the implementation and contours of the liquidated damages provision. Details of the implementation and construction of the liquidated damages claim is relevant in this matter because Atlantic Trust is fully entitled to challenge the reasonableness of the liquidated damages provision as well as its alleged nexus to actual injury suffered.

*Id.* at PageID.749. During the subsequent informal, off-the-record conference, the Court stated it would allow the deposition, conditioned on a narrow scope and a four-hour limit. Atlantic Trust's counsel then tried to use this Court's statements as leverage in the *District Lending* case, seeking to add *hours more* to Mr. Ishbia's proposed deposition to inquire about *other* issues. ECF No. 37-9.

### C.   Atlantic Trust rejects any compromise whatsoever.

Discovery progressed in the weeks that followed, and UWM produced numerous witnesses for deposition, while Atlantic Trust produced none.[1] Atlantic Trust did request March dates for deposing Mr. Ishbia but never sent a notice nor addressed the issue directly with UWM, which was patiently building a record. When the issue came to a head, UWM reiterated why it believed the deposition should not occur at all but nonetheless proposed various compromises.

First, UWM offered the deposition of its Chief Legal Officer, Adam Wolfe, who is the person most knowledgeable about the agreement at issue here, including the All-In Addendum's implementation and associated liquidated damages provision, which Mr. Wolfe was responsible for drafting. *See* ECF No. 37, PageID.652. This offer made sense: Atlantic Trust's purported reason for deposing Mr. Ishbia was precisely those issues. *See* ECF No. 37-8. But Atlantic Trust's counsel flatly rejected that offer. ECF No. 37-14.

Second, UWM *offered to produce Mr. Ishbia* for a narrow deposition on the very subjects Atlantic Trust has sought to justify the deposition. Ex. B, Emails of April 20–21. The topics included "the reasons for the All-In Initiative," the meeting

---

[1] At present, Atlantic Trust unjustifiably refuses to produce ***any*** witness unless and until Mr. Ishbia is deposed. Ex. A, Email of April 13; *see Ward v. Am. Pizza Co.*, 279 F.R.D. 451, 458 (S.D. Ohio 2012) ("the obligation to respond to discovery is independent of any discovery or disclosure obligation an opposing party may have").

about it, "the factual basis for the liquidated damages provision, and UWM's business with Atlantic Trust and/or Madison Atrina." *Id.* UWM invited Atlantic Trust to identify any other topics it believed were necessary and appropriate. UWM also offered a specific date[2] for a two-hour, Zoom deposition, and that the testimony could be used in both this case and *Madison Atrina. Id.* Atlantic Trust immediately rebuffed that offer, insisting every single term of it was unacceptable (but without articulating any reason why), and refusing to propose any counteroffer whatsoever.

## LEGAL STANDARD

Parties may seek discovery on matters that are "relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The proponent of a motion to compel discovery bears "the initial burden of showing that the discovery it requests is relevant and proportional to the needs of the case." *Encore Big Beaver, LLC v. Uncle Julio's of Fla., Inc.*, 2022 WL 15898128, at *2 (E.D. Mich. July 6, 2022).[3] A court "must limit" discovery if it determines that, *inter alia*, the discovery sought is not proportional, or "can be obtained from some other source that is more convenient, less burdensome, or less expensive," or there was "ample opportunity to obtain the information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C). Similarly, Rule

---

[2] UWM offered May 21 and held that date for two weeks, but it is no longer available. UWM is now holding May 28 in the event a deposition is ordered.

[3] Throughout, unless otherwise noted, all emphases and alterations are added, and all internal quotation marks, citations, and footnotes are omitted.

26(c) allows protective orders to prevent, limit, or regulate the timing of depositions "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." *Loomis v. Unum Grp. Corp.*, 338 F.R.D. 225, 229 (E.D. Tenn. 2021). Courts must balance a party's "right to discovery with the need to prevent fishing expeditions." *Serrano v. Cintas Corp.*, 699 F.3d 884, 902 (6th Cir. 2012).

In addition, "[c]ontempt is a measure of last resort, not first resort." *Gascho v. Global Fitness Holdings, LLC,* 875 F.3d 795, 799 (6th Cir. 2017). "[C]ourts must exercise the contempt sanction with caution and use the least possible power adequate to the end proposed." *Id*. Contempt sanctions are warranted only "when the moving party produces clear and convincing evidence that another party has violated a *definite and specific order* of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *Erickson's Flooring & Supply Co, Inc. v. Basic Coatings, Inc.*, 370 Fed. App'x 632, 636 (6th Cir. 2010). Any ambiguities about an order must be resolved in favor of the putative contemnor. *Grace v. Ctr. for Auto Safety*, 72 F.3d 1236, 1241 (6th Cir. 1996). "The burden of showing that an order is definite and specific is heavy." *Gascho*, 875 F.3d at 800.

## ARGUMENT

Rule 26 supports precluding Mr. Ishbia's deposition. Atlantic Trust's justification for the deposition is to press Mr. Ishbia on whether the All-In

Addendum was meant to penalize brokers. But this is a straightforward breach-of-contract case involving clear, unambiguous language. Indeed, the Court recently held, in dismissing Atlantic Trust's counterclaims, that the fully integrated Wholesale Broker Agreement precluded Atlantic Trust's reliance on alleged extrinsic terms or representations. *See* ECF No. 33, PageID.403–04.

As that ruling reinforces, the *reasons* for the contractual provisions are irrelevant; the relevant factual issues are just the provisions Atlantic Trust agreed to and whether and to what extent it breached those provisions. These are matters about which Mr. Ishbia has no personal knowledge, so his deposition would not lead to the discovery of anything relevant—though it would substantially and unnecessarily burden both him and UWM.

Deepening the disproportionality, that burden is avoidable through other discovery Atlantic Trust has eschewed. Atlantic Trust says it wants to ask about a particular meeting. ECF No. 37-8. UWM's Chief Marketing Officer, Sarah DeCiantis, was present at that meeting, has already testified about it as corporate representative in the *Kevron* matter, and will be deposed again in this case. UWM has also offered to produce its Chief Legal Officer, Adam Wolfe, who attended the same meeting and is the person most knowledgeable about the agreement at issue, the All-In Addendum's implementation, and the associated liquidated damages provision, which he was responsible for drafting. Thus, if Atlantic Trust's desire is

8

truly to explore these issues—despite their irrelevance—it has had ample opportunity through more appropriate means. There is no need to subject UWM's CEO to questions Atlantic Trust either has asked or could have asked many others.

As for Atlantic Trust's desire to inquire about specific brokers, those are issues about which Mr. Ishbia, as CEO, would have *no* personal knowledge, as supported by both declaration and common sense. Rather, it appears that this deposition, if allowed, would ultimately just subject Mr. Ishbia to an open-ended barrage of questioning that appears calculated primarily to annoy and harass. Indeed, counsel's insistence in *District Lending* on getting several *additional* hours of questioning (where the only different issue would be that one broker) heightens the inference that this deposition is not sought for legitimate reasons.

## I.     The Court should deny the request to depose Mr. Ishbia.

### A.     Deposing Mr. Ishbia will unduly burden him and UWM.

Rule 26 takes account of the harm to would-be deponents in more than one way. Under subrule (b)(2)(C), "the court *must* limit" discovery when it is "unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." And under subrule (c)(1), a protective order is justified to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense."

Under those standards, there is ample reason to preclude Mr. Ishbia's

9

deposition. He lacks personal knowledge about Atlantic Trust, its contracting with UWM, or the loans it submitted. Ex. C, Wolfe Decl. His testimony about the All-In Addendum meeting would be duplicative of Ms. DeCiantis's past *and* forthcoming testimony. Meanwhile, his duties as CEO are demanding. *Id.* Pulling him away from those duties to prepare and sit for a deposition would work not just a burden on him, but a burden and expense on UWM, too. *Id.*; *see also Overall v. Oakland Cnty.*, 2022 WL 351068, at *2 (E.D. Mich. Feb. 4, 2022) (recognizing burden imposed on "high-ranking officials" by "the time that is required to prepare for depositions").

While UWM recognizes that this Court would limit the length of Mr. Ishbia's deposition to four hours, this still would constitute an undue burden. *See Fox v. Amazon.com, Inc.*, 2017 WL 9476870, at *2 (M.D. Tenn. Sept. 21, 2017) ("even with [a one-hour] time limitation on his testimony . . . the burden and inconvenience on Amazon and Mr. Bezos" did not justify the latter's deposition); *Ceiva Logic, Inc. v. Amazon.com, Inc.*, 2021 WL 12349625, at *9 (C.D. Cal. Nov. 10, 2021) ("[E]ven assuming Mr. Bezos['s] . . . knowledge is unique, Plaintiff has not established that his knowledge on this topic would be relevant to any issue in this case").

Meanwhile, protective orders preventing CEO depositions have been granted in this district on comparable evidentiary showings. *See, e.g.*, *Brian J. Lyngaas, D.D.S., P.L.L.C. v. Solstice Benefits, Inc.*, 2023 WL 6302998, at *3–5 (E.D. Mich. Sept. 27, 2023) (defendant supplied affidavit denying CEO's unique personal

knowledge and showed that plaintiff had not first deposed more knowledgeable persons). There is no basis for believing Mr. Ishbia has any knowledge on some of the purported deposition subjects, and what limited knowledge he might possess on the rest is irrelevant and duplicative of other witnesses' knowledge.

**B.      The topics Atlantic Trust intends to explore are irrelevant.**

The burden imposed by Mr. Ishbia's deposition is particularly pronounced because it pursues irrelevant information. *See Tribula*, 2009 WL 87269, at *1 ("showing that the proposed discovery is irrelevant can satisfy the 'good cause' requirement of Rule 26(c)"). "[D]iscovery has limits and these limits grow more formidable as the showing of need decreases. Thus, even very slight inconvenience may be unreasonable if there is no occasion for the inquiry and it cannot benefit the party making it." *Serrano*, 699 F.3d at 901; *see also Haydar v. Amazon Corp., LLC*, 2021 WL 4206279, at *7 (6th Cir. Sept. 16, 2021) (prohibiting deposition of CEO's assistant was proper given its "the minimal probative value").

The given reason for deposing Mr. Ishbia is Atlantic Trust's belief that "[d]etails of the implementation and construction of the liquidated damages claim is [sic] relevant in this matter because Atlantic Trust is fully entitled to challenge the reasonableness of the liquidated damages provision as well as its alleged nexus to actual injury suffered." ECF No. 37-8. That is irrelevant territory for at least two reasons.

11

**There is no ambiguity to resolve.** This is a breach-of-contract case that involves a fully integrated agreement. *See* ECF Nos. 13, 13-2, PageID.118. Atlantic Trust has not made (nor could it make) any argument that the All-In Addendum is ambiguous. *See* ECF No. 13-2, PageID.111, 121–22, §§ 3.03(x), 7.30. So, testimony about its meaning is irrelevant and inadmissible. *See Hemlock Semiconductor Corp. v. Kyocera Corp.*, 2016 WL 1660862, at *4 (E.D. Mich. Apr. 27, 2016) ("witness interpretations of unambiguous contractual provisions are irrelevant"). Because discovery is limited to matters "relevant to any party's claim or defense," Fed. R. Civ. P. 26(b)(1), such irrelevant testimony is not discoverable.

**UWM's reason for adopting the provision is irrelevant.** UWM's corporate representative was previously thoroughly questioned about the origins and basis of the All-In Addendum and liquidated damages provisions. *See Kevron*, ECF No. 41-8, PageID.1209–10, 1327–33. That topic is the main colorable basis for Atlantic Trust seeking Mr. Ishbia's deposition. *See* ECF No. 37-8. But, far from showing the need to depose Mr. Ishbia, the prior testimony demonstrates the opposite. UWM's representative testified that: (1) legal counsel determined the liquidated damages amounts, (2) the decision to implement the All-In Addendum, including the damages amounts, was made at a single meeting which the corporate representative personally attended with several others, and (3) UWM's representative was "fully prepared" and had "full authority" to speak on behalf of UWM about the decision and

12

"represent[ed] all of the information available to UWM." *Kevron*, ECF No. 41-8, PageID.1205–06, 1327, 1332, 12:21–13:23, 134:2-23, 139:9-11.[4]

Again, this is a contract case. A party's reason for requesting particular contractual obligations is irrelevant. *See Zurich Ins. Co. v. CCR & Co.*, 226 Mich. App. 599, 604, 576 N.W.2d 392, 395 (1997) ("It is beyond doubt that the actual mental processes of the contracting parties are wholly irrelevant to the construction of contractual terms."); *Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 469, 703 N.W.2d 23, 30 n.21 (2005) ("[T]he intent of the contracting parties is best discerned by the language actually used in the contract . . . .").

The same conclusion applies to any further inquiry into how the liquidated damages amounts were determined. Under Michigan law, liquidated damages are measured by an *objective* standard of reasonableness. *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017). The testimony sought here about UWM's *subjective* reasoning is therefore irrelevant. *See id.* Moreover, Judge Michelson's ruling in *Kevron* regarding the exact same contract language settled the question of enforceability of the liquidated damages provision with no need for Mr. Ishbia's deposition. *Kevron*, ECF No. 55,

---

[4] One avenue UWM used to announce the All-In Initiative was a Facebook Live event. *Kevron*, ECF No. 41-8, PageID.1232. Mr. Ishbia delivered that announcement as a spokesperson, but that does not mean he has unique knowledge of the details of the contractual provisions. *Id.* at 1210; Ex. C.

PageID.1691. This case should be no different.

Meanwhile, if getting at the reasons for these provisions were the true reason for seeking Mr. Ishbia's deposition, Atlantic Trust would get far more value from deposing UWM's Chief Legal Officer, Adam Wolfe, who is the person most knowledgeable about the agreement at issue in this case, including the implementation of the All-In Addendum and associated liquidated damages provision. That Atlantic Trust summarily rejected that option and insisted on Mr. Ishbia's deposition undermines its contentions about relevance and need.

**C.     The information to be sought from Mr. Ishbia can be—or already has been—obtained through less burdensome means.**

The information sought from Mr. Ishbia also can be (or already has been) more easily obtained through other means. That, too, weighs against compelling his deposition. *See* Fed. R. Civ. P. 26(b)(2)(c)(i) (discovery must be limited where it "can be obtained from some other source that is more convenient, less burdensome, or less expensive"); *Overall*, 2022 WL 351068, at *5 ("The Court may refuse to allow the deposition of the apex employee before the party makes [an] effort to depose lower-level employees who are more closely tied to the issues to be addressed."); *McCracken v. Ford Motor Co.*, 2009 WL 10700999, at *1 (E.D. Pa. Apr. 21, 2009) (deposition of Ford's CEO precluded where there was "no indication" he had "any direct knowledge of the facts at issue" or "that the information sought . . . cannot be obtained more easily through other less obtrusive discovery").

14

It is true, as the Court noted, that plaintiffs must endure some burden in pursuing litigation. But Rule 26(c) does not extend its protections only to defendants, and plaintiffs are still entitled to be shielded from harassment and oppression in the guise of discovery. Here, significantly less burdensome and more appropriate alternatives are available. UWM's corporate representative was already thoroughly questioned about the All-In Addendum and will be deposed again in this case. *See Kevron*, ECF No. 41-8, PageID.1209–10, 1327–33. Moreover, Mr. Wolfe—whose deposition was rejected—has further confirmed UWM's prior testimony. Ex. C.

The facts about the contract provisions are hardly surprising: a liquidated damages provision is a discrete legal mechanism within a legal instrument. It is the domain of lawyers, and Mr. Ishbia is not a lawyer. Like other large companies, UWM legal staff proposes and prepares contract terms. *Id.* Even if a contracting party's intent were relevant, *Zurich*, 576 N.W.2d at 395, Mr. Ishbia's personal testimony cannot be more probative than the actual contracting party's (UWM) testimony, and that of the agreement's chief architect (Mr. Wolfe). That other UWM personnel deposed thus far have lacked specific knowledge about this discrete contract provision reflects only that they were not the right people to ask; but UWM has already told Atlantic who is (DeCiantis and Wolfe).

If any doubt remains, it should fall to Atlantic Trust to make a genuine, non-speculative showing why Mr. Ishbia is expected to have unique and relevant

15

knowledge that cannot be obtained in a less burdensome fashion. That is precisely what was ordered in *Overall*:

> Thus, the Court will **GRANT** the protective order. In the event that Plaintiff takes the depositions of, or propound[s] other discovery to, those actually involved in the development and implementation of the relevant issues *and* Plaintiff makes a showing that she made reasonable efforts to obtain the needed evidence but cannot do so except via a deposition of [the contested deponent], the Court will consider lifting the protective order at that time.

2022 WL 351068, at *5 (emphasis in original); *see also Lyngaas*, 2023 WL 6302998, at *5 (precluding CEO's deposition "until Plaintiff has reasonably and in good faith pursued discovery from other sources" and emphasizing that "[t]he Court does not look favorably upon efforts to harass and annoy").

The Court should require Atlantic Trust to first exhaust the various, significantly less burdensome avenues at its disposal, such as deposing Ms. DeCiantis and/or Mr. Wolfe. If other sources can provide the purportedly necessary information, there is no arguable basis for seeking it from Mr. Ishbia. *See Watson v. City of Cleveland*, 202 F. App'x 844, 852 (6th Cir. 2006) (deposition of mayor not permitted when information could be obtained from other members of the mayoral administration and through less burdensome forms of discovery); *Mulvey v. Chrysler Corp.*, 106 F.R.D. 364, 366 (D.R.I. 1985) (preventing deposition of Chrysler CEO and finding that "an orderly discovery process will be best served by resorting to interrogatories at this time, without prejudice to a subsequent oral deposition if the

16

answers to the interrogatories so warrant"). Thereafter, if Atlantic Trust still contends Mr. Ishbia's deposition would provide—and is the only means of obtaining—truly relevant information, it can attempt making a showing to justify that contention. *See Overall*, 2022 WL 351068, at *5.

> **D.    Mr. Ishbia has no personal knowledge of broker-specific issues about which Atlantic Trust intends to question him.**

The initial stated reason for deposing Mr. Ishbia was his presence at the meeting. ECF No. 37-8. After the December 12 call, however, Atlantic Trust's counsel expressed the intention to question Mr. Ishbia about a variety of other cases, involving other brokers. ECF No. 37-9. That development provided new and independent reasons to prevent the deposition.

As noted, Atlantic Trust is not the only broker to have breached the All-In Addendum. The broker in *Kevron*, for example, has been adjudicated to have done so. *See* Case No. 2:22-cv-10395, Order, ECF No. 55, PageID.1691. Similar cases are also pending. *See, e.g.*, *District Lending* and *America's Moneyline*. These cases share the common nucleus of brokers breaching the All-In Addendum but are otherwise factually specific to the defendant brokers. Indeed, the motion practice in both *Kevron* and here have shown how the key legal issues turn on when and how the brokers agreed to the All-In Addendum and when they submitted loans to UWM and the Select Retail Lenders. *See generally* ECF No. 19; *Kevron*, ECF No. 55.

Multiple sworn statements confirm what common sense suggests: Mr. Ishbia, as CEO, would not have personal knowledge about particular brokers and their loan submissions. Ex. C; Elherchi Dep., ECF No. 37-20, PageID.978. That should end the push for his deposition on those topics. *See Elvis Presley Enters., Inc. v. Elvisly Yours, Inc.*, 936 F.2d 889, 894 (6th Cir. 1991) (affidavit stated deponent "had no knowledge" of the topics to be explored); *Mitchell v. Arnold*, 2023 WL 7711478, at *4 (W.D. Ky. Nov. 15, 2023) (precluding deposition of former mayor based on "an affidavit stating that he has no personal knowledge of the events" at issue). Atlantic Trust's plan to delve into these areas therefore does not justify the substantial undue burden of the deposition, much less repeating it or *lengthening* that deposition *by hours*, as Atlantic Trust's counsel has sought to do in *District Lending*.

Moreover, Atlantic Trust already had the opportunity to question a UWM witness with subject-matter knowledge of this topic. UWM employee Heather Demy's role included gathering data on brokers and their loan closings—the very subject Atlantic Trust wants extra time to explore with Mr. Ishbia. Her testimony gave no basis indicating Mr. Ishbia would have unique knowledge in that area. The same is true of the account executives' (Elherchi and Drury) depositions.

All of this reinforces why this deposition request deserves heightened scrutiny: once the deposition starts, the door opens to an easy avenue for annoying or harassing a high-level executive. *Prosonic Corp. v. Stafford*, 2008 WL 2323528,

18

at *4 (S.D. Ohio June 2, 2008). ("As a general matter, of course, a witness at a deposition is required to answer even irrelevant questions"); *see also Banks v. Off. of Senate Sergeant-at-Arms*, 222 F.R.D. 7, 18 (D.D.C. 2004) (recognizing the same as a "burden" to "be endured" even though it may "waste[] everyone's time").

Although circuits have varying approaches to high-level depositions, the overarching concern "is that high level executives are vulnerable to numerous, repetitive, harassing, and abusive depositions, and therefore need some measure of protection from the courts." *In re Bridgestone/Firestone, Inc., Tires Prods. Liab. Litig.*, 205 F.R.D. 535, 536 (S.D. Ind. 2002). This concern is particularly acute where Atlantic Trust's counsel also represents Rocket Mortgage, setting the stage for a proxy deposition of a competitor instead of one tied to the merits of this case. *See* ECF 37-5, PageID.729 (Atlantic Trust's initial disclosures, listing "Agents and representatives of Rocket Mortgage, c/o Atlantic Trust's counsel). Rule 26 does not countenance questioning Mr. Ishbia on these topics, nor any other not-yet-disclosed ones, where it is apparent at the outset that he has no personal knowledge to provide.

### E. Atlantic Trust's refusal to discuss any reasonable limits reinforces the inference of harassment rather than legitimate discovery.

Any veneer of legitimacy that might remain to Atlantic Trust's given reasons for deposing Mr. Ishbia's has now faded. Atlantic Trust told the Court that Mr. Ishbia's testimony was essential to determine how the Liquidated Damages provision was devised and the "details of [its] implementation and construction."

19

ECF No. 37-8, PageID.749. In an effort to resolve the dispute, UWM's compromise offer was a two-hour deposition over Zoom on *those very topics* (and others to be agreed in advance, if necessary), while preventing detours into other areas. Ex. B. Atlantic Trust responded that such conditions were categorically "unreasonable," that the deposition *had* to occur in person and, unless UWM agreed to a deposition longer than four hours, Mr. Ishbia's deposition would be pursued in other cases, too. *Id*. Meanwhile, Atlantic Trust has simultaneously refused to offer *any* witness for deposition in this case until it has deposed Mr. Ishbia. Ex. A.

Atlantic Trust's conduct is inconsistent with legitimate discovery. Taking a deposition remotely is not only fairly commonplace, but has specifically been used to mitigate the burden of deposing a large corporation's CEO. *See, e.g.*, *Eight Mile Style, LLC v. Spotify USA Inc.*, 2022 WL 20936608, at *7 (M.D. Tenn. Mar. 31, 2022) ("to minimize the likely annoyance to [Spotify's CEO] and the disruption of his schedule, Plaintiffs may take [his deposition] by remote means only for a maximum of three hours"). Hard time limits and pre-determined topic lists are also used. *See, e.g.*, *Morales v. E.D. Etnyre & Co.*, 229 F.R.D. 661, 663 (D.N.M. 2005) (deposition limited to one hour and topics listed by the court that the deposing party had identified); *Odom v. Roberts*, 337 F.R.D. 359, 366 (N.D. Fla. 2020) (deposition limited to two hours to ensure that the deponent sheriff was "not subjected to harassment"). That Atlantic Trust was offered the opportunity to depose Mr. Ishbia

20

on a date certain, about every topic it has used to justify the deposition, but rejected the offer outright strongly indicates that the deposition's true purpose is to harass Mr. Ishbia and deter UWM from bringing meritorious claims under its contracts.

## II.    The Court should not hold UWM in contempt.

UWM regrets that these circumstances gave rise to any doubt regarding UWM's respect for this Court. Nothing could be farther from the truth. But, as explained below, UWM genuinely believed at all times that it was acting in good faith and proceeding as permitted by the Federal Rules of Civil Procedure, this Court's practice guidelines, and the scheduling order then in effect. Notably, Atlantic Trust's argument does not mention, much less engage with, the stringent standards the Sixth Circuit has mandated be met before a contempt order can issue.

UWM realizes, at this juncture, that the Court views its December 15 statements as an order. UWM had, however, interpreted the Court's statements as informally indicating how it would resolve a discovery issue without the need for formal motion practice. Such guidance can be useful to parties in avoiding the delay and expense of full-blown discovery fights, as everyone gets a good idea what the outcome likely would be. Yet there are important, due-process reasons not to conflate informal resolutions with orders.[5]

---

[5] UWM's interpretation of the Court's instructions as an informal, pre-motion resolution rather than an order is consistent with how most courts in this district treat

Courts speak through their orders. *Glover v. Johnson*, 931 F. Supp. 1360, 1375 (E.D. Mich. 1996). But an order is typically issued in writing and entered on the docket, after an on-the-record motion and hearing. None of these things occurred here. The discovery dispute was raised via email. Not only was no motion filed but, per this Court's protocol, such a filing is prohibited without leave. The conference that followed was conducted off the record, did not result in a written order, and did not even result in a docket notation. Under such circumstances, it is impossible to find the "definite and specific order" requirement met. *See Erickson's Flooring*, 370 Fed. App'x at 636; *Grace*, 72 F.3d at 1241; *see also Gascho*, 875 F.3d at 800 ("The burden of showing that an order is definite and specific is heavy."). Atlantic Trust does not even engage with this legal requirement, much less show it was met.

---

similar early intervention in discovery disputes. *See* Ex. D, E.D. Mich. Informal Discovery Protocols. Each protocol recognizes that motion practice may still be necessary after an informal conference, which is how UWM also understood this Court's similarly written protocol. While UWM recognizes, of course, that this Court is not bound by other courts' protocols, that backdrop is nevertheless informative in assessing whether UWM acted in misunderstanding of this Court's intent rather than in contempt.

Ironically, at an April 24, 2026 status conference that Defendant's counsel here sought in the related *District Lending* case regarding the Ishbia deposition issue, after Judge Michelson indicated that she would likely follow this Court's resolution of the issue, counsel acknowledged what he called her "preliminary ruling" and requested assurance he could seek a formal, on-the-record ruling in the future if needed. Prior to this Court's order on April 9, 2026, this was exactly UWM's position regarding this Court's December 15 conference. But, when the shoe is on UWM's foot, Atlantic Trust demands contempt sanctions.

22

Indeed, when defendant's counsel later acknowledged via telephone that the Court had placed boundaries on the scope of a deposition of Mr. Ishbia, all he could say about what the boundaries were was, "They're in my notes." Neither UWM nor anyone else has access to an opposing attorney's notes, however, and that such off-limits materials are proffered as the memorialization of what the Court stated illustrates the problem of construing these circumstances as resulting in an order.[6]

In addition, an order is eventually subject to appeal. While most discovery disputes do not make it to appellate courts, orders for apex depositions of chief executive officers are an exception. Corporate litigants have strong interests in enforcing relevance, burden, and proportionality limitations to ensure that their top executives are not subjected to deposition unless necessary. Otherwise, the threat of apex deposition can be wielded to deter a company from litigating its positions vigorously. But a reviewing court would have nothing to evaluate here because there is no written record of the Court's instructions, much less its reasoning. The Sixth Circuit would not even be able to find a record establishing such order was ever issued. That the circumstances are effectively unreviewable is another reason not to

---

[6] Atlantic Trust suggests UWM's production of Mr. Glass for deposition belies UWM's understanding of the December 15 conference. ECF No. 37, PageID.665. But that is a non sequitur. There is no inconsistency in taking the Court's guidance on one issue and electing not to pursue formal relief that presumably would not be granted, while proceeding to pursue a formal relief on a similar but more critical issue.

23

understand the Court's December 15 statements as an order.

Even if the Court's statements are construed as an order, however, UWM did not violate it. UWM is unaware of any deadline being set during the December 15 conference regarding *when* Mr. Ishbia must be produced for deposition. Atlantic Trust has not suggested otherwise, much less identified such a deadline. Rather, UWM reasonably understood that the then-operative scheduling order's discovery deadline would govern timing. That deadline was still weeks away when UWM stated it intended to formally seek a protective order.

There is nothing improper, much less contemptuous, in completing less intrusive discovery and developing a record before producing a deponent for whom no separate deadline was imposed. To the contrary, doing so made a great deal of sense: It is not uncommon for a party to ask for certain depositions but ultimately not take them. UWM believed the testimony of witnesses who were directly involved in the matters at hand, and whose production was far less disruptive, might well demonstrate grounds to revisit the propriety of deposing Mr. Ishbia. In addition, other intervening events often change the shape of a case. Here, the Court's granting of UWM's motion to dismiss Atlantic Trust's counterclaims, ECF No. 33, significantly narrowed the scope of this dispute and reinforced UWM's position that there was good cause to limit discovery of no apparent value in this contract case.

24

Moreover, UWM did not refuse to produce Mr. Ishbia. It expressly stated that it wanted to file a motion for protective order. While such relief might not be granted, the right to seek it is expressly provided under the Civil Rules. *See* Fed. R. Civ. P. 26(c) ("A party or any person from whom discovery is sought *may move* for a protective order"). Indeed, even a written, docketed order is non-final and the Court always has the power to modify its own orders. See *Dietz v. Bouldin*, 579 U.S. 40, 46 (2016). Atlantic Trust has not suggested that the December 15 instructions were issued "with prejudice" to preclude UWM from ever seeking to formally raise its position. And, as noted, the further development of the record gave compelling reasons for the Court to revisit its earlier views. UWM again apologizes for causing even a question of disrespect. But a finding contempt or issuing sanctions under these circumstances is not warranted.

## CONCLUSION

Deposing UWM's CEO, Mr. Ishbia, would be unduly burdensome and unjustified. Regardless, under a fair and thorough review of the facts, a finding of contempt would be unjustified. Atlantic Trust's motion should be denied in full.

Respectfully submitted,

By: */s/* Roger P. Meyers (P73255)
**BUSH SEYFERTH PLLC**
100 W. Big Beaver Road, Suite 400
Troy, MI 48084
(248) 822-7800 | meyers@bsplaw.com

Dated: May 7, 2026        *Attorneys for United Wholesale Mortgage, LLC*

25