UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| **UNITED WHOLESALE MORTGAGE, LLC,** <br><br> Plaintiff, <br><br> vs. <br><br> **ATLANTIC TRUST MORTGAGE CORPORATION,** <br><br> Defendant. | **2:24-CV-10216-TGB-DRG** <br><br> HON. TERRENCE G. BERG <br><br> **ORDER HOLDING PLAINTIFF IN CONTEMPT AND DIRECTING PLAINTIFF TO PRODUCE MATHEW ISHBIA FOR DEPOSITION (ECF NO. 37)** |

This is a discovery dispute in a case brought by Plaintiff United Wholesale Mortgage, LLC ("UWM")—a wholesale mortgage lender—against Atlantic Trust Mortgage Corporation ("Atlantic Trust")—an independent mortgage broker that had brokered mortgage loans from UWM to borrowers. UWM sued Atlantic Trust for violating an agreement according to which Atlantic Trust was allegedly required to work exclusively with UWM.

Although the Court through its Practice Guidelines seeks to resolve discovery disputes efficiently by addressing them immediately with the parties through telephonic conferences—ideally to avoid protracted, often trivial and wasteful motions practice—UWM's failure to abide by the Court's order issued in one of those telephonic conferences has thwarted that laudable goal. And instead counsel and the Court have now spent

valuable time and resources, and the clients a lot of money, in fighting over a matter that should not reasonably be in issue.

The discovery dispute came before the Court on December 12, 2025, when, in accord with this Court's Practice Guidelines, a telephonic conference was held to address the matter and the Court ordered, among other things, that UWM must produce its Chief Executive Officer, Mr. Mathew Ishbia, for a deposition to answer questions about the lawsuit his company initiated. Three months later, the Court learned that this order had still not been carried out. In March of 2026, Atlantic Trust reported that UWM was indicating it would not produce Mr. Ishbia for deposition. After reviewing the parties' email submissions on the matter, the Court issued a text-only order on March 25, 2026 reaffirming that UWM must produce Mr. Ishbia for deposition "[a]s stated during the Status Conference held on December 12, 2025." The next day, UWM filed an "Emergency Motion for Reconsideration of the March 25, 2026 Text Only Order and Motion *Instanter* for Leave to File Motion for Protective Order." ECF No. 35. This motion sought to undo the order requiring Mr. Ishbia's deposition, and advanced legal arguments opposing the Court's order. From the Court's perspective, this appeared to be a contumacious stratagem because by then the Court had twice ordered UWM to conduct the deposition. Nevertheless, the Court carefully considered the motion and on April 9, 2026, because the motion violated the Local Rules, the Court struck the motion. In order to allow the issue to be fully briefed,

however, the Court ordered Atlantic Trust to file a motion addressing (1) whether the deposition of Mr. Ishbia as previously ordered is justified by the Federal Rules of Civil Procedure, relevant case law, and the factual developments of the case, and (2) whether UWM should be held in contempt for not complying with the Court's December 12, 2025 order to allow Mr. Ishbia's deposition. ECF No. 36.

Atlantic Trust's Motion pursuant to the Court's April 9, 2026 Order is now before the Court addressing those two issues. ECF No. 37. UWM has filed a response in opposition to Atlantic Trust's motion, ECF No. 38, and Atlantic Trust has filed a reply. ECF No. 39. The Court has carefully considered the parties' submissions and does not believe that oral argument will aid in its disposition of this motion; therefore, it is dispensing with oral argument pursuant to Eastern District of Michigan Local Rule 7.1(f)(2). ECF No. 40.

For the reasons that follow, Atlantic Trust's motion will be **GRANTED**.

## I.   BACKGROUND

The facts giving rise to the underlying lawsuit date back to 2021, when UWM, a wholesale mortgage broker, issued an "ultimatum" to its mortgage broker partners, including Atlantic Trust, through its "All-In Initiative" to require that the independent mortgage brokers stop working with two of UWM's competitors as a condition of continuing to work with it. A broker partner's submission of a mortgage loan to one of

the prohibited retail lenders would constitute a breach of the broker's Wholesale Broker Agreement with UWM, requiring the broker partner to pay liquidated damages to UWM.

Atlantic Trust ceased doing business with UWM after announcement of the ultimatum until, relying on UWM's alleged promise of a 60-day trial period during which Atlantic Trust could submit loans to UWM and also conduct business with other lenders, it submitted loans to UWM as well as its competitors. UWM then sued Atlantic Trust for breach of their Amended Wholesale Broker Agreement, seeking "at least $355,000 in liquidated damages," and other compensatory damages, attorney fees, costs, and other expenses. *See* ECF No. 13.

On May 5, 2025, Atlantic Trust identified UWM's CEO, Mathew Ishbia, as a person having relevant information and indicated its intent to depose Mr. Ishbia based on his "direct personal involvement in establishing the ['All-In' initiative] and liquidated damages provision," among other things. *See* ECF No. 24, PageID.311. Atlantic Trust again identified Mr. Ishbia as a person likely to have relevant information in its initial disclosures served on UWM on May 23, 2025. *See* ECF 37-5, PageID.728.

On July 15, 2025, Atlantic Trust requested the deposition of Mr. Ishbia, among others at UWM. ECF No. 37-6, PageID.735–36. When UWM failed to provide any dates for the requested depositions, Atlantic

4

Trust sent another request on August 14, 2025. *Id.* PageID.735. Atlantic Trust then sent a third request on October 28, 2025. *Id.* PageID.734.

Atlantic Trust states that on November 10, 2025, UWM asserted for the first time that it would not agree to produce Mr. Ishbia for a deposition in this case. Accordingly, on November 25, 2025, Atlantic Trust again requested dates for the deponents UWM agreed to produce and stated that it would be requesting a conference with the Court to address UWM's refusal to produce Mr. Ishbia and Mr. Justin Glass, Chief Digital Officer, for deposition. ECF No. 37-7, PageID.738. Atlantic Trust requested the conference with this Court on December 8, 2025, pursuant to this Court's "Discovery" Practice Guidelines. ECF No. 37-8, PageID.753. The Court scheduled a date and time for the status conference and requested that the parties provide the Court with more information regarding the dispute in advance of the status conference. *Id.* PageID.750–51. The parties submitted to the Court detailed statements by email outlining their positions regarding the discovery dispute, with UWM supporting its position with citations to relevant authorities in the case law. *Id.* PageID.748–50. Relevant here, Atlantic Trust asserted that it sought to depose Mr. Ishbia about his personal knowledge and involvement in determining the nature, amount, and structure of the liquidated damages provision, and that the reasonableness of that provision and its alleged nexus to any alleged injury is relevant in this matter. *Id.*

The Court held the telephonic status conference on December 12, 2025, and heard oral argument from both parties regarding the requested depositions. The Court carefully considered the parties' arguments and then ordered UWM to produce Mr. Ishbia and Mr. Glass for deposition. The Court noted that UWM initiated this lawsuit and that Atlantic Trust had presented sufficient facts to show that Mr. Ishbia was personally involved in the implementation and contours of UWM's "All-In Addendum," including the Addendum's liquidated damages provision, and that Mr. Glass was involved in the decision to offer Atlantic Trust a 60-day trial period, and thus their depositions were relevant and permissible under the Rules. However, in an effort to avoid undue burden, abuse, and expense on the deponents, the Court limited each of the depositions to no more than four hours in length. Both parties stated that they understood the Court's order and that they would comply.[1]

---

[1]    In a different case filed by UWM in this district, in which UWM brought a breach of contract claim against another mortgage broker, *United Wholesale Mortgage LLC v. Madison Atrina, LLC d/b/a District Lending*, Case No. 2:23-cv-13176, Atlantic Trust asserts that the Honorable Laurie J. Michelson held a status conference on December 15, 2025, just days after this Court's December 12, 2025 conference, and that Judge Michelson was advised at that time of this Court's order regarding the deposition of Mr. Ishbia. ECF No. 37, PageID.649–50. Atlantic Trust contends that UWM never indicated to Judge Michelson that it intended to disregard this Court's order and not produce Mr. Ishbia for deposition in this case. *Id.* Atlantic Trust states that Judge Michelson directed that the deposition of Mr. Ishbia in this case be conducted first, and that if District Lending needed additional time to question Mr. Ishbia after that deposition, it could make such a request to her. *Id.* UWM does not

UWM subsequently produced Mr. Glass for deposition, as ordered by the Court.

On December 18, 2025, Atlantic Trust requested dates for the deposition of Mr. Ishbia, among others, as ordered by the Court, suggesting four separate dates in March for Mr. Ishbia's deposition. ECF No. 37-10. When UWM did not provide a date for Mr. Ishbia's deposition, Atlantic Trust repeated its request for a date for Mr. Ishbia's deposition on January 12, 2026, and again on January 23, 2026, and again on January 30, 2026. ECF No. 37-11, PageID.768–72. UWM continued to fail to provide any available dates for Mr. Ishbia's deposition, or even to acknowledge Atlantic Trust's requests for that deposition, and Atlantic Trust renewed its request for a date for Mr. Ishbia's deposition on February 12, 2026, February 20, 2026, and February 25, 2026. *Id.* PageID.763–68.

On March 17, 2026, Atlantic Trust again contacted UWM requesting a date for the deposition of Mr. Ishbia. *Id.* PageID.763. Atlantic Trust indicated that, given the fast-approaching discovery deadline of March 31, 2026, the parties should consider dates in Mid-April through May and stated that it would be requesting a conference with the Court to address this issue. *Id.* UWM responded by email that same day and stated, *for the first time* since the Court ordered the

address or dispute this account of the status conference before Judge Michelson.

deposition of Mr. Ishbia, that it would be filing a motion for protective order "[w]ith regard to the deposition of Mat Ishbia." *Id*. PageID.762.

The parties held a meet-and-confer regarding this issue on March 24, 2026, and UWM proposed producing UWM's chief legal counsel, Adam Wolfe, in place of Mr. Ishbia. Atlantic Trust rejected that proposal, stating that Mr. Wolfe is not an adequate or appropriate substitute for the deposition of Mr. Ishbia given Mr. Ishbia's direct personal involvement in the matters at issue. ECF Nos. 37-14. Atlantic Trust points out that Mr. Wolfe was not even identified by UWM as a person who might have relevant knowledge as to the claims and defenses in this case, and that UWM made clear that it would not waive any attorney-client privilege as to Mr. Wolfe's testimony and has not represented that Mr. Wolfe has any non-privileged information about the reasoning for UWM's adoption of the liquidated damages provision or of any alleged nexus with any actual injury. ECF No. 37, PageID.652.

On March 25, 2026, Atlantic Trust contacted the Court requesting another telephone conference to resolve this issue. ECF No. 37-15, PageID.849–50. In advance of the conference, UWM contended in an email to the Court that Mr. Ishbia's deposition "would provide no relevant information" regarding the issues in this case and "would be exceptionally burdensome" and "appears to be sought solely for the purpose of harassment," and that there are "compelling reasons" for UWM to brief this issue. *Id*. PageID.847–48. Atlantic Trust responded,

also by email, that Mr. Ishbia has "unique, direct personal knowledge related to the claim and defenses in this case" and that he was personally present at the meeting where the decisions on the "All-In" initiative and its liquidated damages provision were made, and likely actually made the final decision. *Id.* PageID.846.

The Court initially scheduled a telephonic status conference to address the issue of Mr. Ishbia's deposition for a second time, but then, based on the parties' email submissions to the Court, and the Court's clear order at the December 12, 2025 status conference, entered a Text-Only Order stating:

> As stated during the Status Conference held on December 12, 2025, Plaintiff is **ORDERED** to present CEO Mathew Ishbia for a deposition, which shall not exceed 4 hours in duration, **within the next 30 days. Discovery is hereby EXTENDED to close on April 30, 2026, and Dispositive Motions Cut-off Date is EXTENDED until May 15, 2026.** Status Conference set for 3/2[6]/26 is hereby CANCELLED.

ECF No. 37-16.

The next day, on March 26, 2026, UWM filed an "emergency" motion for reconsideration of the Court's Text-Only Order and seeking leave to file a motion for protective order. ECF No. 35. On April 9, 2026, the Court struck UWM's motion for failure to seek concurrence as required by this District's Local Rules. But in an effort  to resolve this dispute in an expeditious manner, the Court ordered Atlantic Trust to submit a motion addressing:

(1) whether the deposition of Mr. Ishbia as previously ordered by the Court is justified by the Federal Rules of Civil Procedure, relevant case law, and the factual development of the case, and (2) whether Plaintiff should be held in contempt for not complying with the Court's oral order at the December 12, 2025 status conference to allow Mr. Ishbia's deposition.

ECF No. 36.

Atlantic Trust filed a motion in accordance with that Order, ECF No. 37, to which UWM responded, ECF No. 38, and Atlantic Trust replied. ECF No. 39.

## II. DISCUSSION

### A. UWM Must Produce Mr. Ishbia for Deposition

Atlantic Trust argues that the Federal Rules of Civil Procedure and Sixth Circuit precedent support Atlantic Trust's right to depose Mr. Ishbia in this case, as previously ordered by the Court. ECF No. 37. The Court agrees.

Federal Rule of Civil Procedure 26(b)(1) allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." The Rule further explains that

"[i]nformation within the scope of discovery need not be admissible in evidence to be discoverable." *Id.*

Atlantic Trust states that Mr. Ishbia's deposition testimony is relevant because he was at the meeting where UWM asserts the decision was made to implement the "All-In" initiative and the liquidated damages provision. Atlantic Trust further contends that Mr. Ishbia's public statements, including his statements at the public announcement of the "All-In" initiative that "*I* can't stop other people's business models. But what *I* can do, *I* can control *my* business model," and the factual record in this case, suggest that he was the primary, if not sole decisionmaker in adopting this initiative and the liquidated damages provision. ECF No. 37, PageID.655–56. In addition. Mr. Wolfe provided a declaration stating that Mr. Ishbia leads most meetings he attends, that his attendance is "indispensable," and that those meetings involve "significant decision-making for UWM." ECF No. 35-1, PageID.460. Atlantic Trust argues that the "All-In" initiative's liquidated damages provision is unenforceable and punitive, and that Atlantic Trust is entitled to challenge the reasonableness and enforceability of the liquidated damages provision as well as its alleged nexus to any actual injury suffered. ECF No. 37, PageID.648.

UWM does not dispute Mr. Ishbia's presence at this meeting, but argues that his deposition nevertheless should be precluded under Fed. R. Civ. P. 26(b)(2)(C) and 26(c)(1) because it would impose an undue

burden and expense on UWM and Mr. Ishbia, as CEO of UWM, and it would be cumulative or duplicative of deposition testimony given by others in this case. ECF No. 38, PageID.1023–24. UWM contends that Atlantic Trust should instead depose UWM's Chief Legal Officer Adam Wolfe, and UWM's Chief Marketing Officer Sarah DeCiantis, who were also present at the meeting where the "All-In" initiative and the associated liquidated damages provision were adopted. *Id.* PageID.1028. UWM further points out, in a seemingly belated effort to resolve this dispute, that on April 20, 2026, it offered to produce Mr. Ishbia for a two-hour deposition over Zoom on certain topics, but that Atlantic Trust refused this offer, and that Atlantic Trust has now refused to produce any of its witnesses for deposition in this case until it has deposed Mr. Ishbia. *Id.* PageID.1034 (citing Emails, ECF No. 38-2).

Nothing has been presented by UWM that persuades the Court to alter its decision, twice ordered (on December 12, 2025 and March 25, 2026), that UWM must produce Mr. Ishbia for deposition in this case. Atlantic Trust has set out a sufficient factual basis to conclude that Mr. Ishbia has personal, relevant knowledge of the "All-In" initiative and its liquidated damages provision at the time of the creation of the "All-In Addendum." Under Michigan law, liquidated-damages provisions are enforceable "if the amount is 'reasonable with relation to the possible injury suffered' and not 'unconscionable or excessive.'" *UAW-GM Hum. Res. Ctr. v. KSL Recreation Corp.*, 579 N.W.2d 411, 421 (Mich. Ct. App.

1998) (quoting *Moore v. St. Clair Cnty.*, 328 N.W.2d 47, 50 (Mich. Ct. App. 1982)). "Courts are to determine the enforceability of liquidated-damages provisions based on the circumstances existing at the time that the contract was executed." *Hemlock Semiconductor Operations, LLC v. SolarWorld Indus. Sachsen GmbH*, 867 F.3d 692, 706 (6th Cir. 2017) (citation omitted). Accordingly, the reason for the liquidated damages provision as well as the determination of how the amount of liquidated damages were computed, what the amount is based on, and whether that amount has any nexus to any alleged actual damages suffered by UWM, are relevant and discoverable. *See Nichols v. Seaks*, 295 N.W. 596, 599 (Mich. 1941) ("[T]he court must determine whether the predetermined figure is really in the nature of an attempted computation of the actual damages likely to result, or whether it has the effect of exacting a penalty from the contract breaker.") (citations omitted).

The Court further finds that Mr. Ishbia's status as the CEO of UWM, by itself, is not the deciding factor in considering whether the deposition is unduly burdensome and whether it should proceed because the Sixth Circuit has rejected the so-called apex doctrine. In *Serrano v. Cintas Corporation*, 699 F.3d 884 (6th Cir. 2012), the Sixth Circuit held that a corporate officer may not avoid deposition simply by virtue of the position held, and that an apex officer is still subject to requirements of Rule 26(c)(1) when determining whether a deposition is unduly burdensome. *Id.* at 901. To show good cause under Rule 26(c)(1) to

13

prevent a deposition by a protective order, UWM is required to articulate specific facts that show a clearly defined and serious injury resulting from the discovery sought; mere conclusory statements will not be sufficient. *Serrano*, 699 F.3d at 901; *In re Skelaxin Metaxalone Antitrust Litig.*, 292 F.R.D. 544, 549 (E.D. Tenn. 2013) (noting that Rule 26(c) "assumes that a party has the right to issue a discovery request in the first place."). UWM has not met this burden, and its conclusory assertions that Mr. Ishbia's duties as CEO of UWM "are demanding" are wholly insufficient. *See Serrano*, 699 F.3d at 901.

Moreover, UWM's contention that Atlantic Trust can obtain the information from other sources is unconvincing. Ms. DeCiantis was unable to provide any explanation regarding the purpose or calculation of the liquidated damages provision in her deposition testimony in a prior case, and there is little reason to believe that will change with her sworn deposition in this case. *See* ECF No. 37-13, PageID.795–96. She further limited her knowledge to the conversation at the one-hour UWM meeting, while acknowledging that "there could have been other conversations that legal counsel had or determinations prior to[.]" *Id.* PageID.818. Nor is Mr. Wolfe an adequate substitute. UWM had not previously disclosed Mr. Wolfe as a person with relevant knowledge and moreover, as general counsel he has not agreed to waive the attorney-client privilege over his testimony, which would therefore be likely to be rather limited. Atlantic Trust has further demonstrated that the four other depositions taken to

date in this case of UWM personnel revealed that those individuals had no knowledge of the meeting adopting the "All-In" initiative, the reasons for adopting that initiative, or the structure or amount of the liquidated damages provision. ECF No. 37, PageID.658–60.

The Court therefore will again hold, as it did twice before, that UWM must produce Mr. Ishbia for a deposition. This deposition must take place within the next 30 days, and to avoid any undue burden on Mr. Ishbia, the deposition will be limited to four hours in duration, and will take place in Oakland County, Michigan, where Mr. Ishbia works. Failure to comply with this Order will constitute contempt of court and may result in additional sanctions.

### B. The Record Supports a Finding that UWM is in Contempt and the Court Will Sanction UWM for Failing to Comply With the Court's December 12, 2025 Order

The Court ordered both parties to brief the question whether UWM should be held in contempt for failing to comply with the Court's order at the December 12, 2025 status conference to allow Mr. Ishbia's deposition. ECF No. 36. Atlantic Trust argues that UWM should be held in contempt for two reasons: (1) UWM directly and deliberately disobeyed the Court's clear order to produce Mr. Ishbia for deposition; and (2) UWM engaged in sanctionable gamesmanship by representing to the Court that it would produce Mr. Ishbia but then "run[ning] the clock on discovery" by waiting until the eleventh hour to assert for the first time that it would not

produce Mr. Ishbia as ordered. ECF No. 37, PageID.665–68. UWM responds that while it "realizes, at this juncture, that the Court views its December 15 statements as an order," UWM "interpreted the Court's statements as informally indicating how it would resolve a discovery issue without the need for formal motion practice" or as mere "guidance." ECF No. 38, PageID.1035; *see also id.* PageID.1018 (referring to the December 12, 2025 status conference as "the subsequent, informal, off-the-record conference"), PageID.1035 n.5 (referring to the Court's order as "instructions" and "an informal, pre-trial resolution rather than an order"). UWM further argues that "[e]ven if the Court's statements are construed as an order," UWM did not violate it because there was no deadline set for Mr. Ishbia's deposition. *Id.* PageID.1038. UWM finally asserts that it did not refuse to produce Mr. Ishbia; UWM merely stated that it wanted to file a motion for protective order. *Id.* PageID.1039.

"Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner." *Electrical Workers Pension Tr. Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003). As the Supreme Court explained:

> Without [contempt power courts] are mere boards of arbitration, whose judgments and decrees would be only advisory. … If a party can make himself a judge of the validity of orders which have been issued, and by his own act of disobedience set them aside, then are the courts impotent, and what the Constitution now fittingly calls the 'judicial power of the United States' would be a mere mockery.

*Gompers v. Buck's Stove & Range Co.*, 221 U.S. 418, 450 (1911). While criminal contempt is governed by 18 U.S.C. § 401, civil contempt remains a creature of the court's inherent power. *See Spallone v. United States*, 493 U.S. 265, 276 (1990).

"A litigant may be held in contempt if his adversary shows by clear and convincing evidence that he violated a definite and specific order of the court requiring him to perform or refrain from performing a particular act or acts with knowledge of the court's order." *N.L.R.B. v Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987) (internal quotation omitted). But "[o]nce the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Id.* (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)). "To meet this production burden in this circuit 'a defendant must show categorically and in detail why he or she is unable to comply with the court's order.'" *Id.* (quoting *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996)). A "good faith effort" is insufficient. *Glover v. Johnson*, 934 F.2d 703, 708 (6th Cir. 1991). Rather, the contemnor must show that it "took all reasonable steps within [its] power to comply." *Id.* (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)).

"A decision on a contempt petition is within the sound discretion of the trial court," and "the power 'to punish for contempts' should not be used lightly...." *Gary's Elec. Serv. Co.*, 340 F.3d at 378 (quoting *Gompers*,

221 U.S. at 450). This discretion includes the power to frame sanctions so that they fit the violation in question. *See Adcor Indus. v. Bevcorp, LLC*, 411 F. Supp. 2d 778, 794 (N.D. Ohio 2005) (citing *Gary's Elec. Serv. Co.*, 340 F.3d at 385), *aff'd*, 252 F. App'x 55 (6th Cir. 2007).

As discussed above, the record establishes that UWM violated a definite and specific order of the Court when it failed to produce Mr. Ishbia for a deposition as ordered by the Court on December 12, 2025. UWM's contention that it understood the Court's unequivocal order as mere "guidance" or an informal suggestion is wholly implausible. The main purpose of the call was to resolve the question of whether Mr. Ishbia was required to testify, and the Court ruled that he was so required and then inquired of the parties if they understood the ruling, and intended to comply. The Court did not "suggest" that UWM may want to produce Mr. Glass and Mr. Ishbia for deposition nor did it offer mere optional "guidance" on how to proceed. The Court gave a clear and unambiguous directive that Mr. Glass and Mr. Ishbia were to make themselves available to be deposed, but that the depositions would be limited to four hours in length. Indeed, UWM confirmed its understanding of the Court's order for the depositions at the end of the status conference, and then again days later before the Honorable Judge Michelson.

If UWM disagreed with the Court's ruling, it could have requested the opportunity to brief the matter immediately, or asked for reconsideration shortly thereafter. But at no time, during the subsequent

weeks and months, as Atlantic Trust repeatedly attempted to confirm a date for Mr. Ishbia's deposition, did UWM claim that it was not required to give that deposition or that it saw the order differently. As to Mr. Glass, UWM apparently understood the Court's order, because it produced him for deposition as required. Atlantic Trust contends that UWM's seeming acquiescence to the Court's Order by failing to object for months, until the eve of the discovery cut-off, smacks of gamesmanship directed toward running out the clock. Although this is not without circumstantial support, the Court cannot conclude with certainty that UWM delayed with such cynical intent—more evidence would be needed to reach such a conclusion. But sufficient evidence is before the Court that UWM was aware of the Court's ruling and intentionally did not comply with it. The Court therefore finds that Atlantic Trust has shown by clear and convincing evidence that UWM violated a definite and specific order of the Court.

The burden thus shifts to UWM to come forward with evidence showing that it is presently unable to comply with the Court's order. *See Gary's Elec. Serv. Co.*, 340 F.3d at 379. UWM fails to meet this burden. UWM received numerous requests from Atlantic Trust seeking to schedule Mr. Ishbia's deposition after the Court ordered it on December 12, 2025. So if there was a reason UWM was unable to produce Mr. Ishbia for deposition, it had ample opportunity to explain what it was. But no explanation was given then or now as to why Mr. Ishbia is unable to

19

answer questions like any other deposition witness—in a civil case that he chose to bring. And UWM's last minute proposal to produce Mr. Ishbia for a two-hour deposition by Zoom on specific topics does not cure this failure because the "mere fact that a party may have taken steps toward achieving compliance is not a defense to a contempt charge." *Sizzler Fam. Steak Houses v. W. Sizzlin Steak House, Inc.*, 793 F.2d 1529, 1535 n.5 (11th Cir. 1986); *Glover*, 934 F.2d at 708 (finding belated compliance efforts fell "far short of the required diligence" necessary to establish that a party has taken "all reasonable steps to comply" with a court's order).

The Court takes note of UWM's protestations that it proceeded in good faith, that it truly thought its continued blocking of Mr. Ishbia's deposition was justified because the Court's order was issued orally in a telephonic conference call, without a court reporter transcribing the proceeding, and in the absence of extensive briefing. While the Court is not making any finding that UWM's counsel acted with malice—it is at a minimum magical thinking for counsel to imagine no disciplinary consequences will arise when a party ignores a Court's oral order for three months, then expresses a decision not to comply with it, and then treats the Court's subsequent written order requiring compliance with the earlier order as if it is a brief by the opposing party that can be litigated by filing a response. The Court has an obligation to enforce its orders. If this case involved a discovery conference in which the Court ordered a party to respond to a request for documents—and the same

20

chain of events ensued with the documents never being produced—few lawyers would not expect someone to be held in contempt or otherwise sanctioned for not complying with the Court's order.

The record here supports Atlantic Trust's motion for contempt by clear and convincing evidence. The Court therefore must find that UWM is in contempt of the Court's direct and unambiguous December 12, 2025 order for Mr. Ishbia's deposition.

A district court has "broad discretion to fashion an appropriate remedy for" a party's contempt. *See Williamson v. Recovery Ltd. P'ship*, 467 F. App'x 382, 396 (6th Cir. 2012); *Paterek v. Vill. of Armada, Mich.*, 801 F.3d 630, 644–45 (6th Cir. 2015) ("The power to shape the appropriate remedy for a finding of contempt lies squarely within the discretion of the district court.").[2] "Judicial sanctions … may, in a proper case, be employed for either or both of two purposes; to coerce the defendant into compliance with the court's order, and to compensate the complainant for losses sustained." *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303–04 (1947); *see also United States v. Work Wear*

---

[2]     In addition, Federal Rule of Civil Procedure 37(b)(2) provides that where a party "fails to obey an order to provide or permit discovery ... the court where the action is pending may issue further just orders," including an order that "the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

*Corp.*, 602 F.2d 110, 115 (6th Cir. 1979) ("Civil contempt is meant to be remedial and to benefit the complainant either by coercing the defendant to comply with the Court's order via a conditional fine or sentence or by compensating the complainant for any injury caused by the defendant's disobedience.") (citation omitted). In addition, "[t]he award of attorney's fees and expenses to a successful movant may be appropriate in a civil contempt proceeding." *TWM Mfg. Co. v. Dura Corp.*, 722 F.2d 1261, 1273 (6th Cir. 1983); *see also Concerned Pastors for Soc. Action v. Khouri*, 720 F. Supp. 3d 522, 542 (E.D. Mich. 2024) (Lawson, J.) (recognizing that the court "may order 'equitable relief that is compensatory in nature' by awarding the plaintiffs attorney's fees now, to compensate the plaintiffs for the cost of bringing the instant action."). Indeed, "it is 'well recognized' that '[c]ourts have inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees.'" *Concerned Pastors*, 720 F. Supp. 3d at 542 (citation omitted); *Walsh v. Express Auto & Tire, LLC*, No. 1:22MC00011, 2023 WL 272341, at *6 (N.D. Ohio Jan. 18, 2023) ("[C]ourts have noted that '[c]ompensation of the injured party in a contempt proceeding often consist[s] of reasonable costs (including attorneys' fees) incurred in bringing the civil contempt proceeding.'" (citation modified) (quoting *American Consol. Indus., Inc. v. Blasingim*, Nos. 1:19-cv-137, 5:17-cv-2253, 2022 WL 17687491, at *27 (N.D. Ohio Dec. 15, 2022) (citations omitted)).

In its motion, Atlantic Trust requests that the Court order UWM "to reimburse Atlantic Trust for all expenses it incurred in connection with this issue since December 12, 2025, and warn UWM that any such further contemptuous actions will result in dismissal of its claim with prejudice." ECF No. 37, PageID.667–68. Because Atlantic Trust was prejudiced and incurred additional costs in bringing this motion because of UWM's noncompliance with the Court's December 12, 2025 order, the Court finds that an award of attorneys' fees and expenses is appropriate for the work associated with responding to the Court's Order of April 9, 2026. Atlantic Trust, however, has provided no specific information as to what amount of compensatory attorney's fees would be appropriate. The amount of the award must be "reasonable," generally as measured by the lodestar method, which calls for multiplying "the number of hours reasonably expended on the litigation multiplied by a reasonably hourly rate. *Northeast Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).

The Court will permit Atlantic Trust to submit its request for reasonable attorney's fees incurred in bringing the instant motion seeking enforcement of the Court's December 12, 2025 order as a sanction for UWM's contempt.

### III.   CONCLUSION

For the reasons stated above, the Court **GRANTS** Atlantic Trust's motion, ECF No. 37, and **ORDERS** UWM to produce Mr. Mathew Ishbia for a deposition in this case, which shall not exceed four hours in duration, **within the next 30 days**. Failure to comply with this Order will be grounds for a second finding of contempt of court and will result in additional financial sanctions.

It is **FURTHER ORDERED** that Atlantic Trust's motion to hold UWM in civil contempt, ECF No. 37, is **GRANTED.**

It is **FURTHER ORDERED** that the sanction to be imposed for contempt will be an award of attorney's fees to Atlantic Trust. Atlantic Trust **SHALL FILE** with the Court **within 14 days of this Order** an appropriate motion for attorney's fees, subject to Local Rule 7.1, documenting the time and expenses incurred in filing the instant motion in this Court. A response and reply are permitted as allowed by the Rules.

**IT IS SO ORDERED.**

Dated: June 8, 2026                  /s/Terrence G. Berg
                                     HON. TERRENCE G. BERG
                                     UNITED STATES DISTRICT JUDGE

24